UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
MARVIN GONG *Individually and on Behalf of All*
*Others Similarly Situated,*

                                Plaintiff,

             -against-

NEPTUNE WELLNESS SOLUTIONS INC., MICHAEL
CAMMARATA, MARIO PARADIS, CLAUDIE LAUZON
and TONI RINOW,

                           Defendants.
--------------------------------------------------------------------X

**ORDER**
21-1386 (ENV) (ARL)

**LINDSAY, Magistrate Judge:**

This federal securities action was commenced on March 16, 2021, on behalf of a putative

class consisting of people who purchased or otherwise acquired Neptune Wellness Solutions

securities between July 24, 2019 and February 16, 2021.  Before the Court, on referral from

District Judge Vitaliano, are several motions for the appointment of lead plaintiff and lead

counsel pursuant to 15 U.S.C. § 78u–4(a)(3) and Fed. R. Civ. P. 23.  For the reasons set forth

below, the movant Kenneth Rickert is appointed lead plaintiff and his counsel, Pomerantz LLP,

is appointed lead counsel.

## BACKGROUND

### A.     The Facts

The defendant, Neptune Wellness Solutions, Inc. ("Neptune") is a Canadian health and

wellness company with principal executive offices located at 545 Promenade du Centropolis,

Suite 100, Laval, Québec, Canada H7T 0A3.  Compl. ¶¶ 2, 15.  Neptune is an integrated

company that builds a portfolio of lifestyle brands and consumer packaged goods products under

the Forest Remedies, Ocean Remedies, Neptune Wellness, Mood Ring, and OCEANO3 brands.

*Id.* ¶ 23.  It trades on the NASDAQ under the symbol "NEPT."  *Id.* ¶ 15.  Neptune offers turnkey product development and supply chain solutions to businesses and government customers in various health and wellness verticals, such as legal cannabis and hemp nutraceuticals, and white label consumer packaged goods.  *Id.* ¶ 23.  Neptune also provides extraction and purification services from cannabis and hemp biomass; raw material sourcing, formulation, quality control, and quality assurance primarily for omega-3 and hemp-derived ingredients under various delivery forms, such as soft gels, capsules, and liquids; and formulation and manufacturing solutions for value added product forms comprising tinctures, sprays, topicals, vapor products, and edibles and beverages.  *Id.*

The defendant, Michael Cammarata ("Cammarata"), served as Neptune's President, Chief Executive Officer and as a Director during the relevant time period.  *Id.* ¶ 16.  The defendant, Mario Paradis ("Paradis"), served as Neptune's Chief Financial Officer between July 24, 2019 and November 2020.  *Id.* ¶ 17.  The defendant, Claudie Lauzon ("Lauzon"), served as Neptune's Interim Chief Financial Officer from November 2020 to April 2020.  *Id.* ¶ 18.  The defendant, Toni Rinow ("Rinow"), has served as Neptune's Chief Financial Officer, Vice President and Global Operating Officer since April 2020.  *Id.* ¶ 19.  The plaintiff asserts that Cammarata, Paradis, Lauzon and Rinow all possessed the power and authority to control the contents of Neptune's SEC filings, press releases, and other market communications.  *Id.* ¶ 21.  In addition, because of their positions with Neptune, the individual defendants had access to material information not available to the public and allegedly knew that their public representations were materially false and misleading.  *Id.*

On May 9, 2019, Neptune announced that it had signed an agreement to acquire the assets of SugarLeaf Labs, LLC and Forest Remedies LLC (collectively, "SugarLeaf"), a North

Carolina-based commercial hemp company providing extraction services and formulated products (the "SugarLeaf Acquisition"). *Id.* ¶ 3. On July 24, 2019, Neptune announced the closing of the SugarLeaf Acquisition and issued a press release, which provided:

> The acquisition of SugarLeaf combined with Neptune allows us to create a leading North American extraction platform with significant capacity available to serve our customers on both sides of the border. Furthermore, considering the significant growth anticipated in hemp-based products, this acquisition provides Neptune with capabilities to satisfy a wide array of clients. Finally, we anticipate a significant contribution from this acquisition, as indicated by the large earnout structure providing adequate risk sharing," said Michael Cammarata, Neptune President and CEO. SugarLeaf brings to Neptune
>
> • New capabilities to supply hemp extracts and finished products to a broad U.S. customer base.
>
> • Extraction capacity that is expected to reach an annual run rate of 1,500,000 kilos of biomass by the end of 2019 with opportunities to further expand capacity.
>
> • Cutting-edge cold ethanol processing technology producing high-quality broad-spectrum extracts and refined full spectrum extracts.
>
> • Strategic and well diversified sourcing established, with multiple local and large regional hemp farmer partners, ensuring traceability of finished product back directly to the farms.
>
> • Rigorous testing protocols to ensure high quality biomass.
>
> • Pursuit of organic certification and already sourcing from farmers who are certified organic or using organic practices.
>
> • Management team with extensive experience in hemp extraction.
>
> • The U.S. market for hemp-derived CBD based products is evolving rapidly driven by multiple product categories and could reach $US 16 billion (1) by 2025.

*Id.* ¶ 25. On August 14, 2019, Neptune issued a second press release stating:

> On July 24, 2019, Neptune announced the closing of the acquisition of the assets of U.S.-based hemp processor SugarLeaf Labs and Forest Remedies LLC (collectively, "SugarLeaf"). The initial consideration paid at closing consisted of US $18 million or US $12 million in cash and US $6 million in

3

common shares.  By achieving certain annual adjusted EBITDA and other performance targets, an additional consideration of up to US $132 million would be paid over each of the next three years as a combination of cash and shares for a maximum aggregate purchase price of up to US $150 million, reflecting a valuation multiple below 5x EBITDA.

The extraction capacity of SugarLeaf is expected to reach an annual run rate of 1,500,000 kg of biomass by the end of 2019 with opportunities to further expand capacity.  The company is using a cutting-edge cold ethanol processing technology producing high-quality broad-spectrum extracts and refined full spectrum extracts.  SugarLeaf has established strategic and well diversified sourcing, with multiple local and large regional hemp farmer partners, ensuring traceability of finished product directly back to the farms.  The acquisition of SugarLeaf, combined with Neptune creates a leading North American extraction platform with significant capacity available to serve customers in both Canada and the United States. The acquisition also offers an opportunity to participate in both B2B and B2C hemp derived CBD markets in the United States.

*          *          *

"Once the expansion phases are complete, we expect Neptune's two extraction facilities to have impressive earnings potential.  Given that we only recently acquired SugarLeaf and are still in the process of integrating those operations, we estimate that, based on a conservative capacity utilization scenario of 50%, our two facilities could support in excess of $450 million in annual revenues. In addition, our highly automated operations are expected to translate into low production costs benefiting margins, which have the potential to exceed 40% at the EBITDA level. With a focus on bringing the highest quality products to market sustainably, we believe these developments can help us achieve and surpass these scenarios. There can, of course, be no assurance that the integration of SugarLeaf will be successfully implemented, that our utilization capacity will achieve anticipated levels, or that operational costs and margins will benefit from these developments to the extent anticipated at this time." concluded Mr. Cammarata.

*Id.* ¶ 26.

Between July 2019 and November 2020, Neptune issued at least nine press releases and hosted numerous earnings calls all of which suggested that Neptune was experiencing significant growth and had positive expectations.  *Id.* ¶¶ 25-42.  However, according to the complaint, between July 24, 2019 and February 16, 2021, the defendants made materially false and

misleading statements regarding its business, operational and compliance policies.  *Id.* ¶ 4.

Among other things, the defendants failed to disclose that the cost of Neptune's integration of the

assets and operations acquired in the SugarLeaf Acquisition would be larger than the Neptune

had acknowledged, placing significant strain on Neptune's capital reserves.  *Id.* ¶ 43.  The

defendants also failed to disclose that it was reasonably foreseeable that the company would need

to conduct additional stock offerings to raise more capital.  *Id.*

On February 15, 2021, Neptune issued a press release announcing disappointing financial

results for the third quarter of fiscal year 2021, missing analyst expectations.  *Id.* ¶ 44.  Indeed,

Neptune reported third quarter revenues of CA $3.32 million and a net loss of CA $73.8 million,

down 63.81% and over 1,000% year-over-year, respectively.  *Id.* ¶ 5.  Neptune attributed the net

loss, in part, to a CA $35.6 million impairment of goodwill and a CA $2.1 million impairment of

"property, plant and equipment and right-of-use assets related to the acquisition of SugarLeaf in

July 2019," as well as accelerated amortization of CA $13.95 million "also related to the

SugarLeaf acquisition." *Id.*  Additionally, Neptune disclosed that its "[g]ross margin declined to

a loss of 268.3%," which included a non-cash CA $7.39 million "write-down of inventory and

deposits to reflect their net realizable value." *Id.*  On this news, Neptune's stock price fell $0.86

per share, or 30.71%, to close at $1.94 per share on February 16, 2021.  *Id.* ¶ 6.

Two days later, on February 17, 2021, prior to the start of the day's trading session,

Neptune issued another press release announcing the termination of an at-the-market offering

conducted by the company, selling 9,570,735 of its common shares and raising approximately

$18.6 million in gross proceeds.  *Id.* ¶ 7.  Minutes later, Neptune issued a second press release

for the day announcing that Neptune was conducting a $55 million registered direct offering.  *Id.*

On this news, Neptune's stock price fell another $0.21 per share, or 10.82%, to close at $1.73 per

share on February 17, 2021.  *Id.* ¶ 8.

### B.    Procedural History

As noted above, the plaintiff, Marvin Gong ("Gong'), commenced this action on March 16, 2020 against Neptune and certain of its officers and directors, for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  That same day, Gong's counsel, Pomerantz LLP, issued a press release advising potential class members of the allegations and claims in the complaint, the proposed class period, and the option to seek appointment as lead plaintiff.  *See* ECF No. 11, Linkh Decl., Ex. A.  On May 17, 2021, the Court received five motions for the appointment of lead plaintiff and lead counsel from the following movants: Jeff A. Brodsky ("Brodsky") (ECF No. 9); Jeff Williams ("Williams") (ECF No. 12); Kenneth Rickert ("Rickert") (ECF No. 14); Laurie S. Cooperman Rosen ("Cooperman Rosen")(ECF No. 18); and Paul Siegmund and Elliott Mitnik ("Siegmund and Mitnik") (ECF No. 19).  After the initial motions were filed, Brodsky, Williams, Cooperman Rosen, Siegmund and Mitnik all filed notices of non-opposition to Rickert's competing claims.  Accordingly, as of this date, no party, including the defendants, opposes Rickert's motion for the appointment of lead plaintiff or Rickert's selection of Pomerantz LLP as lead counsel.

### C.    Rickert's Losses

During the class period, Rickert purchased 440,221 shares of Neptune common stock and 520 call option contracts and expended $1,790,372 on his purchases.  *See* Hood Decl. Ex. A.  Rickert has retained 249,942 shares of common stock and 255 call option contracts.  *Id.*  As a result of the alleged fraud, Rickert claims to have suffered a loss of $392,798 as calculated on a First-In, First-Out ("FIFO") basis and $255,778 as calculated on a Last-In, First-Out ("LIFO") basis.  *Id.*

## DISCUSSION

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Court is directed to appoint a lead plaintiff in private securities class actions who is the member of the purported plaintiff class that the Court determines to be most capable of adequately representing the interests of class members.  15 U.S.C. § 78u–4(a)(3)(B)(iii)(1).  This provision was intended to ensure that parties with "significant financial interests in the litigation" would oversee securities class actions and control the management of such suits, including the selection of counsel.  *In re McDermott Int'l Sec. Litig.*, No. 08 Civ. 9943(DC), 2009 WL 579502, at *1 (S.D.N.Y. Mar. 6, 2009).  The Courts in this Circuit use a two-process to determine the "most capable" class representative.  First, the PSLRA establishes a statutory presumption that a party is the most adequate plaintiff if the person (a) has either filed the complaint or made a motion for appointment as lead plaintiff, (b) has the largest financial interest in the relief sought by the class and (c) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 118 (S.D.N.Y. 2010) (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)).  In deciding which proposed lead plaintiff has "the largest financial interest in the relief sought by the class," courts consider four factors: "(i) the gross number of shares purchased; (ii) the net number of shares purchased; (iii) the net funds spent; and (iv) the net loss." *In re McDermott Int'l*, 2009 WL 579502, at *2.  "The fourth factor, loss, is well-established to be the 'critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures.'" *Born v. Quad/Graphics, Inc.*, No. 19-CV-10376 (VEC), 2020 WL 994427, at *1 (S.D.N.Y. Mar. 2, 2020) (quoting *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011)).

Nonetheless, once it is determined who among the movants seeking appointment as lead

7

plaintiff is the presumptive lead plaintiff, other members of the purported class may try to rebut the statutory presumption by showing that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is incapable of adequately representing the class because of "unique defenses." *Janbay v. Canadian Solar, Inc*., 272 F.R.D. 118 (S.D.N.Y. 2010) (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)).  Moreover, the Court has the discretion to appoint more than one lead plaintiff.  *See Varghese v. China Shenghuo Pharm. Holdings, Inc*., 589 F. Supp. 2d 388, 391–92 (S.D.N.Y.2008) (permitting group of investors to be appointed lead plaintiff).

In this case, Rickert has filed a motion seeking to be appointed lead counsel and has submitted a signed certification attesting that he is willing to serve as a representative for the class and provide testimony at deposition and trial, if necessary.  *See* Hood Decl. Ex. C.  In addition, none of the movants have attempted to rebut that Rickert has the largest financial interest.  Indeed, on June 1, 2021, Cooperman Rosen, Siegmund and Mitnik, Brodsky and Williams all filed notices of non-opposition to the competing motions acknowledging that they did not appear to possess the largest financial interest in this litigation within the meaning of the PSLRA.  *See* ECF Nos. 27-30.  Rickert has also satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure in that he has made a preliminary showing that he can meet the adequacy and typicality requirements of Rule 23.  *Janbay,* 272 F.R.D. at 120 (S.D.N.Y. 2010) (citing *Weinberg v. Atlas Air Worldwide Holdings, Inc*., 216 F.R.D. 248, 252 (S.D.N.Y.2003) ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").  Rickert's claims "arise[ ] from the same course of events" and they make "similar legal arguments to prove the defendant[s'] liability" as the other putative class members*.  In re Bear Stearns Companies, Inc. Sec.,*

8

*Derivative, & Employee Ret. Income Sec. Act (Erisa) Litig.*, No. 08 M.D.L. 1963 (RWS), 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009), amended on denial of reconsideration sub nom. *In re Bear Stearns Companies, Inc. Sec., Derivative, & Erisa Litig.,* No. 08 M.D.L. 1963(RWS), 2009 WL 2168767 (S.D.N.Y. July 16, 2009)(quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992)).  Specifically, Rickert, as do all class members, alleges that he purchased Neptune securities at artificially inflated prices as a result of the defendants' misrepresentations concerning the cost of Neptune's integration of the assets and operations acquired in the SugarLeaf Acquisition and its need to conduct additional stock offerings to raise more capital.

Finally, Rickert has also retained competent and experienced counsel.  *See Kaplan v. Gelfond,* 240 F.R.D. 88, 94 (S.D.N.Y. 2007), on reconsideration in part sub nom. *In re IMAX Sec. Litig.,* No. 06CIV6128, 2009 WL 1905033 (S.D.N.Y. June 29, 2009)("The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy.").  The Pomerantz firm is highly experienced in the area of securities litigation and class action lawsuits and has successfully prosecuted numerous securities actions on behalf of investors.  *See* Hood Decl. Ex. E.  It is clear from the submissions that Pomerantz has the skill, knowledge, expertise, resources, and experience that will enable the firm to prosecute the class' claims in this litigation effectively and expeditiously.   Accordingly, the Court grants Rickert's application to serve as lead plaintiff and to have Pomerantz LLP serve as lead counsel.  The motions of Brodsky, Williams, Laurie Cooperman Rosen, Siegmund and

9

Mitnik are denied.

Dated:  Central Islip, New York                    **SO ORDERED:**
        January 4, 2022


                                        _____/s_____
                                        ARLENE R. LINDSAY
                                        United States Magistrate Judge