**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARVIN GONG, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>NEPTUNE WELLNESS SOLUTIONS INC., MICHAEL CAMMARATA, MARIO PARADIS, CLAUDIE LAUZON and TONI RINOW,<br><br>      Defendants. | **Case No. 2:21-cv-01386-ENV-ARL**<br><br>**CLASS ACTION**<br><br>Hon. Eric N. Vitaliano<br>Hon. Arlene R. Lindsay<br><br>**Date of Service: July 11, 2022** |

## LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

                                                                                             **Page**

TABLE OF CONTENTS ......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ iv

INTRODUCTION ...............................................................................................................1

STATEMENT OF FACTS ...................................................................................................3

   I.    Neptune and its Turn Towards Cannabis..................................................................3

   II.   The SugarLeaf Facility was not Equipped to Provide the Type of Production and Sales that Neptune Touted to Investors ...........................................................................3

   III.  Neptune Makes False Statements Regarding Hand Sanitizer Business.............................5

   IV.  By Hiding Deterioration at SugarLeaf, Defendants Raise more than $12 Million in July 2020...................................................................................................................5

   V.   Neptune Hides Further Deterioration in SugarLeaf and Neptune's Hand Sanitizer Business from Investors .......................................................................................... 6

   VI.  Defendants Mislead Investors About Purported $100 Million Purchase Order ..................7

  VII.  The Truth is Disclosed in a Series of Partial Disclosures....................................................7

ARGUMENT .......................................................................................................................8

   I.    Plaintiff Adequately Alleges Violations of §10(b) of The Exchange Act ...........................8

        A.  Applicable Pleading Standards do not Favor Dismissal ........................................8

        B.  Defendants' Reliance on External Documents Confirms that the Disputes at Issue Should Be Resolved at Summary Judgment or Trial....................................9

        C.  The Complaint Identifies Allegedly False and Misleading Statements With Particularity...................................................................................................11

             1.  Defendants made materially misleading statements and omissions regarding SugarLeaf...............................................................................11

             2.  Defendants made materially misleading statements and omissions

regarding Neptune's hand sanitizer business .........................................17

3.  Defendants made materially misleading statements and omissions regarding claimed $100 million in PPE purchase orders ........................18

4.  Defendants' reliance on inapposite cannabis cases does nothing to show a pleading deficiency here ...........................................................20

D.  Defendants' Remaining Falsity Arguments Fail....................................................21

1.  Defendants' misrepresentations are not immunized by the PSLRA's safe harbor..................................................................................................21

2.  Defendants' misrepresentations were material, not puffery ...................26

3.  Defendants' misrepresentations were not fraud-by-hindsight ................29

4.  Defendants' misrepresentations are actionable whether or not considered opinions ................................................................................31

5.  Defendants' truth-on-the-market defense fails .......................................33

6.  Defendants' knowledge arguments confuse falsity with scienter...........34

7.  The Complaint adequately alleges scheme liability in violation of SEC Rule 10b-5(a) and (c)......................................................................35

E.  The Complaint Alleges a Strong and Cogent Inference of Scienter......................36

1.  Defendants' knowledge and access to contradictory information ..........37

2.  Confidential witnesses corroborate internal knowledge of concealed facts and Cammarata's direction of fraudulent scheme..........................38

3.  Defendants held themselves out as knowledgeable about misrepresented information ...................................................................40

4.  Core operations ......................................................................................41

5.  Sharp divergence between Defendants' misleading statements and the truth ........................................................................................................42

6.  Landry's resignation ...............................................................................43

7.  Defendants' false SEC certifications ......................................................43

8.  Defendants' responsibilities exposed them to concealed
    information...........................................................................................43

9.  Motive and opportunity.........................................................................44

F.  The Complaint Adequately Alleges Loss Causation ............................................45

G.  The Complaint Adequately Alleges Violations of §20(a) of the
    Exchange Act ...............................................................................................49

CONCLUSION..................................................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arkansas Tchr. Ret. Sys. v. Bankrate, Inc.*,
  18 F. Supp. 3d 482 (S.D.N.Y. 2014)............................................................................28

*Ashcroft v. Iqbal*,
  556 U.S. 662 (209)............................................................................................................8

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007).............................................................................................35

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................................8

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
  556 F. Supp. 3d 100 (D. Conn. 2021)............................................................................41

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
  866 F. Supp. 2d 223 (S.D.N.Y. 2012)............................................................................26

*Caiola v. Citibank, N.A., New York*,
  295 F.3d 312 (2d Cir. 2002)............................................................................................12

*Campo v. Sears Holdings Corp.*,
  371 F. App'x 212 (2d Cir. 2010)......................................................................................39

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
  750 F.3d 227 (2d Cir. 2014).............................................................................................46

*Cement Masons & Plasterers Joint Pension Tr. v. Equinix, Inc.*,
  No. 11-01016 SC, 2012 WL 685344 (N.D. Cal. Mar. 2, 2012)...................................26

*City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*,
  875 F. Supp. 2d 359 (S.D.N.Y. 2012).....................................................................41, 45

*City of Pontiac Gen. Emp. Ret. Sys. v. MBIA, Inc.*,
  33 F. App'x 33 (2d Cir. 2008) .........................................................................................50

*City of Providence v. Aeropostale, Inc.*,
  2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013) ..............................................................25

*City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat., PLC*,
  423 F. Supp. 2d 348 (S.D.N.Y. 2006)............................................................................16

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)........................................................................................45, 46

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)..........................................................................28, 29

*Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*,
  794 F.3d 297 (2d Cir. 2015)................................................................................11

*Fisher v. Ross*,
  No. 93 CIV. 0275 (JGK), 1996 WL 586345 (S.D.N.Y. Oct. 11, 1996) ................31

*Foman v. Davis*,
  371 U.S. 178 (1962)...........................................................................................50

*Fonte v. Bd. of Managers of Cont'l Towers Condo.*,
  848 F.2d 24 (2d Cir. 1988)..................................................................................10

*Freudenberg v. E*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010)..............................................................30, 48

*Galestan v. OneMain Holdings, Inc.*,
  348 F. Supp. 3d 282 (S.D.N.Y. 2018)...............................................21, 32, 38, 39

*GAMCO Inv'rs, Inc. v. Vivendi Universal, S.A.*,
  838 F.3d 214 (2d Cir. 2016)..................................................................................9

*Ganino v. Citizens Utilities Co.*,
  228 F.3d 154 (2d Cir. 2000)...........................................................................33, 48

*Gauquie v. Albany Molecular Rsch., Inc.*,
  No. 14CV6637FBSMG, 2016 WL 4007591 (E.D.N.Y. July 26, 2016).................41

*Gregory v. ProNAi Therapeutics Inc.*,
  297 F Supp. 3d 372 (S.D.N.Y. 2018)...................................................................43

*Hall v. The Children's Place Retail Stores, Inc.*,
  580 F. Supp. 2d 212 (S.D.N.Y. 2008).................................................................34

*Holbrook v. Trivago N.V.*,
  No. 17 CIV. 8348 (NRB), 2019 WL 948809 (S.D.N.Y. Feb. 26, 2019) ...........30, 31

*Huang v. Avalanche Biotechnologies, Inc.*
  No. 15-CV-03185-JD, 2016 WL 6524401 (N.D. Cal. Nov. 3, 2016)....................17

v

*In re Adient plc Sec. Litig.*,
No. 18-CV-9116 (RA), 2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) .....................................23

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021)......................................................................................41

*In re Alstom SA,*
406 F. Supp. 2d 433 (S.D.N.Y. 2005)......................................................................................36

*In re Am. Express Co. Sec. Litig.*,
No. 02 CIV. 5533 (WHP), 2008 WL 4501928 (S.D.N.Y. Sept. 26, 2008) ............................40

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
741 F. Supp. 2d 511 (S.D.N.Y. 2010)......................................................................................50

*In re Aphria, Inc. Sec. Litig.*,
No. 18 CIV. 11376 (GBD), 2021 WL 4442818 (S.D.N.Y. Sept. 28, 2021)............................13

*In re Aphria, Inc. Sec. Litig.*,
No. 18 CIV. 11376 (GBD), 2020 WL 5819548 (S.D.N.Y. Sept. 30, 2020)................... *passim*

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004)................................................................................39, 44

*In re Avon Sec. Litig.*,
No. 19 CIV. 01420 (CM), 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) .................39, 42, 43

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
390 F. Supp. 3d 432 (S.D.N.Y. 2019)................................................................................36, 37

*In re Barrick Gold Corp. Sec. Litig.*,
341 F. Supp. 3d 358 (S.D.N.Y. 2018)......................................................................................23

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
763 F. Supp. 2d 423 (S.D.N.Y. 2011)..........................................................................37, 48, 49

*In re BioScrip, Inc. Sec. Litig.*,
95 F. Supp. 3d 711 (S.D.N.Y. 2015)........................................................................................18

*In re Bristol Myers Squibb Co. Sec. Litig.*,
586 F. Supp. 2d 148 (S.D.N.Y. 2008)......................................................................................35

*In re Cannavest Corp. Sec. Litig.*,
307 F. Supp. 3d 222 (S.D.N.Y. 2018)......................................................................................48

*In re Carter-Wallace, Inc., Sec. Litig.*,
   220 F.3d 36 (2d Cir. 2000)..................................................................................37

*In re Chembio Diagnostics, Inc. Sec. Litig.*,
   No. 20CV2706ARRPK, 2022 WL 541891 (E.D.N.Y. Feb. 23, 2022).............................10, 11

*In re China Educ. All., Inc. Sec. Litig.*,
   No. CV 10-9239 CAS JCX, 2011 WL 4978483 (C.D. Cal. Oct. 11, 2011) ...........................42

*In re Curaleaf Holdings, Inc. Secs. Litig.*,
   519 F. Supp. 3d 99 (E.D.N.Y. 2021) ..............................................................20, 48

*In re Citigroup Inc. Sec. Litig.*,
   753 F. Supp. 2d 206 (S.D.N.Y. 2010)..............................................................13, 40

*In re Dynex Cap., Inc. Sec. Litig.*,
   No. 05 CIV. 1897 HB, 2011 WL 2471267 (S.D.N.Y. June 21, 2011) ...................................40

*In re Electrobras Sec. Litig.*,
   245 F. Supp. 3d 450 (S.D.N.Y. 2017)..................................................................35

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   986 F. Supp. 2d 428 (S.D.N.Y. 2013)..................................................................23

*In re Fairway Grp. Holding Corp. Sec. Litig.*,
   No. 14 CIV. 0950 LAK, 2015 WL 249508 (S.D.N.Y. Jan. 20, 2015) ..................................21

*In re Fannie Mae 2008 Sec. Litig.*,
   891 F. Supp. 2d 458 (S.D.N.Y. 2012)..................................................................29

*In re Fannie Mae 2008 Sec. Litig.*,
   525 F. App'x 16 (2d Cir. 2013)..........................................................................29

*In re FBR Inc. Securities Litig.*,
   544 F. Supp. 2d 346 (S.D.N.Y. 2008)..................................................................17

*In re Fed Ex Corp. Sec. Litig.*,
   517 F. Supp. 3d 216 (S.D.N.Y. 2021)..................................................................25

*In re Ferroglobe PLC Sec. Litig.*,
   No. 1:19-CV-00629 (RA), 2020 WL 6585715 (S.D.N.Y. Nov. 10, 2020) ...........................30

*In re Garrett Motion Inc. Sec. Litig.*,
   No. 20 CIV. 7992 (JPC), 2022 WL 976269 (S.D.N.Y. Mar. 31, 2022) ................................36

*In re Henry Schein, Inc. Sec. Litig.*,
No. 18-CV-01428 (MKB), 2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019)....27, 28, 36, 46, 49, 50

*In re HEXO Corp. Secs. Litig.*,
524 F. Supp. 3d 283 (S.D.N.Y. 2021)..............................................................12, 20

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
251 F. Supp. 3d 596 (S.D.N.Y. 2017).....................................................................18

*In re Merrill Lynch Auction Rate Sec. Litig.,*
No. 09 Civ. 9697(LAP), 2011 WL 1330847 (S.D.N.Y. Mar. 30, 2011) .................................24

*In re MF Global Holdings Ltd. Sec. Litig.*,
982 F. Supp. 2d 277 (S.D.N.Y. 2013).....................................................................19

*In re Nortel Networks Corp. Sec. Litig.*,
238 F. Supp. 2d 613 (S.D.N.Y. 2003).....................................................................25

*In re Omega Healthcare Invs., Inc. Sec. Litig.*,
563 F. Supp. 3d 259 (S.D.N.Y. 2021).....................................................................48

*In re OSI Pharms., Inc. Sec. Litig.*,
No. 04-CV-5505 (JS)(WDW), 2007 WL 9672541 (E.D.N.Y. Mar. 31, 2007) .............9, 10, 48

*In re Oxford Health Plans, Inc.*,
187 F.R.D. 133 (S.D.N.Y.1999) ..............................................................................32

*In re Pall Corp.*,
No. 07-CV-3359 (JS)(ARL), 2009 WL 3111777 (E.D.N.Y. Sept. 21, 2009) .............37, 38, 44

*In re Progress Energy, Inc. Secs. Litig.*,
371 F. Supp. 2d 548 (S.D.N.Y. 2005).....................................................................16

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
930 F. Supp. 68 (S.D.N.Y. 1996) .....................................................................15, 25

*In re Revlon, Inc., Sec. Litig.,*
No. 99 Civ. 10192(SHS), 2001 WL 293820 (S.D.N.Y. Mar. 27, 2001) .................................18

*In re Salix Pharms., Ltd.*,
No. 14-CV-8925 (KMW), 2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) ............19, 21, 22, 41

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2001)......................................................................................37

viii

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 16 CIV. 6728 (CM), 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) ..........................48, 49

*In re Sona Nanotech, Inc. Secs. Litig.*,
  562 F. Supp. 3d 715 (C.D. Cal. Oct. 28, 2021)......................................................................20

*In re Supercom Inc. Sec. Litig.*,
  No. 15 CIV. 9650 (PGG), 2018 WL 4926442 (S.D.N.Y. Oct. 10, 2018)................................26

*In re Symbol Techs., Inc. Sec. Litig.*,
  No. 05-CV-3923 DRH AKT, 2013 WL 6330665 (E.D.N.Y. Dec. 5, 2013) ................... *passim*

*In re Synchrony Fin. Sec. Litig.*,
  988 F.3d 157 (2d Cir. 2021)..................................................................................................10

*In re Vale S.A. Sec. Litig.*,
  No. 19CV526RJDSJB, 2020 WL 2610979 (E.D.N.Y. May 20, 2020) ........................... *passim*

*In re Vale S.A. Sec. Litig.*,
  No. 15-cv-9539, 2017 WL 1102666 (S.D.N.Y. Mar. 23, 2017)...........................................46, 47

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016)...............................................................................................23, 31

*In re Wachovia Equity Sec. Litig.*,
  753 F. Supp. 2d 326 (S.D.N.Y. 2011).................................................................................39, 40

*In re WEBMD Health Corp. Sec. Litig.*,
  No. 11 CIV. 5382 JFK, 2013 WL 64511 (S.D.N.Y. Jan. 2, 2013) ........................................23

*In re Wells Fargo & Co. Sec. Litig.*,
  No. 1:20-CV-04494-GHW, 2021 WL 4482102 (S.D.N.Y. Sept. 30, 2021)............................50

*In re Winstar Commc'ns,*
  No. 01–CV–3014, 2006 WL 473885 (S.D.N.Y. Feb 27, 2006) .............................................44

*In re Xerox Corp. Sec. Litig.*,
  165 F. Supp. 2d 208 (D. Conn. 2001)..................................................................................30

*In re Yunji Inc., Sec. Litig.*,
  No. 19CV6403LDHSMG, 2021 WL 1439715 (E.D.N.Y. Mar. 31, 2021)..............................29

*Janbay v. Canadian Solar, Inc.*,
  No. 10 CIV. 4430, 2013 WL 1287326 (S.D.N.Y. Mar. 28, 2013) .........................................39

*Karimi v. Deutsche Bank Aktiengesellschaft*,
   No. 22-CV-2854 (JSR), 2022 WL 2114628 (S.D.N.Y. June 13, 2022) ..............................2, 16

*Lewis v. YRC Worldwide Inc.*,
   No. 119CV0001GTSATB, 2020 WL 1493915 (N.D.N.Y. Mar. 27, 2020) ...........................45

*Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*,
   724 F. Supp. 2d 447 (S.D.N.Y. 2010)...................................................................................39

*Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*,
   430 F. App'x 63 (2d Cir. 2011)...........................................................................................39

*Lorenzo v. SEC*,
   139 S. Ct. 1094 (2019)...................................................................................................35, 36

*Lopez v. Ctpartners Exec. Search Inc.*,
   173 F. Supp. 3d 12 (S.D.N.Y. 2016)...............................................................................23, 26

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015).................................................................................................50

*Lyn v. Inc. Vill. of Hempstead*,
   No. 03 CV 5041 DRH, 2007 WL 1876502 (E.D.N.Y. June 28, 2007) .............................36, 45

*Lyn v. Inc. Vill. of Hempstead*,
   308 F. App'x 461 (2d Cir. 2009) .........................................................................................36

*Manavazian v. Atec Grp., Inc.*,
   160 F. Supp. 2d 468 (E.D.N.Y. 2001) .............................................................................27, 28

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011).................................................................................................................8

*Mazuma Holding Corp. v. Bethke*,
   21 F. Supp. 3d 221 (E.D.N.Y. 2014) ...................................................................................46

*McIntire v. China MediaExpress Holdings, Inc.*,
   927 F. Supp. 2d 105 (S.D.N.Y. 2013)...................................................................................42

*Meyer v. Concordia Int'l Corp.*,
   No. 16 CIV. 6467 (RMB), 2017 WL 4083603 (S.D.N.Y. July 28, 2017)..................14, 19, 25

*Meyer v. Jonkosolar Holdings Co., Ltd.*,
   761 F.3d 245 (2d Cir. 2014).................................................................................................12

x

*Mucha v. Volkswagen Aktiengesellschaft,*
No. 17-CV-5092 (DLI)(PK), 2021 WL 2006079 (E.D.N.Y. May 20, 2021) .........................29

*Mucha v. Winterkorn*,
No. 21-1511-CV, 2022 WL 774877 (2d Cir. Mar. 15, 2022)................................................29

*Muhan Cui v. Xia*,
No. 19-CV-615 (NG)(SJB), 2021 WL 925480 (E.D.N.Y. Mar. 2, 2021) ...............................45

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
455 F. App'x 10 (2d Cir. 2011)..................................................................................22, 39, 42

*Norton v. Sam's Club,*
145 F.3d 114 (2d Cir.1998)....................................................................................................11

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000)......................................................................................28, 31, 37

*Nutriband, Inc. v. Kalmar*,
No. 19CV2511NGGSJB, 2020 WL 4059657 (E.D.N.Y. July 20, 2020..................9, 13, 18, 31

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015).............................................................................................................32

*Ong v. Chipotle Mexican Grill, Inc.*,
294 F. Supp. 3d 199 (S.D.N.Y. 2018).....................................................................................29

*Pearlstein v. Blackberry Ltd.*,
No. 13 CIV. 7060 (CM), 2021 WL 253453 (S.D.N.Y. Jan. 26, 2021)..............................46, 48

*Rice v. Smithtown Volkswagen*,
321 F. Supp. 3d 375 (E.D.N.Y. 2018) ....................................................................................13

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004).....................................................................................................9

*Rosen v. Brookhaven Cap. Mgmt. Co.*,
113 F. Supp. 2d 615 (S.D.N.Y. 2000)...................................................................................2, 40

*Salim v. Mobile Telesytems PJSC*,
2021 WL 796088 (E.D.N.Y. Mar. 1, 2021).............................................................................16

*S.E.C. v. Enterprises Sols., Inc*,
142 F.Supp.2d 561 (S.D.N.Y. 2001).......................................................................................14

*Sec. & Exch. Comm'n v. StratoComm Corp.*,
  652 F. App'x 35 (2d Cir. 2016) ................................................................................13

*Setzer v. Omega Healthcare Invs., Inc.*,
  968 F.3d 204 (2d Cir. 2020) ....................................................................................15

*Shanawaz v. Intellipharmaceutics Int'l Inc.*,
  348 F. Supp. 3d 313 (S.D.N.Y. 2018) ................................................................41, 44

*Shetty v. Trivago N.V.*,
  796 F. App'x 31 (2d Cir. 2019) ..........................................................................30, 31

*Slayton v. Am. Exp. Co.*,
  604 F.3d 758 (2d Cir.2010) .............................................................................24, 25, 40

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...........................................................................8, 9, 10, 37, 44

*Tolbert v. Queens College*,
  242 F.3d 58 (2d Cir.2001) .......................................................................................11

*Tongue v. Sanofi,*
  816 F.3d 199 (2d Cir. 2016) ....................................................................................32

*Town of Davie Police Officers Ret. Sys. v. City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan*,
  No. 21-909-CV, 2021 WL 5142702 (2d Cir. Nov. 5, 2021)...................................45

*Van Dongen v. CNinsure Inc.*,
  951 F. Supp. 2d 457 (S.D.N.Y. 2013).................................................................43, 46

*Villare v. Abiomed, Inc.,*
  No. 19 CIV. 7319 (ER), 2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021) ...............22

*Y-GAR Cap. LLC v. Credit Suisse Grp. AG*,
  2020 WL 2128749 (2d Cir. Apr. 15, 2020) ............................................................20

*Y-GAR Cap. LLC v. Credit Suisse Grp. AG,*
  No. 19 CIV. 2827 (AT), 2020 WL 71163 (S.D.N.Y. Jan. 2, 2020).......................20

*Yannes v. SCWorx Corp.*,
  No. 20-CV-03349 (JGK), 2021 WL 2555437 (S.D.N.Y. June 21, 2021) ..............30

**Rules**

Fed. R. Civ. P. 8 ..............................................................................................................11

Fed. R. Civ. P. 9(b) ...................................................................................................................11, 34

Fed. R. Civ. P. 12(b)(6)....................................................................................................................8

Fed. R. Civ. P. 56(d) ......................................................................................................................10

**Statutes**

15 U.S.C. § 78t(a) ...........................................................................................................................50

15 U.S.C. § 78u–4(b)(1)(B) ...........................................................................................................11

15 U.S.C. § 78u-5(c)(1)(A)(i) ........................................................................................................21

17 CFR §240.10b-5.........................................................................................................................35

Lead Plaintiff Kenneth Rickert ("Plaintiff") respectfully submits this memorandum in opposition to the motion to dismiss the Complaint[1] filed by defendants Neptune Wellness Solutions, Inc. ("Neptune"), Michael Cammarata ("Cammarata"), Toni Rinow ("Rinow"), and Martin Landry ("Landry") (collectively, "Defendants").

## INTRODUCTION

This is a straightforward case of securities fraud by a company and its executives that were not honest with investors about known problems with the company's largest acquisition, its largest business transformation, and the purported largest sale in its corporate history. Instead, they concealed known deficiencies in the capability and utilization of the acquired SugarLeaf facility, misrepresented a deal with Costco that was supposed to cement its entry into the hand sanitizer business at the height of Covid, and lied about a purported $100 million purchase order for personal protective equipment ("PPE"). The Complaint pleads in more-than-sufficient detail each of the misrepresentations; when, where and by whom each were made; and why Plaintiff contends each were false. ¶¶33-38, 61-62, 64-69, 72-75, 80-87, 89-91, 95-105, 109-112.

Defendants' motion shows no pleading deficiency. Instead, it raises three arguments that have nothing to do with pleading and show only that there are factual disputes for trial.

First, it claims that the truth was already known by investors even though it was not disclosed in the actual statements made to investors alleged in the Complaint. To do this, the Motion pieces together snippets of text neither alleged nor incorporated in the Complaint, none of which actually discloses the specific information the Complaint alleges Defendants concealed.

Second, because the alleged misrepresentations were in concealment of Defendants'

---

[1] All "¶__" references are to the Amended Consolidated Class Action Complaint (the "Complaint") (ECF No. 41). All "DM" references refer to the Memorandum of Law in Support of Defendants' Motion to Dismiss.

management failures, Defendants erroneously argue that they plead negligence rather than fraud. Not so. The "federal securities laws prohibit misrepresentation of material facts, even when those material facts relate to corporate mismanagement." *Karimi v. Deutsche Bank Aktiengesellschaft*, No. 22-CV-2854 (JSR), 2022 WL 2114628, at *9 (S.D.N.Y. June 13, 2022) (quotation omitted). Nor can the allegations be reframed as fraud-by-hindsight. As alleged, and set forth herein, they concealed from investors then-current material adverse information.

Third, Defendants advance their own set of "alternative facts," many of which are wholly unsupported and seem to derive only from counsel's imagination. For example, Defendants contend that the several confidential witnesses corroborating Complaint allegations should be assumed not credible because they "were terminated from the company and unsurprisingly harbor negative views regarding their termination." DM 39. But nothing in the Complaint or otherwise in the record suggests that there is any truth to that conjecture. At any rate, challenges to the credibility of witnesses and to the well-pleaded allegations in the Complaint raise issues for the jury, not pleading defects. *See Rosen v. Brookhaven Cap. Mgmt. Co.*, 113 F. Supp. 2d 615, 617 (S.D.N.Y. 2000).

Defendants' scienter and loss causation arguments fare no better. As the Complaint readily shows, Defendants were at least reckless in misrepresenting crucial facts to investors. Among other things, each had access to the truth undermining his or her public statements, the misrepresentations involved core operations, and multiple confidential witnesses confirmed that the adverse information concealed from investors was widely known internally. ¶¶125-154. Thus, the inference of scienter is strong and far more compelling than any competing inference. And, each disclosure of the concealed risks resulted in a significant drop in the price of Neptune's shares. ¶¶114-124.

Because Defendants failed to show any pleading deficiency, their Motion to Dismiss should be denied in its entirety, and Defendants should be directed to engage in discovery without further delay.

## STATEMENT OF FACTS

### I.      Neptune and its Turn Towards Cannabis

Neptune was founded in 1998 as a manufacturer of nutraceuticals, especially krill oil. ¶25. In 2017, Neptune pivoted to the legal cannabis market. ¶¶25-26. After obtaining a Canadian cannabis license in January 2019, Neptune began to extract cannabis and hemp oil for use by other businesses ("B2B"). ¶27. However, Neptune eyed expanding into higher-margin products sold to consumers ("B2C"). ¶¶27-30.

On May 9, 2019, Neptune announced it would acquire SugarLeaf, a North Carolina-based manufacturer of hemp extractions and formulated products, for $18.1 million plus up to $132 million in earnout payments if certain EBITDA and other targets were met. ¶¶31-32. This was the largest acquisition in Neptune's corporate history and its foothold into expanding into U.S. markets and consumer products.  At the time, the cannabis extract market was booming in the United States, and in particular for cannabidiol ("CBD") oil. ¶¶28, 31. Two months later, on July 8, 2019, Cammarata took the reigns as Neptune's Chief Executive Officer. DM 4. Cammarata did not favor the SugarLeaf deal inked by his predecessor, and began to secretly shift resources away from SugarLeaf. ¶¶50-57. Cammarata concealed this shift from investors, and covered his tracks with highly misleading positive statements about SugarLeaf that were deeply inconsistent with the actual state of the business. ¶¶125-136.

### II.     The SugarLeaf Facility was not Equipped to Provide the Type of Production and Sales that Neptune Touted to Investors

On July 24, 2019, Neptune announced its completion of the SugarLeaf Acquisition. ¶33.

3

Beginning on that date, Neptune and its executives made a blitz of statements trumpeting SugarLeaf's supposed capabilities and purported "impressive earnings potential." ¶¶33, 35, 37. None disclosed to investors huge, known impediments at SugarLeaf, including that it did not then possess the capability to produce the THC-free CBD oil the market demanded, or to extract at a high capacity even the inferior variety. ¶¶33-40, 44-49. Additionally, for many months they concealed that SugarLeaf was not GMP certified, which many B2B extract purchasers demanded. ¶¶33-44, 55, 60. SugarLeaf's failure to obtain GMP certification significantly impeded sales. *Id.*

As 2019 progressed, multiple Neptune employees confirmed that Neptune failed to make the investment necessary to scale up SugarLeaf so it could produce the THC-free CBD oil the market demanded. ¶¶50-55. Worse yet, Neptune secretly steered business away from SugarLeaf, then warned Neptune employees to conceal these acts from SugarLeaf founder Peter Galloway. ¶¶56-57, 144-147. The secret plan to starve SugarLeaf of resources and business opportunities lowered capital investments and allowed Neptune to avoid up to $132 million in earnout payments to SugarLeaf's founders. ¶¶144-147. But it left SugarLeaf with a skeletal business that bore no resemblance to the robust, capable facility described to investors. ¶¶61-69.

As a result, SugarLeaf never was able to make the desirable THC-free CBD oil, and instead accumulated inventory of low grade crude extract it could not sell. ¶58. By the beginning of 2020, Neptune began to slow extraction activities to a near standstill at the facility and eventually furloughed all SugarLeaf employees. ¶¶4, 59-60, 71. Defendants said nothing about this drastic change, instead continuing to portray SugarLeaf as an unmitigated success. ¶¶61-70. Even worse, Neptune put out a press release stating that it was "putting the final touches to get the facility ready for a Good Manufacturing Practice ('GMP') pre-inspection" when, in reality, Neptune employees confirm that Defendants had not even taken the initial steps towards upgrading the facility for

4

GMP certification. ¶¶55, 64-65.

### III.   Neptune Makes False Statements Regarding Hand Sanitizer Business

Defendants also sought to exploit the Covid pandemic by misrepresenting opportunities connected with producing hand sanitizer. On April 9, 2020, Defendants announced that Neptune was getting into the hand sanitizer market and had applied to the U.S. Food and Drug Administration to manufacture hand sanitizer at its SugarLeaf facility. ¶¶71-72. On April 23, 2020, during the brief window in which hand sanitizer was in record demand, Defendants boasted that Neptune was "successfully accelerating production of hand sanitizers to over one million units weekly." Defendants' stock promotion worked: Neptune's stock price skyrocketed in response by over 25%. ¶¶74-76. However, Neptune employees confirmed that Neptune did not actually have *any* capability to produce hand sanitizer at the time, let alone "one million units weekly." ¶74. Moreover, while the announcements referred to production at SugarLeaf, Neptune instead imported inferior hand sanitizer from Mexico which it rebranded as a "Neptune" product. ¶¶73, 75, 77-79. Defendants did not disclose to investors either its lack of production capability or secret relabeling of inferior imported hand sanitizer.[2]

### IV.   By Hiding Deterioration at SugarLeaf, Defendants Raise more than $12 Million in July 2020

In July 2020, though they knew that SugarLeaf had serious deficiencies and had already begun to wind down operations, Defendants told investors the opposite, claiming that SugarLeaf then "positions us obviously with a large capacity in the U.S.," ¶84. Defendants Neptune and

---

[2] The June 10, 2020 annual report Defendants reference made no such disclosure.  The single clause in the voluminous filing said only that some was sourced by third parties in North America. DM Ex. 2, p. 16.  It said nothing about the inferior quality of the actual product, or of the Company's inability to produce sanitizer itself, despite months earlier touting "accelerating production to one million units weekly." ¶74.

Cammarata also misrepresented a purported blockbuster hand sanitizer deal with Costco that both promoted on July 9, 2020 via Twitter. ¶¶88-90. Neither informed investors that Neptune was incapable of delivering product at the quality or quantity necessary to satisfy the contract, and sought to cover up its own deficiencies by relabeling substandard imports. ¶91.

Defendants were no more honest in the prospectus used to sell Neptune shares in a July 15, 2020 secondary offering raising approximately $12.65 million. ¶¶95, 131. That prospectus, which was issued by Neptune, failed to disclose the known risks that were already impacting SugarLeaf and Neptune's hand sanitizer business, or of the planned wind-down for SugarLeaf. ¶95.

## V. Neptune Hides Further Deterioration in SugarLeaf and Neptune's Hand Sanitizer Business from Investors

As three separate former employees corroborated, the deal with Costco fell apart when it was discovered that Neptune was using inferior hand sanitizer it had imported from Mexico and relabeled as its own product. ¶¶93-94. In sharp contrast to their immediate social media posts prominently announcing the deal's inception, Defendants were silent regarding its collapse. Instead, they continued to promote Neptune's hand sanitizer business and discussed the deal with Costco as if it were still intact. For example, on an August 11, 2020 earnings call, Cammarata told investors that "[s]ince July, our hand sanitizers have been sold in Costco stores." ¶¶94, 96-101, 104-105. This was manifestly misleading—the Costco deal was then dead. *Id.*

In the latter half of the Summer and into the Fall of 2020, SugarLeaf fired most of its staff and began to shut down entirely. This too was hidden from investors, as Defendants continued to discuss SugarLeaf in public forums in only positive terms. ¶¶96-97, 102-103.

Defendants' misleading statements continued to accrue financial benefits. On October 20, 2020 – without disclosing the collapse of SugarLeaf and the hand sanitizer business – Neptune announced another secondary offering. ¶132. This time, it exploited the artificially inflated stock

6

price to raise approximately $35 million. *Id.*

## VI.    Defendants Mislead Investors About Purported $100 Million Purchase Order

In its Q2 2021 Earnings Call on November 16, 2020, Defendants Neptune, Cammarata, and Rinow announced that Neptune had secured "at least CAD$100 million in purchase orders" for PPE equipment, mainly nitrile gloves. ¶106. When asked by analysts for specifics about the purchase orders, both Cammarata and Rinow omitted specific risks to their fulfillment, instead reassuring investors that the CAD$100 million in purchase orders was "conservative" and they did not see any issue with "bring[ing] them home." ¶¶107-112. These assurances were false and misleading.  At the time they were made, Neptune lacked the inventory to fulfill the purchase orders, lacked the capacity to manufacture the PPE equipment, and had not secured any external supply of PPE equipment to fulfill the orders. *Id*. *None* of these known, then-existing impediments were disclosed to investors. *Id*. As a result of this highly misleading announcement, Neptune's stock price rose by an additional 12%. ¶¶107-113.

## VII.    The Truth is Disclosed in a Series of Partial Disclosures

By February 15, 2021, Defendants' coverup began to crack. On that date, after the market closed, Neptune announced disappointing financial results for the third quarter of the Company's fiscal year 2021, admitting that despite its claims of huge deals and enormous opportunities, revenue actually declined by almost 75%. ¶114. Even worse, the Company took ***three separate charges totaling more than ten times its quarterly revenue***, all related to the SugarLeaf Acquisition. *Id*. Specifically, Neptune booked a $35.6 million goodwill impairment charge, a $2.1 million tangible and intangible asset impairment charge, and a $13.95 million accelerated amortization charge, all of which it attributed to SugarLeaf.  *Id.*

The following morning, on February 16, 2021, Neptune filed its Form 6-K where it

7

disclosed to investors *for the first time* that SugarLeaf had actually been shut down, its employees furloughed, and contracts between SugarLeaf and third parties ended. ¶¶115-116. This action informed investors that SugarLeaf lacked the capabilities and prospects Defendants had claimed.

On February 16, 2021, Neptune also held its Q3 2021 Earnings Call. Then, when pressed by an analyst on the vaulted promises of Neptune's hand sanitizer deal with Costco, Cammarata admitted that Neptune was not, in fact, expanding its sales into Costco's stores and was having problems with selling its hand sanitizer to anyone. ¶¶117-118. This was the first time that Cammarata or any other Defendant acknowledged that Costco terminated the much-hyped deal. *Id*. As a result, Neptune's stock price fell by $1.07, or 38.21%, within a two-day span. ¶120.

On July 15, 2021, the other shoe dropped for investors when Rinow admitted that Neptune could not fulfill the $100 million in PPE purchase orders, informing investors what Defendants had known all along—that the Company lacked both capacity and supply chain to become a major PPE provider. ¶¶119, 122-123. As a result of this final disclosure, Neptune's stock plunged by 22% from $1.09 to $0.84. ¶124.

## ARGUMENT

**I.      Plaintiff Adequately Alleges Violations of §10(b) of The Exchange Act**

    **A.      Applicable Pleading Standards do not Favor Dismissal**

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff "need only allege 'enough facts to state a claim to relief that is plausible on its face.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 n.12 (2011) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (209). On a 12(b)(6) motion, a court must accept all well-pled factual allegations

as true, draw all reasonable inferences in the plaintiff's favor, and determine whether the plaintiff may be entitled to relief under any reasonable reading of the complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320-22 & n.4 (2007).

A complaint need only contain "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" supporting the claims. *Id*. at 545. "In resolving a Rule 12(b)(6) motion, the court's task is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Nutriband, Inc. v. Kalmar*, No. 19CV2511NGGSJB, 2020 WL 4059657, at *6 (E.D.N.Y. July 20, 2020).

To state a claim under Section 10(b) of the Exchange Act, a complaint must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *GAMCO Inv'rs, Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214, 217 (2d Cir. 2016) (citation omitted). Misrepresentations are adequately pled where the complaint "specif[ies] each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). Complaint allegations must also raise a strong inference of scienter, but it "need not be irrefutable, i.e., of the smoking-gun genre, or even the most plausible of competing inferences." *Tellabs*, 551 U.S. at 322-23 (internal citations and quotations omitted). Instead, scienter is adequately alleged where the inference of reckless or intentional misrepresentation is cogent and at least as compelling as any identified competing inference. *Id*.

**B.     Defendants' Reliance on External Documents Confirms that the Disputes at Issue Should Be Resolved at Summary Judgment or Trial**

As a general matter, "[i]n deciding a motion to dismiss, the Court may only consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the

9

pleadings and matters of which judicial notice may be taken." *In re OSI Pharms., Inc. Sec. Litig.*, No. 04-CV-5505 (JS)(WDW), 2007 WL 9672541, at *3 (E.D.N.Y. Mar. 31, 2007) (internal citations and quotations omitted). The Second Circuit prohibits this Court from considering other matters without first converting the motion into one for summary judgment. *Id*. (citing *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)).[3] Unable to show any defect in the well-pleaded facts alleged, Defendants manufacture a 20-page counternarrative citing 25 external documents and even more alternative facts supported by nothing more than sheer conjecture. Such references have no place in a motion to dismiss. *OSI*, 2007 WL 9672541, at *3. At this stage, courts "are obligated to credit" the plaintiff's theory, and to accept as true all well-pleaded allegations. *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 169–70 (2d Cir. 2021).

Thirteen (***or just over half***) of the exhibits Defendants submit are not cited in the Complaint at all. *See* Stokes Decl., Exs. 1-4, 6-8, 14, 16 and 20-23. Accordingly, it cannot be argued that these documents are "integral to or explicitly relied upon" by Plaintiff. Instead, Defendants misuse these documents, many of which are outside of the Class Period, to advance alternative facts. *Id.*; *see also* DM 5-9, 14, 16-17, 19-20. Such tactics are improper on a Rule 12(b)(6) motion. *Tellabs*, 551 U.S. at 322.

Plaintiff takes no position on Defendants submission of documents relied upon as part of the moving allegations of the Complaint (Stokes Decl. Exs. 5, 9-13, 15, 17-19, 24-25) except to note that Defendants do not dispute that their statements are accurately reproduced in the Complaint and that the Court should only use them to "determine what statements the documents contain, not for the truth of the matters asserted." *In re Chembio Diagnostics, Inc. Sec. Litig.*, No.

---

[3] If converted, Plaintiff requests expedited paper and deposition discovery pursuant to Fed. R. Civ. P. 56(d), and upon conversion Plaintiff will submit a declaration specifying precisely the discovery required.

20CV2706ARRPK, 2022 WL 541891, at *6 (E.D.N.Y. Feb. 23, 2022).

### C.  The Complaint Identifies Allegedly False and Misleading Statements With Particularity

Plaintiffs' Complaint easily satisfies the particularity requirements of Rule 9(b) and the PSLRA.  These hurdles are slightly higher than the plain statement required under Rule 8, but not particularly onerous. "To satisfy the pleading standard for a misleading statement or omission under Rule 9(b), a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015). "The PSLRA's requirements are similar, stating that the complaint must specify 'the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *Id*. (quoting 15 U.S.C. § 78u–4(b)(1)(B)).[4]

### 1.  Defendants made materially misleading statements and omissions regarding SugarLeaf

The Complaint identifies each statement about SugarLeaf that is alleged to be misleading, who made such statement, when and where such statements were disseminated, and why Plaintiff contends each is misleading.  No more is required. *In re Vale S.A. Sec. Litig.*, No. 19CV526RJDSJB, 2020 WL 2610979, at *18–19 (E.D.N.Y. May 20, 2020). For the earlier statements about SugarLeaf, the Complaint alleges in detail how and why Defendants' statements

---

[4] Defendants fail to specifically address statements ¶¶80, 89, and 90, and therefore have waived any further challenge to them. *See Tolbert v. Queens College,* 242 F.3d 58, 75 (2d Cir.2001) (undeveloped argumentation, are deemed waived) (internal quotations omitted); *Norton v. Sam's Club,* 145 F.3d 114, 117 (2d Cir.1998) ("Issues not sufficiently argued in the briefs are considered waived").

11

painted a materially misleading state of affairs. ¶¶33, 35, 37. Once Defendants chose to speak about SugarLeaf, they undertook "a duty to tell the whole truth," even if there was "no existing independent duty to disclose [such] information in the first place." *Meyer v. Jonkosolar Holdings Co., Ltd.*, 761 F.3d 245, 250 (2d Cir. 2014); *see also Caiola v. Citibank, N.A., New York*, 295 F.3d 312, 331 (2d Cir. 2002) ("upon choosing to speak, one must speak truthfully about material issues"). In particular, Defendants' claims that SugarLeaf provided Neptune with "[n]ew capabilities to supply hemp extracts and finished products to a broad U.S. customer base" (¶33) and would enable Neptune "to participate in both B2B and B2C, CBD and hemp markets in the United States" (¶37) omitted that SugarLeaf then lacked such capabilities and could not acquire them without significant upgrades. ¶40.[5]

Defendants became increasingly misleading as the Class Period progressed. *See* ¶¶61, 64, 66, 68, 80, 82, 84, 86, 95, 96, 102. For example, Neptune explicitly stated that "[m]anagement is putting the final touches to get the facility ready for a Good Manufacturing Practice ('GMP') pre-inspection" at SugarLeaf (¶64), when in fact it had not and refused to invest the resources necessary to obtain GMP certification as multiple former employees confirmed. ¶¶55, 65. In fact, Neptune refused even to allocate resources to keep SugarLeaf's dilapidated equipment operational. ¶¶50-54. In particular, it refused to allocate an engineer necessary to maintain and operate a key CBD processing machine. ¶54.

---

[5] Defendants' reliance on *HEXO* for the proposition that they were permitted to conceal material deficiencies impeding the operation of SugarLeaf's facilities is misplaced. The *HEXO* court merely held that omitting facility problems which were not alleged to have "had any effect on HEXO's supply chain operations" did not render statements misleading because that particular "entire lawsuit [was] premised on insufficient demand for HEXO's product." *In re HEXO Corp. Secs. Litig.*, 524 F. Supp. 3d 283, 312-13 (S.D.N.Y. 2021). By contrast, the concealed impediments at SugarLeaf went directly to the failure of Neptune's largest and most important acquisition. ¶¶39-70. Thus, if anything, *HEXO* weighs against dismissal of the claims here.

Cammarata's August 11, 2020 claim that Neptune has ""a huge capacity in North Carolina," and that SugarLeaf was "poised for expansion and profitability," was equally misleading. ¶96. In fact, SugarLeaf had already laid off all of its employees and shuttered its facility. ¶¶70, 97, 102-103, 149. The wide divergence between these boastful claims and the actual status of SugarLeaf is classic evidence of falsity. *See In re Aphria, Inc. Sec. Litig.*, No. 18 CIV. 11376 (GBD), 2020 WL 5819548, at *8 (S.D.N.Y. Sept. 30, 2020), *reconsideration denied,* No. 18 CIV. 11376 (GBD), 2021 WL 4442818 (S.D.N.Y. Sept. 28, 2021) (claim that acquisition provided the defendant with "world class assets" and an "established and successful pharmaceutical import and distribution company" were misleading where the assets "were underdeveloped and largely inoperable entities"); *Nutriband, Inc.*, 2020 WL 4059657, at *8 (defendants' statements about a "team" were misleading because, at the time, defendants "had no such 'team' in place"). To the extent Defendants have any admissible evidence contradicting these well-pleaded allegations, such disputes are properly resolved at trial. *See Rice v. Smithtown Volkswagen*, 321 F. Supp. 3d 375, 384 (E.D.N.Y. 2018).

The Complaint also sufficiently alleges falsity for Neptune's statement that it was "accelerating production of hand sanitizers to over one million units weekly." ¶¶74-75, 77-78. As alleged and confirmed by multiple confidential witnesses, SugarLeaf lacked capability to produce any scale quantity at that time and was instead importing cheap hand sanitizer from Mexico. ¶¶77-79. Courts readily find statements suggesting "that there was a product that was available to be sold" when the company was "in no position to begin selling anything" to be false and misleading. *See Sec. & Exch. Comm'n v. StratoComm Corp.*, 652 F. App'x 35, 37 (2d Cir. 2016).[6]

---

[6] *See also In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 240 (S.D.N.Y. 2010) (finding the omission of defendants' position size in "hedged CDOs" from its total disclosed CDO holdings provided a "misleading impression concerning the full extent of [defendants]'s CDO exposure");

Moreover, Cammarata's and Rinow's discussions of SugarLeaf in August 2020 as "hav[ing] huge capacity in North Carolina" and in November 2020 as "[w]ith restructuring activities and costs largely behind us, [SugarLeaf is] now poised for expansion and profitability … [t]he outlook is indeed positive" were misleading because *Neptune was shrinking, not expanding SugarLeaf*. At the time of the Neptune had secretly terminated the overwhelming majority of SugarLeaf's workforce and was in the process of shuttering the facility. ¶¶96, 102; *see Meyer v. Concordia Int'l Corp.*, No. 16 CIV. 6467 (RMB), 2017 WL 4083603, at *4-5 (S.D.N.Y. July 28, 2017) (holding that defendants' failure to disclose the termination of 43% of its sales staff was an actionable omission).

Defendants cannot explain away their omissions. Their claim to have disclosed all material risks, DM 28-30, is belied by the very materials they cite. *None* actually disclosed the limited capacities of SugarLeaf, its inability to provide the type of extract the market demanded, the lack of GMP certification, the lack of upgrades necessary to obtain GMP certification, or the failure to even provide basic maintenance. ¶¶33, 35, 37. And, *none* of the later documents they cite actually and plainly said that Neptune had slowed down extraction activities at SugarLeaf, laid off SugarLeaf employees, diverted business away from SugarLeaf, refused to make necessary investments or even provide critical maintenance at SugarLeaf, or shortly thereafter shuttered SugarLeaf. ¶¶61, 64, 66, 68, 80, 82, 84, 86, 89, 96, 102. Defendants' citations instead are prototypical "boilerplate," intended to obscure rather than disclose adverse information by cloaking it in generalities and speaking about known, already incurred problems as if they were

---

*S.E.C. v. Enterprises Sols., Inc.*, 142 F.Supp.2d 561, 577 (S.D.N.Y. 2001) (statements portraying "fully developed company with an actual source of revenue" were misleading when "company had no revenue and its limited operations [are] funded solely by sales of stock and loans from investors").

merely hypothetical. *Id.* Thus, far from exposing the truth, the so-called disclosures Defendants cite were themselves misleading. *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996).

For example, Defendants' claim that Cammarata's and Rinow's vague references to "retooling" on June 10, 2020 and November 16, 2020, respectively, excused their concealment of material adverse facts about SugarLeaf is wrong as a matter of fact and law. DM 14-16. As an initial matter, Cammarata was discussing retooling Neptune's ***business model*** to expand into hand sanitizer and other consumer products, ***not*** fixing or upgrading impaired machines at the SugarLeaf facility: "So what we've done is ***looked at the model*** on how we can expand into the personal care and homecare areas. And ***that's something that we're retooling*** …" ¶84. Moreover, as with his prior misleading statements, Cammarata's statement hid the fact that SugarLeaf lacked crucial capabilities, had been starved of resources, and was in the process of being wound down. ¶85. And that "retooling" referred to pivoting the business model away from failed B2B CBD extraction rather than admitting that SugarLeaf's facilities needed to be fixed was made clear by the rest of Cammarata's statement, which claimed that SugarLeaf ***then*** "positions us obviously with a large capacity in the U.S." ¶84. Similarly, Rinow stated that Neptune "*will* also retool [SugarLeaf]", portraying any alteration to SugarLeaf as a future event, while hiding the fact SugarLeaf had already laid off its employees and shuttered entirely months earlier. ¶¶102-103. Further, Rinow, like Cammarata, also buttressed her comments with optimistic statement that "we are now poised for expansion and profitability. The outlook is indeed positive." ¶102. Advancing such unbalanced optimism, and "underrepresent[ing] the extent of those very problems" rendered his statements misleading. *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 216 (2d Cir. 2020).

Defendants' repeated attempts to reimagine well-pleaded Complaint allegations as

assertions of mismanagement also fail. *See, e.g.,* DM 30 n.100. The Complaint pleads liability not for mismanagement, but for making false and misleading statements to investors about the status of Neptune's largest acquisition, its most important business initiative, and an unfulfillable $100 million purchase order. ¶¶33-38, 61-62, 64-69, 72-75, 80-87, 89-91, 95-105, 109-112. That some of these falsifications Defendants made to investors were made to obscure their poor business conduct does not render them outside the scope of the Exchange Act. The "federal securities laws prohibit misrepresentation of material facts, even when those material facts relate to corporate mismanagement." *Karimi*, 2022 WL 2114628, at *9 (quoting *City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat., PLC*, 423 F. Supp. 2d 348, 355 (S.D.N.Y. 2006). Here, "[b]ecause Plaintiff alleges that Defendants intentionally [or recklessly] misled the public, rather than simply ma[de] bad business decisions, Plaintiff has pled more than mere mismanagement." *Vale*, 2020 WL 2610979, at *9.

Defendants' cited authorities are distinguishable. All deal with defendants who fully disclosed risks and issues at the outset. *See, e.g., Salim v. Mobile Telesytems PJSC*, 2021 WL 796088, at *13 (E.D.N.Y. Mar. 1, 2021) (statements were not misleading because defendants disclosed all material facts and the "omitted" information was in the public realm); *In re Progress Energy, Inc. Secs. Litig.*, 371 F. Supp. 2d 548, 553 (S.D.N.Y. 2005) (same). By contrast, the Complaint here demonstrates that Defendants omitted material risks that were not contained in any of the purported disclosures and, when issues arose, covered them up. ¶¶33-70, 80-87, 95-97, 102-103. Defendants also erroneously claim that they never represented that SugarLeaf had specific capabilities. DM 28. Not so. As the Complaint makes clear, Defendants claimed that SugarLeaf would open markets and provide capabilities to Neptune that SugarLeaf, as it existed, was incapable of providing. ¶¶33-38, 61-69; *See In re Aphria, Inc. Sec. Litig.*, 2020 WL 5819548, at

16

*8-9 (statements about value and benefit of newly-acquired factories were materially misleading and actionable because defendants omitted that the factories were underdeveloped, thereby cutting against the accuracy of the statements).[7]

> **2.  Defendants made materially misleading statements and omissions regarding Neptune's hand sanitizer business**

Plaintiff also identifies with particularity each misrepresentation concerning Neptune's hand sanitizer business. In statements to investors on April 9, 2020, April 23, 2020, and July 9, 2020, Neptune and Cammarata misrepresented Neptune's capabilities to produce hand sanitizer and omitted its reliance on inferior Mexican hand sanitizer, and inability to manufacture its own product at scale. ¶¶72, 74, 89, 90. Later statements made on August 11, 2020 and November 16, 2020 were even more misleading. Then, Defendants Neptune and Cammarata misrepresented Neptune's Costco hand sanitizer deal as successful, when Neptune employees confirm that the Costco deal had fallen apart due to Neptune's use of inferior imported products. ¶¶98, 100, 104.

The Complaint demonstrates that Defendants' statements concealed the actual status of Neptune's hand sanitizer business. Neptune told investors that it was "successfully accelerating

---

[7] Defendants' reliance *on In re FBR Inc. Sec. Litig.* and *Huang v. Avalanche Biotechnologies, Inc.* is misplaced. Neither has any relation to the facts here.  In *FBR*, the court held that because "defendants are not alleged to have provided any qualitative assurances" regarding their risk management program, they could not be liable for omitting that it imperfectly discerned potential insider trading. 544 F. Supp. 2d 346, 362 (S.D.N.Y. 2008). Here, in stark contrast to *FBR*, Defendants repeatedly made qualitative assurances, including that SugarLeaf then "positions us obviously with a large capacity in the U.S.," ¶84, when in fact they knew of material impediments compromising the ability to take advantage of that capacity, ¶85. Thus, the appropriate parallel is *Aphria*, not *FBR.  Huang* is equally detached from the facts here. That court merely held that the plaintiff had not plausibly alleged that the omitted fact – a lack of efficacy for a drug candidate – was known when omitted, as the defendants were blinded from interim data other than adverse safety events. No. 15-CV-03185-JD, 2016 WL 6524401, at *7 (N.D. Cal. Nov. 3, 2016). Here, Plaintiff has alleged ***and corroborated with multiple confidential witnesses*** that the deficiencies in SugarLeaf, Neptune's hand sanitizer business, and its claimed large orders were internally known at the time, ¶¶39-70, 77-79, 93-94, and no facts whatsoever suggest that Defendants here were blinded from such information.

17

production of hand sanitizers to over one million units weekly," when in fact Neptune had *no capacity* to produce hand sanitizer and was not accelerating production to over one million units weekly, as former employees confirmed. ¶¶74-79. Thus, Defendants' inaccurate statements on Neptune's actual capabilities to produce hand sanitizer were materiality misleading. *See Nutriband, Inc.*, 2020 WL 4059657, at *8. Moreover, when Cammarata told investors that "[s]ince July, our hand sanitizers have been sold in Costco stores," the deal between Costco and Neptune had already "***been killed for a while***," according to Neptune employees. ¶¶93-94, 98-101; *In re Aphria, Inc. Sec. Litig.*, 2020 WL 5819548, at *8.

Defendants do not dispute that a reasonable jury could find the omitted information, if proved at trial, was necessary to understand the positive statements made about Neptune's hand sanitizer business. These statements, "viewed as a whole, would have misled a reasonable investor." *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 742 (S.D.N.Y. 2015). Instead, they challenge the facts themselves. DM 32. Such arguments are "not resolveable [sic] on a motion to dismiss the complaint." *In re Revlon, Inc., Sec. Litig.,* No. 99 Civ. 10192(SHS), 2001 WL 293820, at *8 (S.D.N.Y. Mar. 27, 2001).

> **3.    Defendants made materially misleading statements and omissions regarding claimed $100 million in PPE purchase orders**

The Complaint cogently pleads that Defendants withheld from investors serious known risks undermining Cammarata's claim to have landed a whopping $100 million in purchase orders for nitrile gloves. ¶¶107-112. When Defendants chose to tout the purported $100 million purchase order to investors, they assumed "an obligation to ensure [their] statements were both accurate and complete." *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 612 (S.D.N.Y. 2017). They did not do so. Instead, Neptune, Cammarata, and Rinow hid material risks from investors, including that Neptune lacked inventory to fulfill the purchase orders, lacked the capacity to

18

manufacture the gloves ordered, and had failed to secure any external supply of PPE equipment to fulfill the orders. By touting the so-called orders while concealing these known risks, Neptune, Cammarata, and Rinow deprived investors of information crucial to make the statements not misleading under the circumstances in which they were made. *Vale*, 2020 WL 2610979, at *15.

Unable to dispute that market participants needed to know the truth about impediments to capitalizing on an order of that magnitude, Defendants falsely claim that they "expressly disclosed the supply chain and transportation risks," *see* DM 33-34. They did not. Even the text Defendants cite says absolutely nothing Neptune's PPE business, its then-present lack of capacity, or its failure to procure a supplier. Instead, it speaks only to *potential* disruptions. *See* DM Ex. 17, p. 11. But, the Complaint alleges that Neptune **never** had the capacity to fulfill this order, not that it built a supply chain which was unexpectedly disrupted.  ¶¶109-112.  Further, the so-called "disclosure" is buried on page 11 of an unrelated document, and the "disclosure" itself had nothing to do with the claimed $100 million purchase order, but rather was a broad platitude about Neptune's business as a whole. *See* DM Ex. 23, p. 11; *In re Salix Pharms., Ltd.*, No. 14-CV-8925 (KMW), 2016 WL 1629341, at *11 (S.D.N.Y. Apr. 22, 2016) (holding that disclosure of risk was insufficient when it was mentioned only once in twelve pages of cautionary statements). "Vague disclosures of general risks will not protect defendants from liability." *In re MF Global Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 304 (S.D.N.Y. 2013).

Further, the boilerplate "disclosures" of "supply chain challenges" Defendants now cite did not convey the magnitude of the risk to the $100 million in purchase orders. *See Concordia Int'l Corp.*, 2017 WL 4083603, at *5. Even "warnings of specific risks ... do not shelter defendants from liability if they fail to disclose hard facts critical to appreciating the magnitude of the risks described." *Id.* (internal quotation omitted).  The cited disclosures here were neither meaningful

19

nor tailored to the specific risks in question.

Defendants' reliance on *Y-GAR Cap. LLC v. Credit Suisse Grp. AG* is misplaced and only serves to highlight that Defendants' "disclosures" were not meaningful.  In *Y-GAR*, the defendants explicitly and repeatedly warned of the specific risks at issue. No. 19 CIV. 2827 (AT), 2020 WL 71163, at *4 (S.D.N.Y. Jan. 2, 2020), *appeal withdrawn*, 2020 WL 2128749 (2d Cir. Apr. 15, 2020). Defendants here did the exact opposite, omitting such details entirely from their disclosures and instead relying on vague boilerplate that could apply to any manufacturing business.

4. **Defendants' reliance on inapposite cannabis cases does nothing to show a pleading deficiency here**

Defendants' Motion relies heavily on the presumption that this Action is identical to *In re Curaleaf Holdings, Inc. Secs. Litig.*, 519 F. Supp. 3d 99 (E.D.N.Y. 2021), *In re HEXO Corp. Secs. Litig.*, 524 F. Supp. 3d 283 (S.D.N.Y. 2021), and *In re Sona Nanotech, Inc. Secs. Litig.*, 562 F. Supp. 3d 715 (C.D. Cal. Oct. 28, 2021), have nothing to do with the case before the Court.[8] In *Curaleaf*, the plaintiffs argued that the defendant failed to disclose the widely known and easily discoverable fact that THC is illegal. 519 F. Supp. 3d at 106-07. In *HEXO*, unlike here, the defendants made prompt and specific disclosures, but for arguably one supply chain item that had nothing to do with the demand-driven adverse performance at issue. 524 F. Supp. 3d at 300-02;

---

[8] That cannot even be said for *In re Sona Nanotech, Inc. Secs. Litig.*, whose only relation to the case at bar is that its underlying events also took place in 2020. In *Sona*, the court granted dismissal because the plaintiffs (1) failed to specifically allege how each statement was misleading, (2) failed to plead that the statements themselves were untrue, (3) failed to plead that the statements were false at the time they were made, (4) failed to plead that the statements would have mislead a reasonable investor, and (5) failed to plead that defendants withheld damaging information at the time the statements were made. *Id*. at *724-26. Here, Plaintiff *does plead* with specificity that Defendants made material misstatements and omissions that would have misled a reasonable investor while in possession of contradictory information at the time the statements were made. ¶¶33-38, 61-62, 64-69, 72-75, 80-87, 89-91, 95-105, 109-112. Thus, *all five* of the reasons *Sona* granted dismissal are absent here.

20

*see also* fn. 5, *supra*. Here, in stark contrast to both *Curaleaf* and *HEXO*, the Complaint demonstrates that Defendants routinely failed to disclose known impediments directly undermining their public statements, including equipment and capability deficiencies at SugarLeaf, attempts to pass off inferior imported hand sanitizer to Costco, and inability to fulfill lucrative PPE orders, all omissions that directly impacted the respective businesses. This case is not, as Defendants avow, a case where "venture[s] fell drastically short of expectations due to competitive pressures, product development failures, plunging demand, rejection by government authorities, and/or rapidly changing customer preferences." DM, 23. Rather, this is a case where Defendants routinely misled investors about core business operations.

### D.   Defendants' Remaining Falsity Arguments Fail

#### 1.   Defendants' misrepresentations are not immunized by the PSLRA's safe harbor

Defendants erroneously contend that many of their statements are immunized by the PSLRA's safe harbor. DM 30-34 (challenging statements ¶¶33, 35, 37, 64, 68, 72, 74, 84, 96, 100, 102, 109, 111); *see also* 15 U.S.C. § 78u-5(c)(1)(A)(i). As a threshold matter, the safe harbor does not protect material omissions. *See Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 304 (S.D.N.Y. 2018); *Salix Pharms.*, 2016 WL 1629341, at *10. Therefore, the safe harbor cannot insulate the challenged statements that are based on the omission of material information from liability as alleged in ¶¶33, 35, 37, 61, 64, 66, 68, 80, 82, 84, 86, 95, 96, 102, 109, 111.

More importantly, the statements in question are not forward-looking, and are not accompanied by meaningful cautionary language. Statements that "communicate present facts about [defendant's] business … are not protected by the PSLRA or the bespeaks caution doctrine." *In re Fairway Grp. Holding Corp. Sec. Litig.*, No. 14 CIV. 0950 LAK, 2015 WL 249508, at *9 (S.D.N.Y. Jan. 20, 2015). Moreover, the "safe harbor provision does not apply to any allegedly

false statement that has both a forward-looking aspect and an aspect that encompasses a representation of present fact." *Salix Pharms.*, 2016 WL 1629341, at *9–10 (collecting cases).

For example, Neptune's October 17, 2019 press release falsely stating that SugarLeaf's expansion was "nearing completion, as expected and on budget" is not forward-looking, but instead a representation of its present status. ¶¶61-62. Similarly, Neptune's April 23, 2020 press release that it "is successfully accelerating production of hand sanitizers to over one million units weekly" speaks to what Neptune "*is*" doing, and not what it later will be doing. ¶¶74-75; *see also* ¶¶64, 96, 102 (all alleging misrepresentation or omission of ***current facts***). Because the important parts of these statements were misrepresentations of present fact, the safe harbor cannot apply. *See New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 15 (2d Cir. 2011).

Defendants' cases assessing whether particular statements are forward-looking only confirm that the statements here were not. DM 26, 30. Complaint allegations present the exact opposite scenario from that considered in *Villare v. Abiomed, Inc.,* No. 19 CIV. 7319 (ER), 2021 WL 4311749, at *17 (S.D.N.Y. Sept. 21, 2021). There, the statements did not speak to current capabilities. *Id.* Here, by contrast, hid then-present defects at SugarLeaf, obscured Cammarata's current, not future, attempt to pass off inferior Mexican hand sanitizer to Costco, and hid Neptune's then-present inability to fulfill a $100 million nitrile glove PPE order. ¶¶33-38, 61-62, 64-69, 72-75, 80-87, 89-91, 95-105, 109-112.

*In re Barrick Gold Corp. Sec. Litig.*, *Lopez v. Ctpartners Exec. Search Inc.*, and *In re WEBMD Health Corp. Sec. Litig.*, fare no better. In those cases, the statements were solely focused on expectations for the future, the plaintiffs failed to allege with particularity that the statements were false when made, or that the defendants knew or should have known that the statements were

false.[9] Here, the statements at issue do not focus on future events, but on Neptune's ***then-current*** production capabilities and capacity. ¶¶33-65. Moreover, Plaintiff alleges that the statements at issue were false when made and provides the accounts of Neptune employees to confirm contemporaneous falsity. *Id*. *In re Adient plc Sec. Litig.* centered on the phrase, "on track," which is not at issue here. No. 18-CV-9116 (RA), 2020 WL 1644018, at *19 (S.D.N.Y. Apr. 2, 2020). Instead, Cammarata said much more specifically that the SugarLeaf expansions was "on time and on budget," (¶61) anchoring the statement to two present, verifiable conditions, which were simply untrue. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 465 (S.D.N.Y. 2013) (rejecting defendants' argument that "on-time" is forward-looking because it involved the representation of current fact).

Defendants' statements also lacked *meaningful* cautionary language. The language Defendants reference is boilerplate "kitchen-sink disclaimer, listing garden-variety business concerns that could affect *any* company's financial well-being," and thus cannot qualify as "meaningful." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 246–47 (2d Cir. 2016).[10] Language, as here, that does "not specifically reveal the particular risks allegedly known" cannot protect the speaker of a misstatement from liability. *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923 DRH AKT, 2013 WL 6330665, at *15 (E.D.N.Y. Dec. 5, 2013).

Defendants' reference to Neptune's 2019 and 2020 Annual Information Forms is

---

[9] *See In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 376 (S.D.N.Y. 2018) (statements were a forecast for a year that was not yet complete); *Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 39 (S.D.N.Y. 2016) (statements were forward-looking because they addressed financial quarter that was not yet complete, and were labeled as predictions); *In re WEBMD Health Corp. Sec. Litig.*, No. 11 CIV. 5382 JFK, 2013 WL 64511, at *5 (S.D.N.Y. Jan. 2, 2013) (statements focused solely on defendants' expectations for the future, and plaintiffs failed to plead with particularity that the statements were false at the time they were made).

[10] Unless stated otherwise, all emphasis is in the original.

misplaced. The language employed there was so vague that it could apply to any product or company ("Any significant disruption in our operations at our facilities for any reason … could disrupt our supply of products"). It was also hypothetical ("we may not be successful in our efforts to attract customers or to develop new cannabis or hemp-based products"), and addressed general business concerns not in any way tethered to the specific and highly damaging risks that were already impacting Neptune at the time ("may be unable to generate sufficient cash flow from operations"). DM 5-7.

Notably, *none* of language that Defendants point to speak to the particular risks known by Defendants at the time they made their misleading statements – that SugarLeaf did not possess the production capacity and facilities necessary to provide the type of sales that Neptune was promising, and that significant investment would be needed to scale up SugarLeaf's facilities. Therefore, the kitchen-sink disclaimers that Defendants repeatedly cite are not even in the most generous sense "meaningful." *See Symbol Techs*, 2013 WL 6330665, at \*15 (holding that cautionary language "did not specifically reveal the particular risks allegedly known to" defendant, and therefore did not protect misleading statements). The language Defendants cite regarding hand sanitizer fares no better. Defendants claim that they disclosed that potential "quality control problems" could occur with respect to its hand sanitizer business (DM, 7-8, 17, 32), but the language cited speaks only to business risks generally and does not even mention the hand sanitizer business or the specific, known risks imperiling that business, including Cammarata's importation and relabeling of inferior Mexican product. *See* DM Ex. 2, p. 37.  A party may not rely on such generic disclaimers where, as here, it is aware of specific dangers or "cause for concern." *In re Merrill Lynch Auction Rate Sec. Litig.,* No. 09 Civ. 9697(LAP), 2011 WL 1330847, at \*8 (S.D.N.Y. Mar. 30, 2011); *see also Slayton v. Am. Exp. Co.,* 604 F.3d 758, 770 (2d

24

Cir.2010) (holding cautionary language that is misleading in light of historical fact cannot be meaningful).

Nor does the August 11, 2020 statement Defendants cite that market supply and demand issues "significantly impacted Neptune's ability to meet all its customer's purchase orders during the three-month period ending June 30, 2020" show that it meaningfully disclosed prospective risks. DM 18-19, 33. By its own language, it discloses only *past* conditions and, according to Neptune employees, the risk that Neptune would be unable to fulfill purchase orders had already materialized by June 2020, *see* ¶¶77-78. Thus, any subsequent cautionary language is meaningless. *See In re Nortel Networks Corp. Sec. Litig.*, 238 F. Supp. 2d 613, 629 (S.D.N.Y. 2003). "To warn that the untoward may occur when the event is contingent is prudent; to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 930 F. Supp. at 72.

Moreover, as alleged, the concealed risk was that Neptune ***never had*** the capability to fulfill the orders, not that it suffered an unexpected interruption in supply. ¶¶109-112. Where Cautionary language that does "not specifically reveal the particular risks allegedly known to" defendant cannot be meaningful or provide safe harbor protection. *Symbol Techs.*, 2013 WL 6330665, at *15. Similarly, Defendants' refusal to provide specific information prevented investors from appreciating the magnitude of the risks. "[W]arnings of specific risks ... do not shelter defendants from liability if they fail to disclose hard facts critical to appreciating the magnitude of the risks described." *City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755, at *14 (S.D.N.Y. Mar. 25, 2013); *see also Concordia Int'l Corp.*, 2017 WL 4083603, at *5 (cautionary statements were not meaningful because they did not disclose magnitude of risks).

None of Defendants' cited cases shields their misrepresentations. *See* DM 25-27. Unlike

25

here, the cautionary language at issue in the cited cases was specific, effusive, and warned of the actual known risks at issue. *See In re Fed Ex Corp. Sec. Litig.*, 517 F. Supp. 3d 216, 233 (S.D.N.Y. 2021); *In re Supercom Inc. Sec. Litig.*, No. 15 CIV. 9650 (PGG), 2018 WL 4926442, at *26-28 (S.D.N.Y. Oct. 10, 2018); *Lopez*, 173 F. Supp. 3d at 39; *Cement Masons & Plasterers Joint Pension Tr. v. Equinix, Inc.*, No. 11-01016 SC, 2012 WL 685344, at *5 (N.D. Cal. Mar. 2, 2012). Thus, if anything, these cases highlight the deficiency in Defendants' boilerplate language.

Additionally, "the [safe harbor] protections do not apply if defendants knew that their statements were false or misleading when made." *Vale*, 2020 WL 2610979, at *15. The Complaint here alleges facts from which a reasonable jury could reach that conclusion. *See*, *e.g.*, ¶¶64, 68, 96, 102. Indeed, Neptune's intimate involvement with SugarLeaf and its operations, including its investment in equipment, control over the hiring of engineers, and slowdown of extraction activities, could lead a reasonable jury to conclude that Defendants knew the underlying facts that contradicted their statements on SugarLeaf. ¶¶50-70.

### 2.    Defendants' misrepresentations were material, not puffery

Defendants incorrectly contend that certain of their alleged misrepresentations, even if false, should be excused as puffery. DM 31-33. Not so. In "deeming a statement puffery at the motion to dismiss stage, courts must exercise great caution, as "[t]he only circumstance in which a Court may deem a statement immaterial as a matter of law is when it is ***so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance***." *Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 244 (S.D.N.Y. 2012) (internal quotations and citations omitted) (emphasis added). Moreover, "[w]hile certain statements, viewed in isolation, may be mere puffery, when the statements are made repeatedly in an effort to reassure the investing public about matters

26

particularly important to the company and investors, those statements may become material to investors." *Vale*, 2020 WL 2610979, at \*12 (internal quotations and citations omitted).

Here, the context and nature of the misrepresentations in question confirm they are not puffery. Many are precise (though false) statements about Neptune's current capabilities and progress-to-date. *See* ¶74 ("Neptune has executed on scaling up its hand sanitizer production ahead of schedule") ¶96 ("So that's why we do have a huge upside. We do have a huge capacity in North Carolina, that we'll be able to take first move to the market-based on regulations"); ¶100 ("We've been very uniquely focusing on increasing our capacity and having the highest quality product in the market."). Such statements, which identify current, then-existing "specific sources of success" are not puffery. *In re Henry Schein, Inc. Sec. Litig.*, No. 18-CV-01428 (MKB), 2019 WL 8638851, at \*16 (E.D.N.Y. Sept. 27, 2019).

At any rate, even if sections of the challenged statements contain "adjectives that may be vague in other circumstances," the key statements alleged "are sufficiently specific to survive a motion to dismiss given their context and clear inaccuracy." *Vale*, 2020 WL 2610979, at \*10. For example, the statements alleged in ¶¶37-38 ("We've closed on our SugarLeaf acquisition on July 24th, which will enable us to participate in both B2B and B2C, CBD and hemp markets in the United States."); ¶¶66-67 ("We continue to progress in our vision to become a leading player in B2B and B2C cannabis and hemp markets"); and ¶¶72-73 ("The Company anticipates its first shipments of hand sanitizers over the next several weeks with production volume ramping up into summer 2020") were all made in the context of, and were tethered to, false descriptions of concrete business plans.

Characterizing specific aspects of the Company's business in positive terms when the contrary is true is not puffery. *Manavazian v. Atec Grp., Inc.*, 160 F. Supp. 2d 468, 480–81

27

(E.D.N.Y. 2001); *Arkansas Tchr. Ret. Sys. v. Bankrate, Inc.*, 18 F. Supp. 3d 482, 485 (S.D.N.Y. 2014). *In re Aphria, Inc. Sec. Litig.* is instructive here, as the defendant company purchased subsidiary factories that they described to investors as "world class." 2020 WL 5819548, at *2-3, 9. The *Aphria* court rejected the defendants' claims that the statements were mere puffery and held that, in context, an investor would expect "world class" and other statements to mean that the subsidiaries were, at minimum, operational, and the allegations that they were not, and that defendants knew they were not, meant that the puffery defense was inapplicable. *Id*. at *9. Here, Cammarata's statement that Neptune had been "focusing on having the highest quality [hand sanitizer] in the market[,]" (¶100) might be immaterial in another context, but was highly material here where it obscured that the Company's production ***was not*** operational, and it had secretly resorted to substituting inferior sanitizer from Mexico violating the terms of its highly-promoted deal with Costco. ¶¶93-94, 101. Similarly, Cammarata's statement that SugarLeaf had "huge upside" and "huge capacity" would lead a reasonable investor to think SugarLeaf, at minimum, was not in the process of paring employees to a skeletal staff and beginning to wind down operations altogether. ¶¶96-97. Thus, Defendants' statements were not puffery. *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000).

Puffery never applies to statements capable of influencing a reasonable investor, such as those promoting the capabilities of SugarLeaf. ¶¶33, 35, 37; *see also In re Aphria, Inc. Sec. Litig.*, 2020 WL 5819548, at *9. Further, the challenged statements, like the ones made to investors about SugarLeaf in August 2020, were made for the specific purpose of allaying direct concerns raised by investors and analysts, and thus cannot constitute puffery. ¶96; *In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at *16 (collecting cases).

Defendants' cited cases are all inapposite. In *ECA, Loc. 134 IBEW Joint Pension Tr. of*

28

*Chicago v. JP Morgan Chase Co.*, the defendants made generalized statements about their business practices, and did not speak to specific areas of their business. 553 F.3d 187, 206 (2d Cir. 2009). Likewise, in *Mucha v. Volkswagen Aktiengesellschaft*, defendants spoke only in generalized and aspirational terms, rather than towards specific areas of the business. No. 17-CV-5092 (DLI)(PK), 2021 WL 2006079, at *297 (E.D.N.Y. May 20, 2021), *aff'd sub nom. Mucha v. Winterkorn*, No. 21-1511-CV, 2022 WL 774877 (2d Cir. Mar. 15, 2022). By contrast, Defendants here spoke in concrete terms about crucial capabilities and operations of SugarLeaf, a specific mission-critical hand sanitizer deal with Costco, and a specific very large purchase order regarding a specific PPE product which Defendants were incapable of fulfilling. *ECA* and *Mucha* have no application here. Finally, in *In re Yunji Inc., Sec. Litig.*, No. 19CV6403LDHSMG, 2021 WL 1439715, at *9 (E.D.N.Y. Mar. 31, 2021) and *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018) the courts noted that if there were allegations that the statements were untrue at the time, then they could be actionable. Plaintiff here *does* allege that the statements were untrue at the time they were made, *see* ¶¶37-38, 66-67, 72-75, 96-97, 100-101, *Yunji* and *Ong* actually demonstrate that the statements are actionable.

### 3. Defendants' misrepresentations were not fraud-by-hindsight

Like many perpetrators of securities fraud, Defendants seek to escape responsibility for certain SugarLeaf misrepresentations by invoking the mantra "fraud-by-hindsight." It does not apply here. "The incantation of fraud-by-hindsight will not defeat an allegation of misrepresentations and omissions that were misleading and false at the time they were made." *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 476 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 16 (2d Cir. 2013). The Complaint in this Action alleges facts plausibly demonstrating that the statements were misleading and false *at the time they were made*. ¶¶33-38.

Specifically, at the same time that Defendants made their misleading statements about the SugarLeaf Acquisition, the omitted risks confirmed by Neptune's former employees were already present and known: SugarLeaf then had only limited capabilities and could not generate the type of CBD that the market preferred, SugarLeaf then lacked GMP certification or the equipment necessary to proceed with GMP certification, and necessary maintenance and operational resources were actively diverted from SugarLeaf. ¶¶33-62. None of that is "fraud-by-hindsight." *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 192 (S.D.N.Y. 2010) (holding that plaintiffs did not plead fraud-by-hindsight because contemporaneous facts showed that the omitted risks associated with defendants' business existed at the time of the statements). Nor does the fact that the risks known at the time of the statements manifested at a later date "make this a fraud-by-hindsight case." *See Yannes v. SCWorx Corp.*, No. 20-CV-03349 (JGK), 2021 WL 2555437, at \*7 (S.D.N.Y. June 21, 2021). That is simply not what that term means. *Id.*[11]

Defendants' cited cases do not hold otherwise. Unlike in *In re Ferroglobe PLC Sec. Litig.*, No. 1:19-CV-00629 (RA), 2020 WL 6585715, at \*8 (S.D.N.Y. Nov. 10, 2020), the Complaint here ***does*** "plausibly allege that Defendants were aware of facts that contradicted those statements at the time they were made." *See, e.g.,* ¶¶33-49 (Defendants were aware of production limitations and impediments at the time they made unbalanced and misleading statements to investors). Moreover, unlike in *Holbrook v. Trivago N.V.*, No. 17 CIV. 8348 (NRB), 2019 WL 948809, at \*13 (S.D.N.Y. Feb. 26, 2019), *aff'd sub nom. Shetty v. Trivago N.V.*, 796 F. App'x 31 (2d Cir.

---

[11] Cammarata's then-present attempt to divert business away from SugarLeaf and cover up that fact from investors and SugarLeaf's founder, *see* ¶¶57, 144-147, also confirm the allegations are not fraud-by-hindsight. *See In re Xerox Corp. Sec. Litig.*, 165 F. Supp. 2d 208, 218 (D. Conn. 2001) (holding that plaintiffs did not plead fraud-by-hindsight when alleging "that the individual defendants made fraudulent statements simultaneously with and in order to cover up the problems caused by the restructuring").

2019), Plaintiff does not allege an unexpected market change, but rather that Defendants omitted that SugarLeaf was *then incapable* of producing the type of THC-free CBD extract the market *then* demanded. *See* ¶¶61-62. And, unlike in *Fisher v. Ross*, No. 93 CIV. 0275 (JGK), 1996 WL 586345, at *7 (S.D.N.Y. Oct. 11, 1996), the concealed risks did not subsequently arise, but instead *were present and known at the time* of the materially misleading statements. *See* ¶¶37-38.

Finally, *Novak v. Kasaks* rejected rather than adopted the arguments Defendants advanced here. In *Novak*, the Second Circuit made clear that statements, as here, that concealed then-present adverse information were not fraud-by-hindsight. 216 F.3d at 315. Here, as in *Novak*, Plaintiff has adequately alleged and corroborated with former employees that the concealed limitations and wind down at SugarLeaf, the passing off of inferior hand sanitizer to Costco, and lack of PPE supply or production capability were all false at the time the statements were made, and subsequent developments simply were manifestations of the concealed risks. ¶¶33-62. That is not fraud-by-hindsight.[12]

### 4. Defendants' misrepresentations are actionable whether or not considered opinions

Defendants also erroneously contend that they were free to hide known risks to investors because certain of their statements might be considered opinions. DM 27, 31, 33. As an initial matter, many are direct statements of fact lacking opinion signals like "believe" or "think." *See, e.g.*, ¶¶72, 74, 102, 109; *Nutriband, Inc.*, 2020 WL 4059657, at *9. Moreover, including those words does not transform factual statements into opinions, or give an executive license to mislead

---

[12] Defendants' reliance on a quote from *In re Vivendi, S.A. Secs. Litig.* is perplexing (DM, 25). In the quoted text, the Second Circuit was not discussing fraud-by-hindsight, but *loss causation*. 838 F.3d at 262. More importantly, *Vivendi* involved a *post-trial motion*, and thus has nothing whatsoever to do with pleading requirements. If anything, *Vivendi* shows that a trial is required here to assess the factual disputes that Defendants raise. *Id.* And, as it relates to loss causation, the reasoning in *Vivendi* shows that the allegations here are adequate. *Infra* at 45-49.

investors. *In re Oxford Health Plans, Inc.,* 187 F.R.D. 133, 141 (S.D.N.Y.1999).

Even if some misstatements were opinions (they are not), Defendants remain liable because: (1) the statements embedded facts that were untrue; and (2) the statements omitted material adverse information that "conflict[s] with what a reasonable investor would take from the statement itself." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188-89 (2015) (emphasis added). Even honestly held but irrational beliefs are actionable if they do not fairly align with the information in a defendant's possession. *Id.* at 188-189.

For example, Landry's claim that "SugarLeaf will hit some of their earnouts" is undercut by the internally-known information that Neptune had already begun slowing down extraction activities at SugarLeaf and Cammarata was actively diverting business away from SugarLeaf ***to prevent earnouts from being hit***. ¶¶68-69. Similarly, Cammarata's statement in August 2020 that Neptune would be shipping hand sanitizer to Costco stores in "the Midwest and the West Coast in the coming months" does not align with the fact that the Costco deal was "killed" around July 2020 due to Neptune's use of cheap, inferior Mexican hand sanitizer. ¶¶98-99. Further, Cammarata and Rinow's statements about "confidence" to fulfill the $100 million in purchase orders is undermined by the fact that Neptune did not have the capability to fulfill the purchase orders. ¶¶109-112; *Galestan*, 348 F. Supp. 3d at 303 (rejecting defendant's argument that the use of the term "very confident" was an unactionable opinion because "Defendants omitted information that made the statement misleading to a reasonable investor").

Defendants' citation to *Tongue v. Sanofi* is unavailing. *Tongue* involved an "absence of any serious conflict" between the optimism expressed and the underlying facts. 816 F.3d 199, 212 (2d Cir. 2016). Here, by contrast, the Complaint alleges a sharp disparity between the assessments expressed by Defendants and underlying facts in their possession. *See, e.g.,* ¶¶33-38; 64-69; 72-

32

75; 84-85; 96-97; 102-105; 109-112. Thus, if anything, *Tongue* shows that Complaint allegations are sufficient.

> **5.      Defendants' truth-on-the-market defense fails**

Throughout their Motion, Defendants erroneously claim that investors knew the truth their statements are alleged to have concealed. DM 14-15, 41-42. As a threshold matter, this "truth-on-the-market defense is intensely fact-specific" and is rarely appropriate for adjudication at the motion to dismiss stage. *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000). Even if considered here, Defendants' arguments lack merit.

Defendants have not come close to demonstrating that "the corrective information [is] conveyed to the public with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by the alleged misstatements." *Ganino*, 228 F.3d at 167. First, as Defendants concede in their twenty-five exhibit submission, investors would have to piece together vague statements from more than a dozen documents to even have a chance of understanding the general risks that Defendants actively concealed. More importantly, none of the specific risks were disclosed in any of these documents, or at any time prior to the alleged partial disclosures, let alone with "the degree of intensity and credibility" necessary to offset Defendants' highly-promotional misrepresentations. For example, Defendants claim that they "conveyed" SugarLeaf's deficiencies (DM, 13-15, 41), but none of the referenced documents disclose the most important facts: that Cammarata was diverting business away from SugarLeaf, that Neptune had slowed down all production at SugarLeaf in early 2020, that SugarLeaf had laid off most of their employees in the Summer of 2020, or that SugarLeaf has essentially shuttered its facilities in the Fall of 2020. *Supra* at 14-16. Nor were the meager, boilerplate references they made conveyed with the same degree of intensity and credibility needed to offset Defendants' prominent

misrepresentations.

Similarly, Defendants' references regarding Neptune's hand sanitizer business (DM, 16-17) say nothing about importing inferior hand sanitizer from Mexico, or that such product did not comply with the Costco purchase order. *Supra* at fn. 2. Finally, regarding the $100 million in PPE purchase orders (DM, 21-22), Defendants never told investors that they were incapable of fulfilling the lucrative purchase orders. *Supra* at 7, 18-20. Defendants' vague references to generalized risks did nothing to convey the stark truth known internally and cannot possibly support a truth-on-the-market defense. *See Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 229 (S.D.N.Y. 2008) (no truth-on-the-market where defendant conveyed only partial information).

**6.      Defendants' knowledge arguments confuse falsity with scienter**

Defendants erroneously claim throughout their Motion that falsity cannot be established without a showing that Individual Defendants "personally knew [their statements] were false." DM 41; *see also id.* at 16, 18, 42. While that assertion is belied by the voluminous allegations related to Defendants' scienter (¶¶125-154), it is beside the point. To plead falsity, Plaintiff needs only to allege *why* a statement is false, and not how Defendants knew the statements were false. *See Symbol Techs.*, 2013 WL 6330665, at *7 (rejecting argument that a "plaintiff must allege why each specific misrepresentation was *knowingly* false when made"). As in *Symbol Techs.*, Defendants "confuse falsity with scienter" and attempt to impose a higher pleading standard than what exists in the Second Circuit. *Id*. "[C]ontrary to Defendants' contention, neither FRCP 9(b) nor the PSLRA require allegations that the defendants in fact knew the alleged statements were false when made in order to establish *falsity,* but, rather, require allegations as to the circumstances or reasons why the statements were fraudulent or misleading, and separate allegations as to the speaker's state of mind." *Id*. Plaintiff has done so. *See supra* at 11-20.

7.    **The Complaint adequately alleges scheme liability in violation of SEC Rule 10b-5(a) and (c)**

Rule 10b-5(a) and (c) make it unlawful: "(a) To employ any device, scheme, or artifice to defraud … or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit … in connection with the purchase or sale of any security." 17 CFR §240.10b-5. The Supreme Court recently confirmed the "expansive" reach of these rules. *See Lorenzo v. SEC*, 139 S. Ct. 1094, 1101 (2019) (using Webster's International Dictionary to give broad meaning to "device," "scheme," and "act"). To adequately plead "scheme liability" under Rule 10b-5(a) and (c), a plaintiff must show "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *In re Electrobras Sec. Litig.*, 245 F. Supp. 3d 450, 470 (S.D.N.Y. 2017). A claim of manipulation under Rules 10b-5(a) and (c) "can involve facts solely within the defendant's knowledge; therefore, at the early stages of litigation, the plaintiff need not plead manipulation to the same degree of specificity as a plain misrepresentation claim." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007).

Plaintiff pleads each element of scheme liability against Neptune and Cammarata. The secret diversion of business away from SugarLeaf in an attempt to starve SugarLeaf of resources and avoid earnout payments to SugarLeaf's founders, while actively concealing this conduct, was a "deceptive" act in "furtherance" of a scheme to defraud. ¶¶57, 144-147. Cammarata's behavior, including his personal efforts to divert business away from SugarLeaf, was "at the heart of [the] false and misleading conduct." *See In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 170 (S.D.N.Y. 2008). And Neptune and Cammarata acted with scienter while engaging in these transactions, given that he had personal knowledge of SugarLeaf's business and, according to a Neptune employee, directed the scheme. *See* Section I(E)(2).

35

Defendants do not meaningfully challenge Plaintiff's "scheme liability" allegations. Instead, they respond with one perfunctory sentence citing two inapposite cases. DM 34. "Issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Lyn v. Inc. Vill. of Hempstead*, No. 03 CV 5041 DRH, 2007 WL 1876502, at \*16 n.13 (E.D.N.Y. June 28, 2007), *aff'd*, 308 F. App'x 461 (2d Cir. 2009). Moreover, the perfunctory argument is wrong—Plaintiff's scheme liability claim alleges more than just misrepresentations (¶¶167-168), and the Supreme Court has rejected the premise that misrepresentations cannot also support scheme liability under 10b-5(a) and(c), *see Lorenzo*, 139 S. Ct. at 1103 (rejecting defendants' argument that misrepresentations liable under 10b-5(b) cannot also form the basis of a 10b-5(a) and (c) claim).[13]

### E. The Complaint Alleges a Strong and Cogent Inference of Scienter

Numerous facts alleged in the Complaint demonstrate that Defendants either knew of or recklessly disregarded the truth when making their false and misleading statements to investors. "The scienter requirement can be satisfied by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at \*17 (internal citations and quotations omitted). And, "[t]he inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the most plausible

---

[13] Even under Defendants' superseded interpretation of scheme liability, their cited cases do not apply here. *In re Alstom SA* lacked allegation that the defendant CEO was ever involved in the scheme. 406 F. Supp. 2d 433, 474–77 (S.D.N.Y. 2005). *In re Garrett Motion Inc. Sec. Litig.*, involved an alleged "scheme" performed by a third party, not the defendant, that was disclosed at the outset. No. 20 CIV. 7992 (JPC), 2022 WL 976269, at \*17–18 (S.D.N.Y. Mar. 31, 2022). As Plaintiff has alleged and CW4 confirmed, Cammarata personally coordinated the scheme, which went beyond the misrepresentations that make up Plaintiff's 10b-5(b) claim, and the scheme itself was never disclosed to investors at the outset. ¶¶57, 144-147, 167-168. Thus, both *Alstom* and *Garrett* are inapposite.

of competing inferences," but instead "only strong in light of other explanations[.]" *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 390 F. Supp. 3d 432, 451 (S.D.N.Y. 2019) (quoting *Tellabs*, 551 U.S. at 324).

Omissions are reckless if defendants "failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud." *Novak*, 216 F.3d at 308; *see also In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 486 (S.D.N.Y. 2011) (quoting *Novak*, 216 F.3d at 311). "An egregious refusal to see the obvious," as is alleged here, easily establishes recklessness. *In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d 36, 40 (2d Cir. 2000). Courts assessing scienter must consider "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 323.

### 1.    Defendants' knowledge and access to contradictory information

Defendants' knowledge of and access to information directly contradicting their public statements establishes scienter. "Where the complaint alleges that defendants knew facts or had access to non-public information contradicting their public statements, recklessness is adequately pled for defendants who knew or should have known they were misrepresenting material facts with respect to the corporate business." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001). Here, Defendants were in positions to have access to information that would have alerted them to the falsity of their statements, and actually obtained that information through their work for Neptune. ¶¶18-23; *see also Symbol Techs.*, 2013 WL 6330665, at *10. Cammarata oversaw the diversion of resources from SugarLeaf and, according to CW4, ordered its secret wind down. ¶144. And, Cammarata and Rinow signed Neptune's SEC filings, demonstrating that they either had familiarized themselves with or recklessly ignored the underlying facts. ¶143; *In re Pall Corp.*,

No. 07-CV-3359 (JS)(ARL), 2009 WL 3111777, at *7–8 (E.D.N.Y. Sept. 21, 2009) (holding that defendants had access to knowledge that their public statements were inaccurate because they were high level corporate officers who signed SEC filings and familiarized themselves with the underlying facts).

Defendants also had access to knowledge of SugarLeaf's limited capabilities through the due diligence Neptune conducted prior to acquisition. In *In re Aphria, Inc. Sec. Litig.*, the court found that a strong inference of scienter was satisfied by allegation that "[t]he information at issue … —the condition of the … assets and whether they were operational—was critical to the acquisition of these assets" and "if after conducting the due diligence and the site visits, it was true that the [acquired] assets were in fact valueless assets or sham assets that were not operational, the [defendants] would have known such crucial information." 2020 WL 5819548, at *9. Here, in the same vein, Defendants engaged in five months of evaluations, including three separate audits, before Neptune acquired SugarLeaf. ¶¶40-41. Similarly, Cammarata claimed to have actual knowledge about the status of the Costco hand sanitizer deal, as well as the $100 million PPE orders, that were misrepresented to investors. ¶¶90, 98, 100, 109.

2.    **Confidential witnesses corroborate internal knowledge of concealed facts and Cammarata's direction of fraudulent scheme**

Plaintiff's allegations of scienter are further strengthened the accounts of confidential witnesses, who identify Cammarata's direct involvement in the alleged fraud as well as internal knowledge of the facts concealed from public investors. CW4 details a meeting with Cammarata where Cammarata discussed diverting business away from SugarLeaf. ¶¶57, 144-147. This direct account shows not only that Cammarata had knowledge of, but directed the secret plan undermining the misleading positive statements about SugarLeaf conveyed to investors. *See Galestan*, 348 F. Supp. 3d at 300–01 (scienter established by internal meetings where facts were

38

discussed contradicting public statements); *New Orleans Emps. Ret. Sys.*, 455 F. App'x at 13 (same). Similarly, CWs establish that the truth about the hand sanitizer business and Costco's rejection of Neptune's inferior imported product were broadly known internally. ¶¶77-79, 93-94.

Defendants erroneously ask this Court to ignore these well-plead allegations, claiming that only one of the confidential witnesses had direct contact with Individual Defendants. DM 37-39. "But that is not the standard in [the Second] Circuit: rather, for their statements to be credited on a motion to dismiss, confidential sources must be described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *In re Avon Sec. Litig.*, No. 19 CIV. 01420 (CM), 2019 WL 6115349, at *21 (S.D.N.Y. Nov. 18, 2019). "The notion that the CWs cannot be believed because none had direct contact with any individual Defendant is contrary to law." *Id*.

Nor does Defendants' particularity argument have merit. The Complaint here pleads the role of each confidential witness in detail, specifying his or her job description and access to the information provided. ¶¶40, 44, 46, 51, 52, 59, 77. *"*Plaintiffs are not required to plead exact job titles, describe the sources' responsibilities and duties in detail or allege access to specific company documents." *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 493 (S.D.N.Y. 2004). Notably, *none* of the cases that Defendants rely upon involved all of the corroborating facts alleged here.[14] Moreover, CW4 *did* have direct contact with Cammarata.

---

[14] *See Campo v. Sears Holdings Corp.*, 371 F. App'x 212, 217 (2d Cir. 2010) (plaintiffs relied solely on the accounts of confidential witnesses who did not have contact with the defendants); *Janbay v. Canadian Solar, Inc.*, No. 10 CIV. 4430, 2013 WL 1287326, at *11 (S.D.N.Y. Mar. 28, 2013), *aff'd* (Dec. 20, 2013) (plaintiffs relied primarily on the accounts confidential witnesses who had no contact with the defendants); *Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 460 (S.D.N.Y. 2010), *aff'd sub nom. Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, 430 F. App'x 63 (2d Cir. 2011) (plaintiffs relied primarily on unspecific testimony from confidential witnesses, most of whom had no contact with the defendants); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 358 (S.D.N.Y. 2011)

¶¶144-147. Viewed holistically, the inference of scienter is far more compelling than any competing inference.

Defendants' attempt to malign the credibility of former employees only confirms that the arguments they raise must be resolved at trial, not on the pleadings. Defendants ask this Court to assume as a matter of law, based solely on counsel's conjecture, that "most if not all of [the witnesses] were terminated from the company and unsurprisingly harbor negative views regarding their termination," DM 39. Such unsupported imaginations of counsel are excluded at trial and have no proper basis here. It "is the Court's task to assess the legal sufficiency of the complaint and not to judge the credibility of the pleadings or to assess the weight of any evidence offered in support of the action." *Rosen*, 113 F. Supp. 2d at 617. Making such findings here would "usurp[] the duty of the finder of fact." *See In re Dynex Cap., Inc. Sec. Litig.*, No. 05 CIV. 1897 HB, 2011 WL 2471267, at *2 (S.D.N.Y. June 21, 2011).

### 3.    Defendants held themselves out as knowledgeable about misrepresented information

Scienter is also supported by the fact that Defendants (especially Cammarata) held themselves out to analysts and the investing public as authoritative sources of knowledge about SugarLeaf, Neptune's hand sanitizer business, and the $100 million in purchase orders. ¶¶137-140. Courts in the Second Circuit have consistently find scienter where defendants "made public representations suggesting familiarity" with the subjects misrepresented to investors. *Vale*, 2020

---

(plaintiffs relied primarily on the testimony of one confidential witness that had no contact with the defendants); *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d at 244–45 (plaintiffs relied primarily on the testimony of confidential witness who did not allege to have presented information to the defendants themselves); *In re Am. Express Co. Sec. Litig.*, No. 02 CIV. 5533 (WHP), 2008 WL 4501928, at *8 (S.D.N.Y. Sept. 26, 2008), *aff'd sub nom. Slayton v. Am. Exp. Co.*, 604 F.3d 758 (2d Cir. 2010) (plaintiffs relied primarily on unspecific testimony from confidential witnesses that had no contact with the defendants).

40

WL 2610979, at *17; *see also Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F. Supp. 3d 313, 326 (S.D.N.Y. 2018) (finding scienter where defendants were "regularly quoted on behalf of" the company discussing the misrepresented issues).

Here, Defendants spoke on behalf of Neptune about SugarLeaf, the hand sanitizer business, and the $100 million in purchase orders, and addressed specific, pointed questions on those subjects. ¶¶68, 84, 96, 102, 104, 109, 111. "Actively communicating with the public about [these issues] demonstrates defendants' sensitivity to it." *Gauquie v. Albany Molecular Rsch., Inc.*, No. 14CV6637FBSMG, 2016 WL 4007591, at *2 (E.D.N.Y. July 26, 2016); *see also Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 133–34 (D. Conn. 2021). For example, Cammarata portrayed himself as knowledgeable in responding to direct analyst questions regarding SugarLeaf's capabilities and productivity. ¶¶61, 84, 96. Similarly, he claimed to know details about Neptune's hand sanitizer business and its deal with Costco. ¶¶90, 98, 100. Moreover, Cammarata and Rinow claimed to have specific information regarding the $100 million in supposed PPE purchase orders. ¶¶109, 111. That they held themselves out as having such knowledge is "strong circumstantial evidence" in favor of scienter. *See City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 372 (S.D.N.Y. 2012).

### 4. Core operations

"Under the core operations theory, a court may infer that a company and its senior executives have knowledge of information concerning the core operations of a business, such as events affecting a significant source of revenue." *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 174 (S.D.N.Y. 2021). This is especially the case, as here, when the magnitude of the alleged fraud is large enough to substantially impact a defendant's business. *See Salix Pharms.*, 2016 WL 1629341, at *16 (holding that scienter was sufficiently pled where

41

the magnitude of the alleged fraud was large enough to encompass critical factors of the defendant's business).

Here, Defendants' misleading statements and omissions concern Neptune's core operations, including its largest acquisition ever, its most important business initiative during the Class Period, and purportedly the largest purchase order in Neptune's corporate history. All of these were touted ***by Defendants*** as crucial to Neptune's expansion, and it would be absurd to suggest that Defendants were unaware of the actual state of these operations. *See In re Avon Sec. Litig.*, 2019 WL 6115349, at *20 (holding that, it would be "absurd to suggest that [the company's] senior management was unaware" of problems in a segment accounting for 21% of revenue).

### 5.    Sharp divergence between Defendants' misleading statements and the truth

The sharp disparity between the rosy picture painted by Defendants' misleading statements and the actual condition of Neptune's business also supports a strong inference of scienter. *See New Orleans Emps. Ret. Sys.*, 455 F. App'x at 13. Here, contrary to Defendants positive statements about SugarLeaf, including that it was "poised for expansion and profitability," the facility was actually shuttered and SugarLeaf had laid off its staff by the end of Summer 2020. ¶¶70, 149. Executives know when businesses are being wound down, so courts regularly find scienter where they tout positive prospects from such facilities. *See, e.g., McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 126–27 (S.D.N.Y. 2013); *In re China Educ. All., Inc. Sec. Litig.*, No. CV 10-9239 CAS JCX, 2011 WL 4978483, at *6 (C.D. Cal. Oct. 11, 2011). Similarly, Cammarata touted the Costco deal throughout the Summer and Fall of 2020, long after confidential witnesses alleged that it had already collapsed. ¶94. The sharp divergence between claims and reality bolsters a strong inference of scienter.

42

### 6. Landry's resignation

Suspiciously-timed resignations of high-level officials can contribute to an overall pleading of scienter. *Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457, 474 (S.D.N.Y. 2013) (collecting cases). Landry resigned from Neptune only a few weeks after misleading investors about the status of SugarLeaf. ¶154. In combination with other facts, Landry's suspiciously-timed resignation bolsters a strong inference of scienter.

Defendants do not squarely address this allegation. Their brief contains only a single cursory sentence without any developed argument, and the case they cite is wholly inapposite. Unlike in *Gregory v. ProNAi Therapeutics Inc.*, 297 F Supp. 3d 372, 414-15 (S.D.N.Y. 2018), Plaintiff does not rely on Landry's resignation to establish a strong inference of scienter, but instead alleges it as an additional factor supporting a strong inference of scienter. Even *Gregory* concedes that resignations can bolster other facts in a holistic scienter analysis. *Id*.

### 7. Defendants' false SEC certifications

The already strong inference of scienter is further supported by Cammarata and Rinow's signing of certifications in connection with Neptune's Form 40-F and Form 6-Ks filed with the SEC. These certifications avowed that Cammarata and Rinow familiarized themselves with the filings and the underlying operations of Neptune, including SugarLeaf, and the filings "fairly present[ed], in all material respects, the financial condition and operations of [Neptune]." ¶143. Such allegations, even where not independently sufficient, can contribute to a finding of scienter. *See In re Avon Sec. Litig.*, 2019 WL 6115349, at *19; *Symbol Techs.*, 2013 WL 6330665, at *10.

### 8. Defendants' responsibilities exposed them to concealed information

Scienter is also bolstered by the high-level nature of Individual Defendants' positions within Neptune. "While scienter cannot be imputed to an executive solely because of position,

43

knowledge of the falsity of a company's financial statements can be imputed to key officers who should have known of facts relating to the core operations of their company that would have led them to the realization that the company's financial statements were false when issued. High level corporate officers who signed SEC filings containing the company's financial statement have a duty to familiarize themselves with the facts relevant to the core operations of the company and the financial reporting of those operations." *In re Pall Corp.*, 2009 WL 3111777, at *7–8 (quoting *In re Winstar Commc'ns,* No. 01–CV–3014, 2006 WL 473885, at *7 (S.D.N.Y. Feb 27, 2006)).

Here, Cammarata, Rinow, and Landry's positions provided them with access to knowledge that contradicted their public statements. ¶¶18-23, 142. In concert with other allegations, their positions confirm their scienter. *Pall*, 2009 WL 3111777, at *7–8; *see also In re Aphria, Inc. Sec. Litig.*, 2020 WL 5819548, at *9; *In re Atlas Air,* 324 F. Supp. 2d at 490.

### 9.    Motive and opportunity

Though not required, *see Tellabs*, 551 U.S. at 325, the Complaint here alleged that Defendants had a specific motive and opportunity to conceal the truth from investors. Throughout the Class Period, Neptune consistently burned cash and eroded capital. ¶¶125-129. As a result, Neptune was dependent on serial capital raises (including three during the Class Period) and were motivated to downplay or hide any negative information that would undermine those efforts. ¶¶ 130-136. This specific motive has been recognized as relevant to scienter. *See Shanawaz*, 348 F. Supp. 3d at 326 (plaintiffs made "a strong showing that the defendants had both motive and opportunity to commit the fraud" by detailing how the company was dependent on stock sales to cover operating losses).

Defendants' motive is a far cry from the general corporate motive they now reference.[15] DM 36. Indeed, none of the cases Defendants rely upon held that the motivation to sell stock to cover operating losses was insufficient to plead motive, but instead simply held for the general proposition that a desire for corporate success, without more, cannot establish motive or scienter.[16] Because Plaintiff does not rely on a general motive of corporate profitability but instead pleads specifically that Neptune would run out of cash absent continued capital raises, such cases are inapplicable. ¶¶125-136.

Nor do pre-Class Period stock purchases undermine the Class Period motives of Cammarata and Landry. As an initial matter, this is outside the scope of the Complaint and has no place in a motion to dismiss. *Supra* at 9-11. More importantly, Defendants' competing inference actually supports rather than undercuts scienter. That these executives were willing to purchase shares before artificially inflating the stock price via Class Period misrepresentations, but were unwilling to purchase such shares after they juiced share prices, shows in fact that they were aware of the artificial inflation. At any rate, Defendants' competing inference is neither cogent nor compelling. *See City of Pontiac Gen. Employees' Ret. Sys.*, 875 F. Supp. 2d at 372 (emphasizing that "at the motion to dismiss stage, a tie on scienter goes to the plaintiff.").

F.    **The Complaint Adequately Alleges Loss Causation**

The Supreme Court has made clear that alleging loss causation "should not prove

---

[15] Defendants fail to challenge, and therefore concede, that they had the opportunity to commit fraud. DM 36; *Lyn*, 2007 WL 1876502, at *16 n.13.

[16] *See Town of Davie Police Officers Ret. Sys. v. City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan*, No. 21-909-CV, 2021 WL 5142702, at *2 (2d Cir. Nov. 5, 2021) (rejecting the plaintiff's proffered general motive that the defendants committed fraud simply to raise more capital); *Muhan Cui v. Xia*, No. 19-CV-615 (NG)(SJB), 2021 WL 925480, at *8 (E.D.N.Y. Mar. 2, 2021) (same); *Lewis v. YRC Worldwide Inc.*, No. 119CV0001GTSATB, 2020 WL 1493915, at *18 (N.D.N.Y. Mar. 27, 2020) (same).

45

burdensome" and a complaint need only "provide a defendant with some indication of the loss and causal connection that the plaintiff has in mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Courts in the Second Circuit regularly hold that loss causation is subject only to Rule 8's notice pleading standard. *See In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at *25 (collecting cases). Thus, all that is required is "[a] short, plain statement that provides defendants with notice of the loss and some notion of the causal connection to the alleged misconduct is sufficient." *Mazuma Holding Corp. v. Bethke*, 21 F. Supp. 3d 221, 233 (E.D.N.Y. 2014). The Complaint provides such allegation. ¶¶114-124.

A plaintiff may adequately plead loss causation "*either* by alleging (a) the existence of cause-in-fact on the ground that the market reacted negatively to a corrective disclosure of the fraud; or (b) that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232–33 (2d Cir. 2014) (internal quotations and citations omitted). Instead, loss causation is pled where the disclosures are within the "zone of risk" concealed by misrepresentations and omissions. *Van Dongen*, 951 F. Supp. 2d at 477. In other words, a plaintiff need only allege "that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered." *Id*.

"[T]here is no requirement that the corrective disclosure take a particular form or be of a particular quality," such that it be a "mirror image tantamount to a confession of fraud." *Pearlstein v. BlackBerry Ltd.*, No. 13 CIV. 7060 (CM), 2021 WL 253453, at *18 (S.D.N.Y. Jan. 26, 2021) (quoting *In re Vale S.A. Sec. Litig.*, No. 15-cv-9539, 2017 WL 1102666, at *29 (S.D.N.Y. Mar. 23, 2017)). Nor must a disclosure be a "flashing neon light," with an explicit message stating that it is intended to cure an earlier fraudulent statement. *Id; see also Van Dongen*, 951 F. Supp. 2d at 477.

Here, Plaintiff alleges that previously-concealed problems with SugarLeaf were disclosed to the market by a series of charges announced after the close on February 15, 2021 and discussed on February 16, 2021. ¶¶114-115. At the same time, Neptune disclosed a decline in the hand sanitizer business, a direct result of the collapse of its deal with Costco due to passing off of inferior Mexican imports. ¶¶117-118. These partial disclosures caused Neptune's stock to drop 38.21%. ¶120. Similarly, Neptune's July 15, 2021 announcement that it could not fulfill the $100 million in purchase orders revealed the materialization of the previously undisclosed risks that Neptune had failed to secure a supply of PPE equipment and did not have the capabilities to manufacture the PPE equipment itself. ¶123. Defendants' announcement, which informed the market of the previously-omitted deficiencies, caused a 22% plunge in Neptune's stock price. ¶124. *See In re Vale S.A. Sec. Litig.*, 2017 WL 1102666, at *27 (finding loss causation adequately pled where "disclosure to the market ... revealed new information" followed by a "decline in the price" of the company's securities).

Defendants incorrectly argue that the February 16, 2021 disclosure "revealed nothing false" and that earlier statements about SugarLeaf "already made clear that the facility was essentially offline." DM 42-43. But nowhere in those statements do Defendants inform investors that (a) SugarLeaf had slowed and essentially stopped production in late 2019 and early 2020; (b) SugarLeaf laid off a majority of its staff by the Summer of 2020; or (c) SugarLeaf had shuttered by SugarLeaf by the Fall of 2020. ¶¶61, 64, 66, 68, 80, 82, 84, 86, 95, 96, 102. Moreover, taking three separate charges totaling $51.66 million due by definition informed the market that SugarLeaf and its assets were not worth the amounts previously portrayed to investors, and the disclosed charges are clearly within the "zone of risk" concealed by omission of known operational shortcomings at SugarLeaf and Cammarata's secret plan to wind down SugarLeaf and deprive its

47

founders of earnout payments. That the February 16, 2021 disclosure did not mirror prior omissions or admit that Defendants had been fraudulent does not negate loss causation. *Freudenberg*, 712 F. Supp. 2d at 202; *Pearlstein*, 2021 WL 253453, at \*18. At best, it raises a factual dispute for the jury to resolve at trial. *See OSI*, 2007 WL 9672541, at \*13–14; *Ganino*, 228 F.3d at 167; *supra* at 33-34.

Defendants' reference to earlier "retooling" statements also lacks merit. Such statements added to, rather than cured, the misinformation Defendants injected into the market. *See* ¶¶84-85, 102-03; *see also supra* at 15. And, Defendants "used these [statements] at least in part to express optimism about [SugarLeaf's] prospects" and "therefore … did not unambiguously warn of [SugarLeaf's] issues." *In re Omega Healthcare Invs., Inc. Sec. Litig.*, 563 F. Supp. 3d 259, 271 (S.D.N.Y. 2021).

Loss causation arguments regarding hand sanitizer misrepresentations are similarly misplaced. That Neptune never confessed to losing the Costco deal because it attempted to pass off inferior imported hand sanitizer is irrelevant. As the Complaint alleges, and as former employees confirmed, the loss was not only within the "zone of risk" of the omissions but occurred precisely because of the concealed misconduct. *See, e.g., In re Signet Jewelers Ltd. Sec. Litig.*, No. 16 CIV. 6728 (CM), 2018 WL 6167889, at \*16–17 (S.D.N.Y. Nov. 26, 2018).

Defendants also erroneously argue that loss causation cannot be established because the drop in hand sanitizer revenue was partially due to another cause, market oversaturation (DM, 32, 43). This just confirms that there is a triable factual dispute over causation to be resolved by the jury. *See In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 247–48 (S.D.N.Y. 2018) (refusing to determine if the plaintiffs' stock losses were caused solely by the corrective disclosures or broader market forces at the motion to dismiss stage); *In re Bear Stearns Companies, Inc. Sec.,*

48

*Derivative, & ERISA Litig.*, 763 F. Supp. 2d at 521 ("At the motion to dismiss stage, it is not necessary to 'disentangle' or apportion losses resulting from the defendants' misstatements as opposed to losses resulting from the wider market downturn"). Moreover, a stock drop need not be caused solely by fraud to establish loss causation. *See, e.g., In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at *26 (collecting cases and stating that "Plaintiff is not required to show that all of the alleged losses were caused by Defendants' misstatements or omissions").

Defendants' loss causation arguments about the stock drop following disclosure that the misrepresented $100 million in PPE purchase orders evaporated are equally baseless. The Complaint plausibly alleges that those deals fell through precisely because of Neptune's concealed inability to fulfill the orders. ¶¶109-112; *see also supra* at 7, 18-20. Thus, the alleged disclosure is squarely "within the zone of risk concealed" by misrepresentations and omissions. *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *16.

The only loss causation case Defendants bother to cite, *In re Curaleaf*, has no bearing here. In *Curaleaf*, the court merely held that loss causation could not be established by an FDA letter that neither itself was within the zone of risk concealed by previous statements and the concealed risks had previously been explicitly disclosed. 519 F. Supp. 3d at 109-10. As outlined above, unlike in *Curaleaf*, the specific material risks alleged in detail with respect to SugarLeaf, Neptune's hand sanitizer business, and the $100 million PPE purchase orders were never disclosed prior to February 16, 2021 and were not fully disclosed until July 15, 2021. *Supra* at 11-20. Thus, if anything, the deep difference in allegations between this case and *Curaleaf* serves to emphasize that the plausible loss causation allegations here must be weighed by a jury on a developed record.

**G.     The Complaint Adequately Alleges Violations of §20(a) of the Exchange Act**

The Complaint sufficiently pleads that Defendants Cammarata, Rinow, and Landry are

49

secondarily liable to investors for the primary violations of Neptune under Section 20(a) of the Exchange Act, in addition to their own primary liability. *See* 15 U.S.C. § 78t(a).

The Complaint establishes that the Individual Defendants wielded actual power or influence over Neptune, signed and certified Neptune's SEC filings, communicated with analysts on behalf of Neptune, and were personally involved in the concealment of adverse information relating to SugarLeaf, Neptune's hand sanitizer business, and the $100 million in purchase orders. *See* ¶¶19-23. The law requires no more. *See, e.g., In re Wells Fargo & Co. Sec. Litig.*, No. 1:20-CV-04494-GHW, 2021 WL 4482102, at *30 (S.D.N.Y. Sept. 30, 2021).

Defendants erroneously argue that Plaintiff has failed to allege culpable participation (DM, 44). However, as Plaintiff has adequately alleged scienter for Cammarata, Rinow, and Landry, *supra* at 36-45, Plaintiff has also adequately alleged their culpable participation. *See In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 535 (S.D.N.Y. 2010). Whether Plaintiff ultimately can prove culpable participation "is a fact-intensive inquiry" that should be resolved by the jury. *See In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at *29 (collecting cases).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in full.[17]

Dated:  July 11, 2022

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Christopher P.T. Tourek*

---

[17] In the event of dismissal, Plaintiff respectfully seeks leave to amend. Leave to amend should be "freely given," *Foman v. Davis*, 371 U.S. 178, 182 (1962), particularly where a plaintiff "ha[s] not previously been given leave to amend and requested such an opportunity." *City of Pontiac Gen. Emp. Ret. Sys. v. MBIA, Inc.*, 33 F. App'x 33, 34 (2d Cir. 2008); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

Christopher P.T. Tourek (admitted *pro hac vice*)

Joshua B. Silverman (admitted *pro hac vice*)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: jbsilverman@pomlaw.com
         ctourek@pomlaw.com


         -and-
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
         ahood@pomlaw.com


*Attorneys for Lead Plaintiff Kenneth Rickert*

51

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2022, a copy of the foregoing was electronically mailed to Defendants' Counsel:

Peter Stokes
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Tel: (512) 536-5287
Fax: (512) 536-4598
peter.stokes@nortonrosefulbright.com

Celia A. Cohen
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, New York 10019
Tel: (212) 318-3350
Fax: (212) 318-3400
celia.cohen@nortonrosefulbright.com

Kelly Potter
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, Texas 77010
Tel: (713) 651-5678
kelly.potter@nortonrosefulbright.com

*Attorneys for Neptune Wellness Solutions Inc., Michael Cammarata, Toni Rinow, and Martin Landry*

**POMERANTZ LLP**

By: */s/ Christopher P.T. Tourek*
    Christopher P.T. Tourek

52