**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MARVIN GONG, Individually and On Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>      v.<br><br>NEPTUNE WELLNESS SOLUTIONS INC., MICHAEL CAMMARATA, TONI RINOW, AND MARTIN LANDRY,<br><br>            Defendants. | Case No. 2:21-cv-01386-ENV-AKT |

**REPLY MEMORANDUM IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS</u>**

NORTON ROSE FULBRIGHT US LLP          NORTON ROSE FULBRIGHT US LLP


Peter A. Stokes (*pro hac vice*)                    Celia A. Cohen
98 San Jacinto Boulevard, Suite 1100          1301 Avenue of the Americas
Austin, Texas 78701-4255                         New York, New York 10019
Telephone:  (512) 536-5287                       Tel: (212) 318-3350
Facsimile:   (512) 536-4598                        Fax: (212) 318 3400
peter.stokes@nortonrosefulbright.com        celia.cohen@nortonrosefulbright.com

*Attorneys for Neptune Wellness Solutions*
*Inc., Michael Cammarata, Toni Rinow, and*
*Martin Landry*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................ 1

ARGUMENT AND AUTHORITIES .................................................................................................. 3

    I.     THE OPPOSITION FAILS TO IDENTIFY A MATERIALLY MISLEADING OR FRAUDULENT STATEMENT OR MATERIAL OMISSION ................................................................................................ 3

          A.     Plaintiff Cannot Avoid Neptune's Express Disclosures of the Allegedly Concealed Facts and Risks ......................................................... 3

          B.     The Forward-Looking Statements and Opinions Are Inactionable ........... 8

          C.     The "Confidential Witness" Allegations Fail to Show that Cammarata, Rinow, or Landry Knew of Specific Facts Contradicting Their Disclosures ............................................................... 10

          D.     The Scienter Allegations Are Wholly Deficient ..................................... 11

          E.     The Claims Against the Individual Defendants Fail ................................ 14

          F.     Plaintiff's "Scheme" and "Waiver" Arguments Are Meritless ................ 17

    II.    THE OPPOSITION FAILS TO SHOW LOSS CAUSATION .......................... 20

    III.   THE OPPOSITION DOES NOT SHOW CONTROL PERSON LIABILITY ........................................................................................................ 22

CONCLUSION ................................................................................................................................ 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alstom SA*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2017)................................................................................18, 21

*Altayyar v. Etsy, Inc.*,
  731 F. App'x 35 (2d Cir. Apr. 24, 2018) ....................................................................................2

*In re Am. Express Co. Sec. Litig.*,
  2008 WL 4501928 (S.D.N.Y. Sept. 26, 2008)..........................................................................11

*Anderson v. Stonemore Partners, L.P.*,
  296 F. Supp. 3d 693 (E.D. Pa. 2017) .........................................................................................2

*In re Aphria, Inc. Sec. Litig.*,
  No. 18 CIV. 11376, 2020 WL 5819548 (S.D.N.Y. Sept. 30, 2020).......................................14

*In re Atlas Air Worldwide Holdings, Inc. Secs. Litig.*,
  324 F. Supp. 2d 474 (S.D.N.Y. 2004)................................................................................11, 13

*In re Avon Secs. Litig.*,
  2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019).....................................................................11, 13

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
  980 F. Supp. 2d 564 (S.D.N.Y. 2013).........................................................................................1

*In re Bristol-Myers Squibb Sec. Litig.*,
  312 F. Supp. 2d 549 (S.D.N.Y. 2004)......................................................................................12

*Campo v. Sears Holdings Corp.*,
  371 F. App'x 212 (2d Cir. 2010)..............................................................................................11

*In re China Educ. All., Inc. Sec. Litig.*,
  No. CV 10-9239, 2011 WL 4978483 (C.D. Cal. Oct. 11, 2011)............................................13

*In re Citigroup Inc. Sec. Litig.*,
  735 F. Supp. 2d 206 (S.D.N.Y. 2010).......................................................................................11

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*,
  632 F.3d 751 (1st Cir. 2011).......................................................................................................2

*City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*,
  875 F. Supp. 2d 359 (S.D.N.Y. 2012)......................................................................................14

*City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014).......................................................................................................6

*In re Curaleaf Holdings, Inc. Secs. Litig.*,
  519 F. Supp. 3d 99 (E.D.N.Y. 2021) ...............................................................................4, 20, 21

*Davison v. Ventrus Biosciences, Inc.*,
  2014 WL 1805242 (S.D.N.Y. May 5, 2014) ................................................................12

*In re Delcath Sys., Inc. Sec. Litig.*,
  36 F. Supp. 3d 320 (S.D.N.Y. 2014)..........................................................................5

*In re E-House Secs. Litig.*,
  2021 WL 4461777 (S.D.N.Y. Sept. 29, 2021)..............................................................9

*Fialkov v. Alcobra, Ltd.*,
  2016 WL 1276455 (S.D.N.Y. Mar. 30, 2016) ............................................................12

*Foley v. Transocean Ltd.*,
  861 F. Supp. 2d 197 (S.D.N.Y. 2012).........................................................................5

*Gagnon v. Alkermes PLC*,
  2019 WL 2866113 (S.D.N.Y. July 2, 2019) .................................................................5

*Galestan v. OneMain Holdings, Inc.*,
  348 F. Supp. 3d 282 (S.D.N.Y. 2018)........................................................................14

*In re Garrett Motion Inc. Secs. Litig.*,
  2022 WL 976269 (S.D.N.Y. Mar. 31, 2022) ..............................................................18

*Gauquie v. Albany Molecular Research, Inc.*,
  No. 14-CV-6637, 2016 WL 4007591 (E.D.N.Y. July 26, 2016)............................................14

*In re GeoPharma, Inc. Secs. Litig.*,
  411 F. Supp. 2d 434 (S.D.N.Y. 2006).........................................................................2

*Glickman v. Alexander & Alexander Services, Inc.*,
  1996 WL 88570 (S.D.N.Y.1996)................................................................................13

*In re Global Crossing, Ltd. Sec. Litig.*,
  471 F. Supp. 2d 338 (S.D.N.Y. 2006).......................................................................21

*Gregory v. ProNAi Therapeutics Inc.*,
  297 F. Supp. 3d 372 (S.D.N.Y. 2018)....................................................................5, 16

*Gregory v. ProNAi Therapeutics Inc.*,
  757 F. App'x 35 (2d Cir. Dec. 3, 2018) .....................................................................2

*Hall v. The Children's Place Retail Stores, Inc.*,
  580 F. Supp. 2d 212 (S.D.N.Y. 2008).........................................................................5

*Heinze v. Tesco Corp.*,
  971 F.3d 475 (5th Cir. 2020) ..................................................................................9

*In re Henry Schein, Inc. Sec. Litig.*,
  No. 18-01428, 2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019) ...........................................21

*In re HEXO Corp. Secs. Litig.*,
  524 F. Supp. 3d 283 (S.D.N.Y. 2021)........................................................................17

*Janbay v. Canadian Solar, Inc.*,
   2013 WL 1287326 (S.D.N.Y. Mar. 28, 2013) ....................................................................11, 20

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001).......................................................................................................1

*Kasilingam v. Tilray, Inc.*,
   2021 WL 4429788 (S.D.N.Y. Sept. 27, 2021)...........................................................................10

*Lapin v. Goldman Sachs Grp., Inc.*,
   506 F. Supp. 2d 221 (S.D.N.Y. 2006).......................................................................................21

*Lau v. Opera Ltd.*,
   527 F. Supp. 3d 537 (S.D.N.Y. 2021).........................................................................................5

*Lentell v. MerrillLunch & Co.*,
   396 F.3d 161 (2d Cir. 2005).....................................................................................................20

*Lewis v. YRC Worldwide Inc.*,
   2020 WL 1493915 ....................................................................................................................12

*Local No. 38 IBEW Pension Fund v. Am. Express Co.*,
   724 F. Supp. 2d 447 (S.D.N.Y. 2010).......................................................................................11

*Long Miao v. Fanhua, Inc.*,
   442 F. Supp. 3d 774 (S.D.N.Y. 2020).......................................................................................10

*In re Loral Space & Communs. Ltd. Secs. Litig.*,
   No. 01 CIV. 4388 JGK, 2004 WL 376442 (S.D.N.Y. Feb. 27, 2004)......................................2

*Malik v. Network 1 Fin. Sec., Inc.*,
   No. 20-2948-CV, 2022 WL 453439 (2d Cir. Feb. 15, 2022) .....................................................1

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
   518 F. Supp. 3d 772 (S.D.N.Y. 2021).......................................................................................10

*McIntire v. China MediaExpress Holdings, Inc.*,
   927 F. Supp. 2d 105 (S.D.N.Y. 2013).......................................................................................13

*Medis Inv. Grp. v. Medis Technologies, Ltd.*,
   586 F. Supp. 2d 136 (S.D.N.Y. 2008).........................................................................................2

*Midwest Operating Engineers Pens. Trust Fnd. v. Alkermes Public Limited Co.*,
   2021 WL 5782079 (2d Cir. Dec. 7, 2021) ..................................................................................2

*Muhan Cui v. Xia*,
   2021 WL 925480 (E.D.N.Y. Mar. 2, 2021)...............................................................................12

*New Orleans Employees Ret. Sys. v. Celestica, Inc.*,
   455 Fed. Appx. 10 (2d Cir. 2011).............................................................................................14

*Norton v. Sam's Club*,
   145 F.3d 114 (2d Cir. 1998) (applying Fed. R. App. P. 28(b)) .................................................19

*In re Pall Corp.*,
No. 07-CV-3359, 2009 WL 3111777 (E.D.N.Y. Sept. 21, 2009) ...........................................13

*In re Refco, Inc. Sec. Litig.*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007)...................................................................................21

*Rice v. Intercept Pharms., Inc.*,
2022 WL 837114 (S.D.N.Y. Mar. 21, 2022) ......................................................................4, 5

*In re Salix Pharm., Ltd.*,
No. 14-CV-8925, 2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) ..........................................13

*Sanders v. AVEO Pharm., Inc.*,
No. 13-11157-DJC, 2015 WL 1276824 (D. Mass. Mar. 20, 2015) .........................................2

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
33 F. Supp. 3d 401 (S.D.N.Y. 2014)....................................................................................21

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
547 F.3d 406 (2d Cir. 2008).................................................................................................4

*In re Symbol Techs., Inc. Sec. Litig.*,
No. 05-CV-3923, 2013 WL 6330665 (E.D.N.Y. Dec. 5, 2013)...........................................14

*In re Take-Two Interactive Secs. Litig.*,
551 F. Supp. 2d 247 (S.D.N.Y. 2008)...................................................................................2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).............................................................................................................4

*Tolbert v. Queens College*,
242 F.3d 58 (2d Cir. 2001).................................................................................................19

*Town of Davie Police Officers Ret. Sys. v. Nat'l Gen. Holdings Corp.*,
2021 WL 5142702 (2d Cir. Nov. 5, 2021)..........................................................................12

*In re Vale S.A. Sec. Litig.*,
No. 19-CV-0526, 2020 WL 2610979 (E.D.N.Y. May 20, 2020) .........................................13

*Van Dongen v. CNinsure Inc.*,
951 F. Supp. 2d 457 (S.D.N.Y. 2013)..................................................................................14

*Villare v. Abiomed, Inc.*,
2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021).......................................................................9

*In re Vivendi, S.A. Secs. Litig.*,
838 F.3d 223 (2d Cir. 2016)..................................................................................................9

*Vrakas v. United States Steel Corp.*,
2018 WL 4680314 (W.D. Pa. Sept. 29, 2018)....................................................................19

*In re Wachovia Equity Sec. Litig.*,
753 F. Supp. 2d 326 (S.D.N.Y. 2011)..................................................................................11

*In re Weight Watchers Int'l Inc. Secs. Litig.*,
504 F. Supp. 3d 224 (S.D.N.Y. 2020)..................................................................................9

*Weinstein v. McClendon*,
757 F.3d 1110 (10th Cir. 2014) ...........................................................................................2

*Wilbush v. Ambac Fin. Grp., Inc.*,
271 F. Supp. 3d 473 (S.D.N.Y. 2017)..................................................................................5

The Opposition fails to salvage any of Plaintiffs' claims. Plaintiff again fails to identify a single materially misleading statement, let alone explain how the factual allegations establish the required strong inference of scienter. The Opposition is incapable of explaining how Plaintiff's vague "confidential witness" allegations meet this circuit's exacting specificity requirements. Plaintiff also cannot explain how the allegations overcome the protections for forward-looking statements and statements of opinion.

The Opposition moreover fails to identify any particularized allegations showing that Cammarata, Rinow, and Landry knew of specific facts contradicting their public statements, nor does the Opposition suggest that the individual Defendants had a ***personal*** motive to defraud other than the generalized ***corporate*** motive to raise money for Neptune. Not only is there no allegation that Defendants sold stock based on knowledge of impending problems, but Cammarata personally invested in Neptune stock to fund the SugarLeaf acquisition, which only further undercuts any inference of scienter. Cammarata also personally warned investors from the inception that the acquisition may be unsuccessful and disclosed setbacks as they arose.

The only "strong" inference from the allegations is that Defendants made honest—and, at a bare minimum, non-fraudulent—disclosures, and that Defendants appropriately cautioned investors about setbacks and headwinds. Again, courts have consistently dismissed securities fraud claims on scienter grounds where it is at least debatable that the statements were sufficient, or where reasonable minds could differ on whether Defendants had a duty to disclose additional facts, as by definition such statements cannot be "highly unreasonable" or reckless.[1] The allegations fall

---

[1] *See Kalnit v. Eichler,* 264 F.3d 131, 144 (2d Cir. 2001) (holding that because complaint "does not present facts indicating a clear duty to disclose, plaintiff's scienter allegations do not provide *strong* evidence of conscious misbehavior or recklessness"); *Malik v. Network 1 Fin. Sec., Inc.*, No. 20-2948-CV, 2022 WL 453439 at *3 (2d Cir. Feb. 15, 2022) (repeating same proposition); *In re Bank of Am. AIG Disclosure Sec. Litig.,* 980 F. Supp. 2d 564, 586 (S.D.N.Y. 2013) (holding

- 1 -

far short of supporting the requisite "strong inference" of scienter. Further, as set forth below, the

Opposition similarly fails to explain how loss causation is sufficiently alleged.

Having come nowhere close to alleging a valid securities fraud claim, and having offered

no hint that he possesses any additional factual allegations that could cure these deficiencies

through another amended complaint, Plaintiff's claims should be dismissed with prejudice.[2]

---

that if "reasonable minds could differ" on whether information was already public, it "precludes scienter because reckless conduct must be 'highly *unreasonable*'. . . .'"); *Medis Inv. Grp. v. Medis Technologies, Ltd.*, 586 F. Supp. 2d 136, 143-44 (S.D.N.Y. 2008) ("Where compelling circumstantial evidence [of scienter] is required, isolated gray areas are plainly insufficient"); *In re GeoPharma, Inc. Secs. Litig.*, 411 F. Supp. 2d 434, 448 (S.D.N.Y. 2006) ("To infer scienter from an arguably material omission, in the face of allegations that cut against such an inference, and in the absence of valid motive allegations, would be to expand the anti-fraud provisions of the securities laws beyond their intended scope."); *Anderson v. Stonemore Partners, L.P.*, 296 F. Supp. 3d 693, 704 (E.D. Pa. 2017) ("Even if [the alleged misstatements] were arguably material, the very fact they appear immaterial demonstrates that they are not 'so obviously material' as to allow a finding of recklessness"); *Sanders v. AVEO Pharm., Inc.*, No. 13-11157-DJC, 2015 WL 1276824, at *10 (D. Mass. Mar. 20, 2015) (no scienter when sufficiency of public disclosures is "at least debatable"); *Weinstein v. McClendon*, 757 F.3d 1110, 1114 (10th Cir. 2014) (defendants' knowledge of "arguably material facts" does not support strong inference that their nondisclosure was reckless or intentional); *In re Take-Two Interactive Secs. Litig.*, 551 F. Supp. 2d 247, 281 (S.D.N.Y. 2008) (no scienter where statement reflected a "reasonable resolution of ambiguous regulatory language" and not "a reckless or knowing falsehood"); *In re Loral Space & Communs. Ltd. Secs. Litig.*, No. 01 CIV. 4388 JGK, 2004 WL 376442, at *11 (S.D.N.Y. Feb. 27, 2004) ("To plead scienter, the information alleged to be contradictory must suggest that the defendants knew, or were reckless in not knowing, that the subscriber projections were false or without any reasonable basis"); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 757 (1st Cir. 2011) ("If it is questionable whether a fact is material or its materiality is marginal, that tends to undercut the argument that defendants acted with the requisite intent or extreme recklessness").

[2] *See, e.g., Midwest Operating Engineers Pens. Trust Fnd. v. Alkermes Public Limited Co.*, 2021 WL 5782079, at *5 (2d Cir. Dec. 7, 2021) (affirming denial of leave to amend where plaintiff "did not suggest any tangible amendments that would remedy the district court's concerns"); *Gregory v. ProNAi Therapeutics Inc.*, 757 F. App'x 35, 39 (2d Cir. Dec. 3, 2018) (affirming dismissal of initial consolidated complaint where "plaintiffs sought leave to amend in a footnote at the end of their opposition to defendants' motion to dismiss" but "included no proposed amendments" and failed to advise how pleading defects would be cured); *Altayyar v. Etsy, Inc.*, 731 F. App'x 35, 38 n. 4 (2d Cir. Apr. 24, 2018) (affirming dismissal with prejudice where "plaintiffs requested leave to amend in a cursory manner without any explanation for how they would be able to cure the complaint's defects").

## ARGUMENT AND AUTHORITIES

I.   **THE OPPOSITION FAILS TO IDENTIFY A MATERIALLY MISLEADING OR FRAUDULENT STATEMENT OR MATERIAL OMISSION**

A.   **Plaintiff Cannot Avoid Neptune's Express Disclosures of the Allegedly Concealed Facts and Risks**

The Opposition does not cure the core failing of Plaintiff's claims—the fact that Defendants *disclosed* the risks and headwinds Plaintiff alleges were omitted. As set forth in Defendants' opening memorandum of law ("Memorandum" or "Mem."), Neptune never represented to investors that the SugarLeaf facility could produce THC-free CBD and instead expressly disclosed that there was "no assurance" the SugarLeaf acquisition would be successful. (*See* Mem. at 8-9.) Neptune also disclosed that the facility incurred successive substantial writedowns due to the "decline in hemp-derived CBD refined oil pricing as well as a decrease in forecasted sales volumes for the SugarLeaf business," that the facility was not generating operating profits, and that Neptune would need to "retool" the facility. (*See* Mem. at 14-15.) The fact that Neptune disclosed setbacks in "dribs and drabs" as they occurred does not show fraud.[3] Neptune also expressly disclosed that "[o]ur hand sanitizer products are currently manufactured by third party manufacturers located in North America" and warned investors about the risks from "disruption to global supply chains" and "[r]eal or perceived quality control problems" with "finished products manufactured by contract manufacturers." (*See* Mem. at 8, 17.) Further, Neptune made clear when it announced the $100 million in purchase orders that it was "no longer issuing revenue guidance" due to the uncertainty of the timing of the sales" due to "production and transportation issues related to the pandemic situation, such as FDA requirements, lack of raw

---

[3] *See* In re Magnum Hunter Res. Corp. Secs. Litig., 26 F. Supp. 3d 278, 298 (S.D.N.Y. 2014), aff'd, 616 F. App'x. 442 (2d Cir. 2015)).

materials and supply chain challenges." (*See* Mem. at 21.) Lastly, while the Opposition repeats Plaintiff's conclusory allegations about the purported "collapse" of the Costco relationship, Plaintiff again fails to specify exactly when this "collapse" occurred, what exactly caused it, or whether the individual Defendants were apprised at any specific time about the alleged "collapse," the purported cause of the collapse, or any alleged quality control issues with hand sanitizer manufactured by outside entities. (*See* Mem. at 18.)

Plaintiff instead erroneously suggests that the Court cannot consider Neptune's extensive public disclosures about these issues because they are "external" to the Complaint. (*See* Lead Plaintiff's Opposition to Defendants' Motion to Dismiss ("Opp.") at 9-10.) That argument is meritless. It is well-settled that courts may consider, and take judicial notice of, public securities filings on a motion to dismiss, including filings with Canada's securities regulator.[4] Indeed, district courts are ***required*** to consider judicially noticeable facts in evaluating a securities complaint.[5] Plaintiff generically objects that the ***number*** of exhibits is "extensive," but does not specifically assert that any particular exhibit is not authentic or is otherwise unsuitable for judicial notice. The Opposition cites no authority allowing a securities plaintiff to plead a securities fraud claim by

---

[4] *See, e.g., In re Curaleaf Holdings, Inc. Secs. Litig.*, 519 F. Supp. 3d 99, at 104 & n. 4 (E.D.N.Y. 2021) (taking judicial notice of Canadian securities filings); *Rice v. Intercept Pharms., Inc.*, 2022 WL 837114, at *6 (S.D.N.Y. Mar. 21, 2022) (collecting cases and holding that courts may consider regulatory filings on motion to dismiss); *id.* at *18 (rejecting argument that disclosure was impermissibly "buried" in middle of SEC filing); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)) (same).

[5] *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that "courts ***must*** consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions ot dismiss, in particular, documents incorporated into the complaint by reference, and ***matters of which a court may take judicial notice***") (emphasis added).

- 4 -

cherry-picking individual disclosures while ignoring a defendant's other judicially noticeable public disclosures.[6]

Plaintiff's characterization of Defendants' public-disclosure arguments as a "truth-on-the-market" defense (Opp. at 33) is similarly inapt. It is well-settled that a securities claim fails on the pleadings when the defendant itself discloses the allegedly omitted facts, or when those facts are in the public domain, regardless of whether plaintiffs characterize the defense as a "truth-on-the-market" defense.[7] This is not a case like *Garino v. Citizens Utilities Co.* or the other "truth-on-the-market" case cited in the Opposition, where it was not clear whether the prior disclosure actually rendered the subsequent disclosure non-misleading.[8] The case instead resembles the numerous cases dismissed on the pleadings where the defendants themselves disclosed the allegedly omitted facts or risks.[9] Plaintiff has improperly conflated the "truth-on-the-market" defense—which is a distinct defense that addresses the separate element of ***reliance*** and is a means of "rebut[t]ing the

---

[6] *See Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 410-11 (S.D.N.Y. 2018) ("Where cognizable materials reveal a public disclosure, the Court is not required to blink reality and accept as true a plaintiff's claim of non-disclosure").

[7] *See, e.g., Rice*, 2022 WL 837114, at *10 (granting dismissal because allegedly omitted facts were readily accessible in the public domain); *Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 552 (S.D.N.Y. 2021) (granting dismissal where allegedly undisclosed facts were publicly available); *Gagnon v. Alkermes PLC*, 2019 WL 2866113, at *3 (S.D.N.Y. July 2, 2019) (rejecting similar attempt to characterize public disclosure defense as truth-on-the-market defense).

[8] *See* 228 F.3d 154, 167-68 (2d Cir. 2000) (noting that defendants' own briefing effectively conceded a material misrepresentation); *see also Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 229 (S.D.N.Y. 2008) (denying dismissal where "many" of the allegedly omitted facts were not disclosed).

[9] *See, e.g., Wilbush v. Ambac Fin. Grp., Inc.*, 271 F. Supp. 3d 473, 489 (S.D.N.Y. 2017) (defendants' disclosure on corporate website negated fraud claim); *In re Delcath Sys., Inc. Sec. Litig.*, 36 F. Supp. 3d 320, 329 (S.D.N.Y. 2014) (alleged omissions were not actionable where public "[d]ocuments submitted by Defendants ... contradict[ed] the Complaint and show[ed] that the Company did disclose" the information allegedly omitted); *Foley v. Transocean Ltd.*, 861 F. Supp. 2d 197, 210–11 (S.D.N.Y. 2012) (alleged omissions were not actionable because the "Lead Plaintiff [wa]s suggesting that [the defendant] should have disclosed" certain information, and the defendant "did disclose such concerns to the market at various points in time").

presumption that [defendants'] misrepresentations have affected the market price of its stock"—with Plaintiff's pleading burden of identifying statements that are materially misleading and so indefensibly untrue as to be fraudulent.[10] Defendants' arguments are instead directed at the elements of material falsity and scienter—namely, that Neptune's own disclosures were not materially misleading because they revealed the facts Plaintiff asserts were omitted, including the fact that Neptune used contract manufacturers in North America to make hand sanitizer, and that the challenged statements at a minimum were not so blatantly misleading as to be reckless.[11]

As set forth in Defendants' Memorandum, Neptune's public filings made crystal clear that the SugarLeaf acquisition was not guaranteed to succeed, faced challenges from declining hemp extract prices, was losing money, and required substantial writedowns. (See Mem. at 13-15.) Indeed, Cammarata warned investors from the inception there was "no assurance" that "our utilization capacity will achieve expected levels" or that Neptune would successfully integrate the business."[12] Neptune disclosed in June and July 2020 that the facility was generating significant losses had just $1,338,926 in property and equipment value. (*See id.* at 14.) Rinow also candidly disclosed on November 16, 2020 that Neptune would "retool our North Carolina facility," which (contrary to Plaintiff's assertions) expressly referred to a retooling of the SugarLeaf facility itself, and not simply a retooling of the business model (though such an interpretation provides no benefit

---

[10] *See Ganino*, 228 F.3d at 167-68; *City of Pontiac*, 752 F.3d at 186 n. 62 (rejecting effort to characterize defense as "truth-on-the-market" because "the relevance of [the cautionary disclosures] is not to show that plaintiffs *knew* the truth about the portfolio, but rather to undercut the inference that UBS was attempting to conceal that truth").

[11] *See City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 186 n. 62 (2d Cir. 2014) (rejecting effort to characterize defense as "truth-on-the-market" because "the relevance of [the cautionary disclosures] is not to show that plaintiffs *knew* the truth about the portfolio, but rather to undercut the inference that UBS was attempting to conceal that truth").

[12] *See id.* ¶ 35 (discussing August 14, 2019 press release) (emphasis added).

to Plaintiff's claims),[13] and which made clear that the facility would need to undergo substantial changes to become profitable. (*See id.* at 15.)

Plaintiff likewise musters only a single conclusory footnote (*see* Opp. at 5 n. 2) in response to Neptune's express disclosures that it utilized outside contractors in North America to manufacture hand sanitizer. Again, Neptune expressly disclosed that "[o]ur hand sanitizer products are currently manufactured by third party manufacturers located in North America." (Mem. at 17.) While Plaintiff claims that Neptune's disclosure about "accelerating production" was misleading, Neptune made clear that this "production" included production by third-party manufacturers. Plaintiff cannot reasonably argue that Neptune was deceptively "passing off" sanitizer manufactured by a Mexican contractor as domestically-made sanitizer when Neptune itself expressly disclosed it was using contractors in "North America" to make sanitizer. The disclosures were not misleading, and certainly not so indefensible to be fraudulent. Neptune also disclosed the risk of "[r]eal or perceived quality control problems" from "finished products manufactured by contract manufacturers," which would plainly include sanitizer given Neptune's express disclosure that it was sourcing sanitizer from outside contractors. (*See* Mem. at 17.) While Plaintiff offers conclusory confidential-witness descriptions of purported "quality" issues, there is no particularized allegation any of the purported witnesses ever told Cammarata, Rinow, or Landry

---

[13] Plaintiff's argument that Cammarata's earlier reference to "retooling" of the business model on June 10, 2020 (Opp. at 15) does not help Plaintiff's cause. Not only was Rinow's later statement expressly directed at the facility, but Plaintiff acknowledges that Cammarata's earlier statement referred to "pivoting the business model away from failed B2B CBD extraction." (Opp. 15.) That "extraction" business model, however, was focused on the SugarLeaf facility. Plaintiff's effort to differentiate the business model from the facility rings hollow, especially when Cammarata's June 2020 disclosures are taken in context of Neptune's numerous other disclosures at that time making clear that the extraction business at the SugarLeaf facility was not profitable and was facing substantial challenges.

that they believed the sanitizer was of low quality, or any allegations about when exactly the purported quality issues arose.

Neptune also expressly disclosed that it faced challenges from supply-chain disruptions and lack of manufacturing capacity. Contrary to Plaintiff's errant assertion that Neptune merely disclosed "potential" supply chain issues (Opp. at 19), Neptune announced on November 16, 2020 that it would no longer issue quarterly revenue guidance because of the "uncertainty" caused by "supply chain challenges" and other issues. (*See* Mem. at 21.) Neptune also stated as a present-tense fact that "supply chains are experiencing many challenges, such as delays and unexpected failures in third party manufacturers and logistics," which in context plainly included Neptune's ability to service the purchase orders identified in the Complaint. (*See id.* at 22.) Neptune made these disclosures ***on the very day it announced the $100 million in purchase orders***. (*See id.* at 21.) While Plaintiff argues in conclusory fashion that Neptune never had the "capacity" to fill the orders, Neptune made clear from the outset that it would need to rely on outside "supply chains" and "third party manufacturers" to fulfill the orders, and that doing so posed challenges so significant that they led Neptune to cease its normal practice providing quarterly revenue guidance. Again, Plaintiff cannot show that Defendants' disclosures were remotely misleading, let alone so blatantly and undebatably inexcusable as to support a strong inference of fraud.

In light of these disclosures, Plaintiff has failed to allege facts showing a material misstatement, let alone supporting a strong, cogent, and compelling inference of scienter.

### B.      The Forward-Looking Statements and Opinions Are Inactionable

The Opposition likewise fails to show how Defendants' statements were not protected by the safe harbor for forward-looking statements and the heightened requirements for statements of opinion. Plaintiff cites cases for the general proposition that statements of "present facts" are not forward-looking (*see* Opp. at 21), but cannot overcome the caselaw finding "on track" statements

- 8 -

to be protected.[14] Further, while Plaintiff contends the safe harbor does not apply to omissions, courts in this circuit have applied it to "mixed" statements that are alleged to be misleading by way of omission, which is what Plaintiff alleges here.[15] As "pure omission" claims are not actionable absent a rule requiring disclosure (which is not alleged here),[16] the only purported basis for omissions liability here is that the alleged omissions render Defendants' affirmative statements materially misleading—an argument that runs straight into the safe harbor to the extent those purportedly misleading "affirmative statements" are forward-looking.[17]

As set forth in Defendants' Memorandum, a substantial number of the alleged misstatements are statements about future prospects or expectations, as well as statements of opinion and corporate puffery.[18] Defendants made robust cautionary disclosures, and there are no particularized allegations that Defendants personally knew the statements were false (which they were not). The Court should dismiss all claims based on forward-looking statements or opinions.

---

[14] *See* Mem. at 30; *Villare v. Abiomed, Inc.*, 2021 WL 4311749, at *17 (S.D.N.Y. Sept. 21, 2021) (statements that company is "on track" to meet goal are forward-looking); *In re Adient plc Secs. Litig.*, 2020 WL 1644018, at *19 (S.D.N.Y. Apr. 2, 2020) ("Even statements about Adient being 'on track' with respect to its projected margin expansion are 'forward-looking' statements within the meaning of the PSLRA. . . .").

[15] *See In re Weight Watchers Int'l Inc. Secs. Litig.*, 504 F. Supp. 3d 224, 252-53 & n.4 (S.D.N.Y. 2020) ("While the PSLRA safe harbor does not protect material omissions . . ., Plaintiffs assert that this action is both a misstatement and omission case"); *In re E-House Secs. Litig.*, 2021 WL 4461777, at *11 (S.D.N.Y. Sept. 29, 2021) (dismissing claim that forward-looking statements were misleading due to omission of other projections and explaining that statements qualify for safe harbor if they are either accompanied by meaningful cautionary language *or* are not made with actual knowledge of falsity; also applying standards for opinions).

[16] *See In re Vivendi, S.A. Secs. Litig.*, 838 F.3d 223, 239-40 (2d Cir. 2016) (explaining that "pure omission" claims are not cognizable absent a duty to disclose); *Heinze v. Tesco Corp.*, 971 F.3d 475, 483 (5th Cir. 2020) (collecting cases and holding that "pure-omission claims are not cognizable").

[17] *See In re Weight Watchers*, 504 F. Supp. 3d at 252-53 & n.4 (applying safe harbor to "mixed" forward-looking statement allegedly rendered misleading by omissions).

[18] *See* Mem. at 26, 30-34 (describing forward-looking statements and opinions).

**C.** **The "Confidential Witness" Allegations Fail to Show that Cammarata, Rinow, or Landry Knew of Specific Facts Contradicting Their Disclosures**

The Opposition likewise fails to explain how Plaintiff's unparticularized confidential witness allegations show a material misstatement, support a strong inference of scienter, or otherwise satisfy the applicable pleading requirements. As set forth in Defendants' Memorandum, the confidential witnesses describe only one internal communication with Cammarata—a statement about using third-party hemp processors to make THC-free CBD oil.[19] That statement did not contradict any of Defendants' public disclosures, which made clear that Neptune used third-party contractors. The alleged witnesses otherwise provide no specifics on when the alleged "collapse" of the Costco relationship occurred, what actually caused the alleged "collapse," or what personal knowledge they have of the Costco relationship or the quality of the hand sanitizer, nor do they allege that Cammarata, Rinow, or Landry were aware the sanitizer was of low quality (or were even aware that the confidential witnesses themselves believed it was of low quality).[20]

In other words, the problem with Plaintiff's "confidential witness" allegations is not limited to the alleged witnesses' lack of interaction with the individual Defendants, or a lack of personal knowledge regarding the events at issue, or a lack of detail regarding the matters they allege, or a lack of detail regarding their own involvement. It is all of the above. Defendants cite numerous cases in this circuit that have rejected similarly deficient confidential witness allegations.[21]

---

[19] *See* Mem. at 37-38, 40.

[20] *See* Mem. at 38.

[21] *See, e.g., Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 780 (S.D.N.Y. 2021) ("For information from a confidential witness to establish scienter, however, the complaint 'must describe the nature of the CW's contact with the individual defendants that would be probative of defendants' mental state'") (quoting *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 799 n. 19 (S.D.N.Y. 2020)); *Kasilingam v. Tilray, Inc.*, 2021 WL 4429788, at *10 (S.D.N.Y. Sept. 27, 2021) (rejecting confidential witness allegations that failed to "suggest that [corporate decisionmakers] subjectively felt the company's due diligence was lacking, much less that they believed the deal to be wrose for the company than advertised"); *Campo v. Sears Holdings Corp.*,

Plaintiff's cases, by contrast, are readily distinguishable and involve specific allegations that the individual defendants received reports or documents contradicting their statements, or that the company engaged in inaccurate accounting practices.[22] The "CW" allegations are thus deficient.

### D.    The Scienter Allegations Are Wholly Deficient

The Opposition likewise fails to identify any particularized facts supporting a strong, cogent, and compelling inference of scienter. As stated above and previously, courts consistently reject scienter allegations when it is at least "debatable" that the disclosures at issue were sufficient or where the duty to disclose omitted facts was "not so clear."[23] In light of Neptune's extensive disclosures about the risks and headwinds facing SugarLeaf, the use of outside manufacturers, the uncertainty of filling the purchase orders, and the numerous other risks disclosed in Neptune's filings, and given the absence of any affirmative disclosures expressly contradicting what Plaintiff claims Defendants knew, Plaintiff has failed to allege facts showing that Defendants knowingly or

---

371 F. App'x 212, 217 (2d Cir. 2010) (finding that scienter was not alleged where a confidential witness "had no knowledge of whether [the individual defendants] actually accessed or reviewed the reports"); *In re Citigroup Inc. Sec. Litig.*, 735 F. Supp. 2d 206, 245 (S.D.N.Y. 2010) ("Fatal to plaintiffs' claims[,]" was a failure to allege that confidential witnesses presented information to individual defendants);*Janbay v. Canadian Solar, Inc.*, 2013 WL 1287326, at *11 (S.D.N.Y. Mar. 28, 2013) ("Indeed, 'Plaintiffs allege no direct contact between [the] CW[s] and Defendants,' rendering their scienter allegations insufficient as a matter of law"); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 358 (S.D.N.Y. 2011)*; In re Am. Express Co. Sec. Litig.*, 2008 WL 4501928, at *8 (S.D.N.Y. Sept. 26, 2008) (discounting allegations where Plaintiffs "failed to allege any facts showing that the confidential sources ... had any contact with the Individual Defendants"); *Local No. 38 IBEW Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 460 (S.D.N.Y. 2010) (same).

[22] *See In re Avon Secs. Litig.*, 2019 WL 6115349, at *20-21 (S.D.N.Y. Nov. 18, 2019) (denying dismissal where "Defendants received reports detailing the rising delinquency rate long before acknowledging it publicly" or "deliberately ignored those reports," and where "Defendants continued to recognize revenue and make SOX certifications even after receiving reports showing higher rates of default on the questionable line items"); *In re Atlas Air Worldwide Holdings, Inc. Secs. Litig.*, 324 F. Supp. 2d 474, 493 (S.D.N.Y. 2004) (denying dismissal where former internal auditor alleged that company improperly capitalized its maintenance expenses).

[23] *See supra* footnote 1.

recklessly made false statements.[24] Indeed, as stated above, Plaintiff has failed to allege any facts showing that Defendants' statements were misleading at all, let alone undebatably so.

Nor does the Opposition identify a sufficient motive to defraud. Merely alleging that Neptune conducted financings and needed to raise capital to remain in business—a motive shared by many earlier-stage companies—is insufficient.[25] Instead, courts have repeatedly required plaintiffs to show concrete **personal** motives by the individual defendants, such as motives to sell stock before a corrective disclosure.[26] Not only are no such motives alleged here, but Plaintiff cannot dispute that Cammarata **bought** Neptune stock to help fund the SugarLeaf acquisition, which severely undermines any inference that he knew the facility had no hope of success or otherwise had a motive to deceive investors.[27] Further, while Plaintiff generically alleges that Neptune needed financing to continue its business operations, the Complaint lacks any

---

[24] *See supra* footnote 1.

[25] *See Davison v. Ventrus Biosciences, Inc.*, 2014 WL 1805242, at *10 (S.D.N.Y. May 5, 2014) ("These alleged motives—*i.e.*, to keep the company afloat and to increase its officers' compensation—are no different than those generally possessed by most corporate directors and officers"; fact that financing was needed to "continue Ventrus as a going concern" did not change outcome); *Muhan Cui v. Xia*, 2021 WL 925480, at *5 (E.D.N.Y. Mar. 2, 2021) (desire to "raise more capital" insufficient to show scienter); *Lewis v. YRC Worldwide Inc.*, 2020 WL 1493915, at *18 (N.D.N.Y. Mar. 27, 2020 ("motive to raise capital" is insufficient to show scienter; collecting cases).

[26] *Town of Davie Police Officers Ret. Sys. v. Nat'l Gen. Holdings Corp.*, 2021 WL 5142702, at *2 (2d Cir. Nov. 5, 2021) (plaintiffs must allege concrete "personal" motives, not common corporate motives).

[27] Contrary to Plaintiff's assertions, the fact that a defendant purchased stock, or did not sell stock, may be considered on a motion to dismiss and undermines any inference of scienter. *See Abely v. Aeterna Zentaris Inc.*, 2013 WL 2399869, at *22 (S.D.N.Y. May 29, 2013 (noting that records of stock purchases may be considered on motion to dismiss); *Fialkov v. Alcobra, Ltd.*, 2016 WL 1276455, at *7 (S.D.N.Y. Mar. 30, 2016) (absence of stock sales undermines inference of scienter). Indeed, the fact that an officer purchased significant amounts of Neptune stock without selling it is "**wholly inconsistent with fraudulent intent**." *See In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (emphasis added); *see also Fishbaum v. Liz Claiborne*, Inc., 189 F. 3d 460 (2d Cir. 1999) ("inferences of scienter can be undermined when an insider's sales of stock are offset by even larger stock acquisitions….").

- 12 -

particularized allegations actually showing that Neptune was near the precipice of bankruptcy or insolvency without raising additional funds.[28] Plaintiff's cited "motive" authority, by contrast, is readily distinguishable.[29]

Plaintiff's other scienter authorities simply confirm that this case falls far below the "cut line" separating PSLRA-compliant allegations from cases that are dismissed. Plaintiff's cases involve far stronger allegations that individual executives received information contradicting their statements, systemic accounting failures, and/or allegations of clear-cut and egregious misstatements, including some that resulted in governmental sanctions.[30] In short, the Opposition fails to identify any facts supporting a strong, cogent, and compelling inference of scienter.

---

[28] *See, e.g., Glickman v. Alexander & Alexander Services, Inc.*, 1996 WL 88570, *7 (S.D.N.Y.1996) (vague allegations of motive like "raising desperately needed capital" are too generalized to satisfy the scienter requirement).

[29] Plaintiff cites *Shanawaz v. Intellipharmaceutics Int'l Inc.*, but that case involved specific allegations showing that the individual defendants knew the contents of a drug application they allegedly misrepresented and had incentive awards tied to the stock price) 348 F. Supp. 3d 313, 326 (S.D.N.Y. 2018). The allegations here lack anything close to the combined force of the far more specific scienter allegations in *Shanawaz*.

[30] *See In re Vale S.A. Sec. Litig.*, No. 19-CV-0526, 2020 WL 2610979, at *6 (E.D.N.Y. May 20, 2020) (Brazilian government investigation found the company's dam collapse "'was not an accident,' and 'Vale management and the board knew the risks and decided to take them.'"); *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 489 (S.D.N.Y. 2004) (in addition to an SEC investigation, the court noted the "dramatic" restatement indicated "systemic accounting abuses"); *In re Salix Pharm., Ltd.*, No. 14-CV-8925, 2016 WL 1629341, at *15-16 (S.D.N.Y. Apr. 22, 2016) (The company's Board "clawed back millions of dollars' worth of compensation from the Individual Defendants" after allegedly discovering their wrongdoing and the "magnitude of the alleged fraud" provided addition support for finding scienter); *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 136 (S.D.N.Y. 2013) (auditor's accounting practices were alleged to be "so deficient that the audit amounted to no audit at all"); *In re Avon Sec. Litig.*, No. 19 CIV. 01420, 2019 WL 6115349, at *20-21 (S.D.N.Y. Nov. 18, 2019) ("egregious" behavior of the type that does "not commonly occur inadvertently" alleged); *In re Pall Corp.*, No. 07-CV-3359, 2009 WL 3111777, at *8 (E.D.N.Y. Sept. 21, 2009) (taking into account both the length (nine years) and the magnitude (over $277 million in additional taxes, penalties and interest) of the alleged fraudulent tax scheme); *In re China Educ. All., Inc. Sec. Litig.*, No. CV 10-9239, 2011 WL 4978483, at *6 (C.D. Cal. Oct. 11, 2011) (defendant allegedly "filed significantly disparate revenue figures in China and the United States" and its "'state-of-the-art' facility" was "an empty building"). Many cases involved situations where the plaintiff actually

E.       **The Claims Against the Individual Defendants Fail**

The Opposition likewise fails to show a claim against the individual Defendants.

**Cammarata.** Again, far from defrauding investors, Cammarata instead expressly ***warned*** that there was "no assurance that the integration of SugarLeaf will be successfully implemented, that our utilization capacity will achieve anticipated levels, or that operational costs and margins will benefit from these developments to the extent anticipated at this time." (*See* Compl. ¶ 35.) Many of his statements were simply innocuous expressions of corporate optimism (e.g., "I could not be more proud of how are entire team has mobilized"), undeniably truthful statements (e.g., that Neptune closed the SugarLeaf acquisition, which it did), forward-looking statements (e.g., that "[o]ur expansion in North Carolina is on time and on budget," or "[w]e anticipate initial shipments over the next several weeks"), or candid disclosures about "operational challenges" (e.g., that "[i]t quickly became apparent that there were several operational challenges that needed

---

alleged contemporaneous facts showing that the defendants knew of specific adverse information yet withheld it, while Neptune disclosed all known information. *See New Orleans Employees Ret. Sys. v. Celestica, Inc.*, 455 Fed. Appx. 10, 15 (2d Cir. 2011) (allegations that defendants were "specifically informed, and had reason to know, of the growing inventory stockpile"); *Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457, 472 (S.D.N.Y. 2013) (statements regarding an undisclosed equity compensation plan were rendered "knowingly or recklessly false" where executives had previously promoted the plan); *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923, 2013 WL 6330665, at *11 (E.D.N.Y. Dec. 5, 2013) (defendants admitted that their Sarbanes-Oxley certifications were false); *In re Aphria, Inc. Sec. Litig.*, No. 18 CIV. 11376, 2020 WL 5819548, at *8-9 (S.D.N.Y. Sept. 30, 2020) (defendants allegedly performed due diligence, including site visits, such that they knew the acquired assets were "valueless assets or sham assets" yet "continued to misrepresent and incorrectly value the assets"); *Shanawaz*, 348 F. Supp. 3d at 325 (denying dismissal where defendant "never even performed or submitted the described studies to the FDA, despite having told the public otherwise"); *City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 366 (S.D.N.Y. 2012) (defendants' statements went "well beyond mere 'rosy predictions'" by making affirmative false statements about a business division's performance issues); *Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 300-01 (S.D.N.Y. 2018) (defendants allegedly received specific, detailed reports that directly contradicted their public statements); *Gauquie v. Albany Molecular Research, Inc.*, No. 14-CV-6637, 2016 WL 4007591, at *2 (E.D.N.Y. July 26, 2016) (failure to "disclose a known power failure" that resulted in contamination of 40-50% of a laboratory's product).

- 14 -

to be addressed immediately," and that Neptune experienced a "compression of 60%" on hemp pricing) that weigh heavily *against* any inference of fraud. (*See, e.g.,, id.* ¶¶ 37, 61, 64, 66, 72, 74.)

Further, the Opposition's tally of Defendants' purported omissions (Opp. at 14) misleadingly compresses the SugarLeaf chronology while ignoring what Defendants said—and, equally importantly, did *not* say—about SugarLeaf. As set forth in the Memorandum, the Complaint does not dispute that Neptune did indeed enter a "large contract" in October 2019 to provide extraction services in North Carolina, and there are no particularized allegations that Neptune was not in fact expanding the facility's extraction capacity *at that time*. (*See* Mem. 12.) As hemp extraction prices collapsed, however, Neptune promptly apprised the market that the asset was declining in value, including by disclosing a $45 million writedown on February 13, 2020, followed by additional sober disclosures in June 2020 about a further $82.1 million impairment, decreasing SugarLeaf sales volume, and substantial operating losses from the facility, followed by the November 2020 disclosure about the need to "retool" the facility. (*See* Mem. at 13-14.) Again, as conditions at SugarLeaf deteriorated, Neptune disclosed them. Defendants moreover never represented that SugarLeaf was GMP-certified or had the capacity to produce THC-free CBD, and thus had no duty to disclose that it lacked such certifications or capacity. (*See* Mem. at 9-10, 26 n. 85 & 86 (explaining there is no duty to disclose absence of beneficial characteristic if company never claimed characteristic in the first place.)

The Opposition likewise fails to explain how Cammarata's sanitizer-related statements—including those in Paragraphs 89-90 of the Complaint—are materially misleading, let alone fraudulent. Again, Neptune plainly disclosed before these statements that Neptune relied on third-party manufacturers and faced quality control risks. (*See* Mem. at 8, 17.) And again, Plaintiff does not plead with specificity that the Costco relationship had already "collapsed" at the time of

- 15 -

Cammarata's July 9, 2020 statements, let alone that Cammarata was aware at that time of any quality control issues or any problems with the Costco relationship. (*See* Mem. at 18.)

**Rinow.** The Opposition likewise fails to explain how the disclosures in Neptune's formal SEC filings (for which no false statement is alleged with particularity), Rinow's innocuous June 10, 2020 statements about SugarLeaf contributing to an initial increase in revenue, her November 16, 2020 statement that Neptune intended to "retool" the SugarLeaf facility, and her statement about the $100 million purchase orders were fraudulent. (*See* Compl. ¶¶ 82, 102, 106.)

Plaintiff also takes out of context Rinow's November 2020 statements that "we are now poised for expansion and profitability."[31] This statement was part of a broader discussion of "step 2" of Neptune's overall business transformation, rather than a specific statement about SugarLeaf.[32] Immediately before the "poised for expansion" statement, Rinow stated that Neptune "will also retool our North Carolina facility," thus making clear that the "retooling" had not happened yet, and that the facility would need to be overhauled significantly before it could become a profitable asset.

**Landry.** Plaintiff lastly fails to explain how Landry's February 13, 2020 statement that "we still think SugarLeaf will hit some of their earnouts and we still think they have a bright future ahead of them" (Compl. ¶ 68.) was misleading. And again, the fact that Landry later resigned does nothing to show that he (or anyone) acted with scienter.[33]

---

[31] *See* Opp. at 14. Plaintiff mistakenly asserts that this statement was made by Cammarata in August, rather than by Rinow in November as alleged in Paragraph 102 of the Complaint.

[32] *See* Ex. 17 to Stokes Decl., Nov. 16, 2020 Earnings Tr. at 5-6.

[33] *See, e.g., Gregory v. ProNAi Therapeutics Inc.*, 297 F Supp. 3d 372, 415 (S.D.N.Y. 2018) (rejecting similar argument because "[o]fficials resign for many innocuous reasons" and it is "axiomatic that nascent companies with uncertain futures are especially prone to turnover").

### F.    Plaintiff's "Scheme" and "Waiver" Arguments Are Meritless

The Opposition also attempts to deflect from the absence of a viable substantive claim with groundless arguments of scheme liability and waiver. For example, Plaintiff inaccurately asserts that "Defendants do not meaningfully challenge Plaintiff's 'scheme liability' allegations. (*See* Opp. at 35-36.) Not only did Defendants expressly address Plaintiff's scheme claim (*see* Mem. at 34), but Defendants thoroughly addressed the purported basis for this claim: the alleged "attempt to starve SugarLeaf of resources and avoid earnout payments to SugarLeaf's founders, while actively concealing this conduct. . . ." (Compare Opp. at 35 *with* Mem. at 9-11, 30.) As set forth in Defendants' opening brief, and as unrebutted in the Opposition, the Complaint pleads no specifics as to when Neptune allegedly made the decision to "starve" SugarLeaf, which funds were withheld, let alone any specific facts showing that Neptune was required to make uneconomical investments in the SugarLeaf facility following the decline in hemp extract prices just to prop up potential earnout payments to the sellers. (*See* Mem. at 11.) Judge Buchwald severely criticized a similar argument that a cannabis company was required to enforce a contractual guarantee that management later viewed as detrimental to its relationship with a key government distributor after market conditions had deteriorated, or to make a disclosure that would weaken its bargaining position, observing that "[t]his Court was unaware that compliance with the securities laws required a corporate suicide pact."[34] Plaintiff likewise alleges no facts showing that the decisions regarding Neptune's funding of SugarLeaf were not justified by changing business circumstances,

---

[34] *In re HEXO In re HEXO Corp. Secs. Litig.*, 524 F. Supp. 3d 283, 309 (S.D.N.Y. 2021). In *HEXO*, the plaintiffs argued that because HEXO had previously disclosed it had the right to require Quebec's provincial cannabis distribution monopoly to pay HEXO in full for the allotted cannabis supply during the first year, HEXO acted fraudulently by not enforcing that right, which HEXO management thought would have damaged its relationship with the government distributor after it sold only half of the expected quantity to end users. *See id.* Similarly, the securities laws do not prevent Neptune from changing its approach to SugarLeaf after hemp extraction prices collapsed.

let alone showing that Defendants acted fraudulently by allegedly not continuing to invest in an unprofitable asset after market conditions have changed. As Judge Buchwald recognized, and as common sense dictates, the securities laws should not be construed to limit management's flexibility to adapt to changing business conditions. The "earnout" claim is thus meritless.

Plaintiff's characterization of its "scheme" argument also reinforces that there is no basis for such a claim. The Opposition describes the "scheme" claim as based on "[t]he secret diversion of business away from SugarLeaf in an attempt to starve SugarLeaf of resources and avoid earnout payments to SugarLeaf's founders, while ***actively concealing this conduct*. . . .***" (*See* Opp. at 35) (emphasis added.) Thus, by Plaintiff's admission, the "scheme" claim is predicated on Defendants' alleged concealment of its funding decisions—a classic misrepresentation and omission claim. Plaintiff cannot repackage a deficient misrepresentation and omission claim as a scheme claim and obtain a different result.[35] Indeed, Plaintiff's supplemental authority citation to *SEC v. Rio Tinto PLC* confirms that allegations of misstatements and omissions standing alone do not support scheme liability.[36] Regardless, even if Plaintiff ***could*** theoretically allege scheme liability based on this conduct, such a claim is subject to the same rigorous standards as Plaintiff's misstatement claims.[37] Defendants' Memorandum demonstrates that those standards have not been met. Plaintiff fails to explain how Defendants acted fraudulently with respect to SugarLeaf. Further, even if

---

[35] *See In re Alstom SA*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2017) ("[A] plaintiff may not cast claims of misrepresentations as claims under Rule 10b-5(a) and(c) and thus evade the pleading requirements imposed in misrepresentation cases"); *In re Garrett Motion Inc. Secs. Litig.*, 2022 WL 976269, at * (S.D.N.Y. Mar. 31, 2022) (dismissing scheme claim). Plaintiffs' deficient allegations about "concealing" funding decisions relating to SugarLeaf do not plead scheme liability.

[36] *See* 2022 WL 2760323, at *6 (2d Cir. July 15, 2022).

[37] *See In re Alstom SA*, 406 F. Supp. 2d at 475 (holding that parties cannot "evade the pleading requirements imposed in misrepresentation cases" by realleging this conduct as a scheme claim).

Plaintiff were correct that Defendants were trying to limit the amount owed to SugarLeaf's founders, Plaintiff fails to explain how this was a scheme to defraud Neptune's shareholders, who would plainly benefit from not paying more to SugarLeaf's founders than necessary.

Plaintiff also argues in a footnote (*see* Opp. at 11 n. 4) that Defendants have waived challenges to the statements in Paragraphs 80, 89, and 90 of the Complaint by not specifically citing or quoting those statements in the Memorandum. This argument is meritless. Plaintiff cites no authority requiring securities litigation defendants to itemize or quote every alleged misstatement in a motion to dismiss—a position that has been expressly rejected.[38] Defendants expressly moved to dismiss on the ground that they did not make ***any*** materially misleading or fraudulent statements.[39] Their opening brief appropriately grouped Plaintiff's misstatement claims into categories and explained why the claims fail. The allegations in Paragraphs 80 fall into the "SugarLeaf" category, while the allegations in Paragraphs 89-90 fall into the "hand sanitizer" categories. The Memorandum provided extensive argument as to why both categories failed to state a claim. Defendants expressly challenged Plaintiff's assertion that Neptune misled investors about extraction capacity—the subject of the alleged misstatement in Paragraph 80, which

---

[38] *See Vrakas v. United States Steel Corp.*, 2018 WL 4680314, at *8 n. 8 (W.D. Pa. Sept. 29, 2018) (rejecting similar waiver argument; "Given the length and complexity of Plaintiffs' Amended Complaint as well as Defendants' clear effort to respond holistically to Plaintiffs' claims, including those concerning proactive maintenance. . . the Court finds that Defendants have not conceded the falsity of the affirmative statements regarding RCM"). Plaintiff's cases instead address the standards for waiver and the presentation of contentions in appellate briefs. *See Tolbert v. Queens College*, 242 F.3d 58, 75 (2d Cir. 2001); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) (applying Fed. R. App. P. 28(b)).

[39] *See, e.g.,* Mem. at 24 ("The allegations do not show that any of the challenged statements were materially misleading or false when made"); *id.* at 28 ("The Complaint contains no specific allegations showing that any of Defendants' statements about the SugarLeaf facility were materially misleading"); *id.* at 32 ("Plaintiff likewise fails to allege a false or misleading statement about the hand sanitizer business"); .34 ("Plaintiff has also failed to allege particularized facts supporting a strong inference that defendants acted with fraudulent intent or recklessness").

Defendants allege to be misleading for the same reasons as the other statements about SugarLeaf capacity that Defendants undisputedly did challenge.[40] Defendants rebutted each of those purported reasons in the Memorandum. Neither Plaintiff's conclusory "waiver" footnote, nor the rest of its Opposition, cites any facts showing that the statement in Paragraph 80 was false. Defendants likewise extensively addressed the hand sanitizer-related allegations pertinent to the statements in Paragraphs 89-90.[41] Defendants' position on the capacity and sanitizer allegations remains the same: that *none* of the alleged misstatements regarding these issues were materially misleading (let alone fraudulent) because Defendants expressly disclosed the challenges faced by the SugarLeaf facility and the use of contract manufacturers to make hand sanitizer, and because the Complaint lacks particularized allegations that Defendants knew at any particular time of quality control issues, collapsing demand, or any facts contradicting Defendants' statements.

## II.   THE OPPOSITION FAILS TO SHOW LOSS CAUSATION

The Opposition similarly fails to show loss causation. Again, "'[a]n alleged corrective disclosure that does not reveal the falsity of [d]efendants' challenged public statements cannot establish loss causation, a pleading failure that "is fatal under Second Circuit precedent."'"[42] Neither the February 16, 2021, and July 15, 2021 alleged corrective disclosures (Compl. ¶¶ 115-19, 123.) revealed the purported falsity of any prior disclosures. The February 16, 2021 disclosure revealed nothing false about Neptune's prior disclosures regarding the SugarLeaf facility, which Neptune had previously disclosed was profitable and essentially offline. (*See* Mem. at 14.) Plaintiff

---

[40] *See, e.g.,* Mem. at 13 and 15; *compare* Compl. ¶ 81 (alleging reasons why statements in Paragraph 80 were misleading) *with* Compl. ¶¶ 65, 67 (alleging that earlier statements about extraction capacity were misleading for same reasons).

[41] *See* Mem. at 16-20.

[42] *See In re Curaleaf*, 519 F. Supp. 3d at 109 (quoting *Janbay*, 2012 WL 1080306, at *14 (quoting *Lentell v. MerrillLunch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005))..

cannot rely on a materialization-of-risk theory when that risk was already disclosed.[43] The February 16, 2021 disclosure also revealed nothing false about the earlier sanitizer-related disclosures, as it attributed the drop in sanitizer revenue to oversaturation issues and said nothing about the purported quality control problems alleged in the Complaint. (*See* Mem. at 18.) The July 15, 2021 disclosure likewise did not reveal anything false about the "$100 million purchase orders" statement, as there are no allegations the orders never existed, and the risks that the orders may go unfilled due to supply chain issues was plainly disclosed. (*See* Mem. at 20.)

Plaintiff's cases do not salvage these deficient allegations.[44] Allowing Plaintiff to pursue claims over these stock price losses would improperly transform the securities laws into an insurance policy for losses that are plainly not recoverable.[45] Loss causation has not been pled.

---

[43] *See Monroe County Employees' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 357-58 (S.D.N.Y. 2014) (holding that materialization of a known, previously-disclosed risk does not plausibly show loss causation); *In re New Energy Sys. Secs. Litig.*, 66 F. Supp. 3d 401, 406 (S.D.N.Y. 2014) (finding no loss causation where "substantial indicia of the risk" had already been publicly disclosed before alleged corrective disclosure).

[44] In *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, the plaintiffs "alleged that the falsity of these misrepresentations was revealed to the public for the first time in the Settlement Agreements.," and the defendants "conceded at oral argument that this was the (first) occasion that Barclays disclosed its false 2007–2009 submission rates." 750 F.3d 227, 233 (2d Cir. 2014), Here, by contrast, the February 16, 2021 disclosures was not the first time Defendants disclosed problems with the SugarLeaf acquisition. Plaintiff's other authorities merely show that corrective disclosures need not be perfect "mirror images" of the alleged corrective disclosures. (*See* Opp. at 45-46.) In this case, however, the alleged corrective disclosures do not reveal ***anything*** false about the prior statements, nor do they reflect the materialization of previously undisclosed risks given that the risks at issue had already been plainly disclosed.

[45] *See In re Curaleaf*, 519 F. Supp. 3d at 109 (securities laws are not insurance against market losses).

### III.   THE OPPOSITION DOES NOT SHOW CONTROL PERSON LIABILITY

The Opposition lastly fails to show a primary liability claim or culpable participation, thus requiring dismissal of the control person claims.[46]

### CONCLUSION

Plaintiff again has not sufficiently alleged material misstatements or omissions, scheme liability, scienter, or loss causation, nor does the Complaint adequately allege a control person claim. Defendants respectfully request that the Court dismiss the Complaint with prejudice.

---

[46] *See In re Henry Schein, Inc. Sec. Litig.*, No. 18-01428, 2019 WL 8638851, at *29 (E.D.N.Y. Sept. 27, 2019) (finding that because plaintiffs failed to allege scienter of certain defendants under § 10(b), the plaintiffs necessarily failed to allege that those defendants were culpable participants under § 20(a)); *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 438 (S.D.N.Y. 2014) (recognizing that a majority of district courts in the Second Circuit require a particularized showing of "culpable participation" to establish control person liability) (collecting cases); *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 246-47 (S.D.N.Y. 2006)); *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 661 (S.D.N.Y. 2007); *In re Global Crossing, Ltd. Sec. Litig.*, 471 F. Supp. 2d 338, 351 (S.D.N.Y. 2006)); *In re Alstom SA*, 406 F. Supp. 2d 433, 493 (S.D.N.Y. 2005) (finding that plaintiffs had not pled culpable participation as to the controlling persons where they "have not alleged any facts supporting a strong inference of any extreme conduct that even approximates recklessness....").

Dated: August 5, 2022

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

/s/ Peter A. Stokes
Celia A. Cohen
1301 Avenue of the Americas
New York, New York 10019
Tel: (212) 318-3350
Fax: (212) 318 3400
celia.cohen@nortonrosefulbright.com

Peter A. Stokes (*pro hac vice*)
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone:  (512) 536-5287
Facsimile:   (512) 536-4598
peter.stokes@nortonrosefulbright.com

## CERTIFICATE OF SERVICE

I certify that I filed this document through the ECF system on August 5, 2022, which caused this document to be served on counsel for Plaintiffs.

/s/ Peter A. Stokes

- 23 -