UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MARVIN GONG, *Individually and On
Behalf of All Others Similarly Situated,*

                              Plaintiff,                        **ORDER**
                                                            21-CV-1386 (ENV) (ARL)
          -against-

NEPTUNE WELLNESS SOLUTIONS INC.,
MICHAEL CAMMARATA, TONI RINOW
and MARTIN LANDRY,

                              Defendants.
-------------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

Before the Court is the unopposed motion of lead plaintiff, Kenneth Rickert ("Rickert"), for (1) preliminary approval of the class action settlement and plan of allocation; (2) certification of the proposed class; and (3) approval of the notice to the class. For the reasons set forth below, the motion is granted.

## BACKGROUND

This federal securities action was commenced by Marvin Gong ("Gong") on March 16, 2021, on behalf of a putative class consisting of people who purchased or otherwise acquired Neptune Wellness Solutions securities between July 24, 2019 and February 16, 2021. ECF No. 1. On May 17, 2021, the Court received several motions for the appointment of lead plaintiff and lead counsel pursuant to 15 U.S.C. § 78u–4(a)(3) and Fed. R. Civ. P. 23. Those motions were referred to the undersigned. By order dated January 4, 2022, the undersigned appointed Rickert as lead plaintiff and Pomerantz LLP as lead counsel. The factual background and procedural history of the case is set forth in detail in that order and the Court assumes the parties familiarity with those facts.

Shortly after the Court entered the order appointing Rickert as lead plaintiff, the plaintiffs

filed an amended complaint.  ECF No. 41.  Six weeks later, the defendants filed a premotion conference letter with District Judge Vitaliano concerning their anticipated motion to dismiss the amended complaint.  ECF No. 45.  On April 12, 2022, the Court determined that the pre-motion conference was unnecessary and, as a result, on August 5, 2022, the defendants filed the fully briefed motion.  However, before the Court could address the motion to dismiss, the parties negotiated a settlement that they contend provides a strong and immediate recovery to class members that is highly favorable in light of the risks of continued litigation.

Pursuant to the terms of the settlement, the parties have agreed to settle this matter on a class-wide basis for $4,000,000 or a combination of $1,500,000 in cash payments and $2,750,000 worth of Neptune stock if, between January 25, 2023 and February 1, 2023, Neptune had decided, in its sole discretion, to issue Neptune securities in lieu of the $2,500,000 cash payment.  The plaintiffs contend that the settlement represents a large proportion of what could actually be collected on any award achieved at trial.

## DISCUSSION

### A.    Approval of the Settlement

The approval of a proposed class action settlement is a matter of discretion for the trial court.  *See In re MetLife Demutualization Litig.,* 689 F. Supp. 2d 297, 329 (E.D.N.Y. 2010).  However, "[i]n exercising this discretion, courts should give proper deference to the private consensual decision of the parties."  *Willix v. Healthfirst, Inc*., No. 07 CIV 1143 ENV RER, 2010 WL 5509089, at *2 (E.D.N.Y. Nov. 29, 2010).  Indeed, "'[i]n evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . ..'" *Id.* (citing *Clark v. Ecolab, Inc.,* No. 07 Civ. 8623(PAC), No. 04 Civ. 4488(PAC), No. 06 Civ. 5672(PAC), 2010 WL 1948198, at *4 (S.D.N.Y. Nov.17,

2009)).

Preliminary approval is the first step in the settlement process. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 27 (E.D.N.Y. 2019). It simply allows notice to issue to the class and for class members to object to or opt-out of the settlement. *Id.* After the notice period, "the Court will be able to evaluate the settlement with the benefit of the class members' input." *Torres v. Gristede's Operating Corp.*, No. 04–CV–3316 (PAC), 08–CV–8531 (PAC), 08–CV–9627 (PAC), 2010 WL 2572937, at \*2 (S.D.N.Y. Jun.1, 2010). As such, "preliminary approval requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Id*.

To grant preliminary approval, the Court need only find that there is probable cause to submit the settlement proposal to class members and hold a full-scale hearing as to its fairness. *See In re Traffic Exec. Ass'n-E. Railroads*, 627 F.2d 631, 634 (2d Cir. 1980). Courts conducting this analysis "must make a preliminary evaluation as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig., No*. 01 MDL 1409, M-21-95, 2006 WL 3247396, at \*5 (S.D.N.Y. Nov. 8, 2006) (citing *In re Nasdaq Market-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y.1997)). To this end, courts in this Circuit have historically used a nine-factor test articulated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 28-9. However, under the 2018 amendments to Rule 23(e), in weighing a grant of preliminary approval, courts must now determine whether

(A) The class representatives and class counsel have adequately represented the class;

(B) The proposal was negotiated at arm's length;

3

(C) The relief provided for the class is adequate, taking into account:

(i) The costs, risks, and delay of trial and appeal;

(ii) The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) The terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) Any agreement required to be identified under Rule 23(e)(3); and

(D) The proposal treats class members equitably relative to each other.

*Id.* (citing Fed. R. Civ. P. 23(e)(2)).  These factors "add to, rather than displace, the *Grinnell* factors." *Id.*   In any case, courts still do not engage in a complete analysis at the preliminary approval stage.  In fact, preliminary approval is still typically granted "where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Silver v. 31 Great Jones Rest.,* No. 11 CV 7442 KMW DCF, 2013 WL 208918, at *1 (S.D.N.Y. Jan. 4, 2013) (*quoting In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y.2005)).

Here, the Court finds that the class was adequately represented by Rickert and his counsel.  In Rickert's prior motion, it was made clear that his interests were fully aligned with the interests of absent class members.  Indeed, all of the movants for lead plaintiff asserted the same legal theory over the same class period and shared a common goal in maximizing recovery.  In addition, Pomerantz LLP are experienced counsel who have thoroughly investigated and researched potential claims and defenses, opposed the motion to dismiss and monitored the controlling case law throughout the briefing period.  Lastly, lead counsel engaged in settlement discussions with the defendants and, after what Rickert describes as arduous work, was able to

reach the instant settlement.

Further, the parties' proposed settlement was negotiated at arm's-length and in good faith. *See Becher v. Long Island Lighting Co.,* 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999)(A settlement is procedurally fair when it is "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests.").  Rickert explains that on October 11, 2022, while the parties were waiting for a ruling from the Court on the defendants' motion to dismiss, the parties participated in a full-day mediation before an experienced mediator, Jed Melnick.  Although a settlement was not finalized at that mediation, the parties continued to hold multiple follow-up rounds of discussions and negotiations over the ensuing week.  Ultimately, they reached an agreement to settle this action for cash payments totaling $4,000,000 or, at Neptune's election, a combination of $1,500,000 in cash payments and $2,750,000 worth of Neptune stock.  Although Rickert believes that the maximum likely aggregated damages on all claims could have been as high as $70,000,00, Rickert notes that the settlement amount represents a large proportion of what could actually be collected on any award achieved at trial given the precarious financial situation of the corporate defendant, nonexistent insurance policies, and the limited resources of the individual defendants.  In addition, notice to the class and the cost of settlement administration will be fully funded by the settlement fund.

Finally, after a competitive bidding process, Rickert has retained a nationally recognized class action settlement administrator, AB Data Ltd.[1]  Moreover, the proposed notice discussed below provides that lead counsel will submit an application for an award of attorneys' fees in an amount not to exceed one-third of the settlement amount and litigation expenses in an amount not to exceed $60,000, plus interest accrued on both amounts at the same rate as earned by the

---

[1] The Court approves Rickert's selection and appoints AB Data Ltd. to be the Claims Administrator.

settlement fund.  The proposed notice also states that Rickert may also seek a compensatory award under the PSLRA not to exceed $7,000.  Lastly, the settlement appears to treat class members equitably relative to one another.  Accordingly, the Court finds, at least preliminarily, the settlement to be reasonable and grants preliminary approval of the settlement memorialized in the parties' Stipulation and Agreement of Settlement dated December 6, 2022.

### B.      Certification of the Proposed Class

"In order to certify a class for settlement purposes, a court must find that the class satisfies all four requirements under Fed. R. Civ. P. 23(a)—numerosity, commonality, typicality, and adequacy of representation—[as well as] one of the requirements listed under Fed. R. Civ. P. 23(b)."  *See Micholle v. Ophthotech Corp.*, No. 17-CV-1758 (VSB), 2022 WL 1158684, at *2 (S.D.N.Y. Mar. 14, 2022) (citing *Tiro v. Pub. House Inv. LLC*, Nos. 11 Civ. 7679 (CM), 11 Civ. 8249 (CM), 2013 WL 2254551, at *3 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of a settlement only.")).  In this case, Rickert has asked the Court to certify the following class for purposes of the settlement only (the "Settlement Class"):

> all persons and entities that purchased or otherwise acquired Neptune securities on the NASDAQ or another U.S. trading venue between July 24, 2019, and July 15, 2021, inclusive, and who were damaged thereby.

Here, the Court finds that the proposed Settlement Class meets all of the requirements set forth in Rule 23(a).  To begin with, the Settlement Class meets the requirements set forth in Rule 23(a)(1), that being, that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a

large number of shares were outstanding and traded during the relevant period." *Pearlstein v. BlackBerry Ltd.,* No. 13 CV 7060, 2021 WL 253453, at *7 (S.D.N.Y. Jan. 26, 2021) (citing *In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 138 (S.D.N.Y. 2012)).  While Rickert does not know the exact number of class members, an average monthly volume of 36.64 million Neptune shares was traded during the class period.  Therefore, the Settlement Class can be presumed to be sufficiently numerous as to make joinder impractical.

Second, in this case, there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The proposed class members all face several common questions of law and fact central to this case: (1) whether the defendants violated the federal securities laws and (2) whether the defendants misrepresented or omitted material facts, including, among other things, facts concerning (i) Neptune's acquisition of SugarLeaf Labs, LLC; (ii) Neptune's capability to fulfill, performance of, and communications with Costco regarding an agreement to provide hand sanitizer to Costco; and (iii) information to investors regarding a purchase order to supply personal protective equipment in the wake of COVID-19.  Such questions are sufficient to meet the commonality requirement.  *See Micholle,* 2022 WL 1158684, at *3 (citing *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 328 F.R.D. 86, 91 (S.D.N.Y. 2018) (finding the questions of whether the company's statements were misleading sufficient to meet the commonality requirement in a Rule 10b-5 case)).

Next, Rickert has made a sufficient showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *See* Fed. R. Civ. P. 23(a)(3).  "This factor 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *See Micholle,* 2022 WL 1158684, at *3 (citing *Haw. Structural Ironworkers Pension*

7

*Tr. Fund, Inc. v. AMC Entm't Holdings, Inc.,* 338 F.R.D. 205, 212 (S.D.N.Y. 2021)). "Typicality . . . does not [however] require that the situations of the named representatives and the class members be identical," so long as all claims arise from the same course of conduct. *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 511 (S.D.N.Y. 1996). Here, this factor is satisfied because the claims of proposed class members arise from the same course of conduct and are based on the same legal theory.

The standard criteria of adequacy is also met in this case. Pursuant to subsection (a)(4), 'the representative parties" must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Specifically, the adequacy inquiry ask "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation*." In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Pomerantz LLP is a firm with substantial experience in securities litigation and regularly communicated with the attorneys of record. Indeed, there is no indication that the lead counsel is unable to conduct this litigation. Similarly, as stated above, the plaintiffs and Rickert have the same interest in vindicating the alleged injuries due to the defendants' alleged misrepresentations.

Finally, Rickert argues that the Settlement Class also meets the requirements of Rule 23(b)(3). Under Rule 23(b)(3), "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Here, resolution of the class members' allegations are clearly susceptible to generalized proof and generalized inquiries predominate over any issues specific to individual class members. *See Menaldi* 328 F.R.D. at 93

(citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud.").

In addition, superiority has been established. "A proposed class meets Rule 23(b)(3)'s superiority requirement if "class adjudication . . . will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually." *See Micholle,* 2022 WL 1158684, at *2. Because many investors in this matter have likely suffered losses too small to justify individual litigation, it is far more efficient to adjudicate this as a class action. For all of these reasons, the Court certifies the proposed class for settlement purposes only.

### C.      Approval of the Notice

Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), a notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class  judgment on class members under Rule 23(c)(3).

Fed. Rule Civ. Pro. 21(c)(2)(B). The proposed Notice, attached as Exhibit A-1 to the motion, satisfies each of these requirements and adequately puts class members on notice of the proposed settlement. *See In re Michael Milken & Assocs. Sec. Litig.,* 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"). Indeed, the proposed Notice is appropriate because it describes, among other things: (1) the nature, history, and status of the litigation; (2) the definition of the certified class and who is excluded; (3) the reasons for settling; (4) the amount of the Settlement Fund; (5) the class's

claims and issues raised in this action; (6) the parties' disagreement over damages and liability; (7) the maximum amount of attorneys' fees and expenses that lead counsel may seek; (8) the maximum amount that may be requested as a reimbursement award to class representatives and (9) the plan for allocating the Settlement proceeds to the class. *See* ECF No 57 Ex. A-1. Therefore, the Court finds that the proposed Notice constitutes the best notice practicable under the circumstances.

### D. Class Action Settlement Procedure – Allocation/Schedule of Events

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized – namely, it must be fair and adequate." *Christine Asia Co. v. Yun Ma*, No. 15 MD 02631 CM SDA, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) (citing *In re WorldCom, Inc. Sec. Litig.*, 388 F.Supp.2d 319, 344 (S.D.N.Y. 2005)). However, a plan of allocation need not be perfect. *See id.* "Rather, '[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *Id.* (citing *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)).

Here, the proposed allocation plan detailed in the Notice will govern how the settlement proceeds will be distributed among class members who timely file a valid proof of claim. Rickert contends that the proposed plan of allocation, which was prepared by lead counsel after consulting with experts, will result in a fair and equitable distribution of the proceeds among class members who submit valid claims and does not preference plaintiff. Specifically, each class member will receive no more, or less, than his or her pro rata share of the net settlement fund based on recognized losses assessed by the formula described in the Notice. This type of allocation scheme is consistent with the manner in which other court-approved funds have

distributed settlement proceeds.   In fact, courts have found that pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach.  *See, e.g., Maley v. Del Glob. Techs. Corp.,* 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002).  Accordingly, for preliminary settlement purposes, the Court finds the plan of allocation to be fair and reasonable.

Lastly, Rickert proposes the following schedule for settlement-related events:

| EVENT | PROPOSED DUE DATE |
|---|---|
| Deadline for notice to Class Members by either: (a) emailing a link to the Notice to Class Members for whom the Claims Administrator is able to obtain email addresses; or (b) mailing the Postcard Notice, if an email address cannot be obtained, by first class mail, postage prepaid (Preliminary Approval Order, ¶11) | 16 calendar days after entry of Preliminary Approval Order |
| Deadline for the publication of the Summary Notice in nationally distributed, business-focused newswires (Preliminary Approval Order, ¶15) | 26 calendar days after entry of Preliminary Approval Order |
| Deadline for filing of papers in support of the Settlement, the Plan of Allocation, and Fee and Expense Application (Preliminary Approval Order, ¶26) | 28 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests or objections (Preliminary Approval Order, ¶19) | 21 calendar days prior to Settlement Hearing |
| Postmark deadline for submitting a Proof of Claim (Preliminary Approval Order, ¶17) | 30 calendar days prior to Settlement Hearing |
| Deadline for filing responses to any objections or in further support of the Settlement, the Plan of Allocation, and the Fee and Expense Application (Preliminary Approval Order, ¶27) | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing (Preliminary Approval Order, ¶6) | To be determined by the Court, approximately 100-105 days after entry of the Preliminary Approval Order |

Notably, Rickert's chart includes a request that the Court schedule the Settlement Hearing for a

11

date not earlier than 100 calendar days after entry of this order.  Although the undersigned finds

the proposed schedule to be generally reasonable and approves the schedule, the parties must

seek a date for the Settlement Hearing from District Judge Vitaliano.

Dated:  Central Islip, New York             **SO ORDERED:**
   March 16, 2023


_____/s_____
ARLENE R. LINDSAY
United States Magistrate Judge