**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARVIN GONG, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>NEPTUNE WELLNESS SOLUTIONS INC., MICHAEL CAMMARATA, TONI RINOW and MARTIN LANDRY<br><br>　　　　　　　　　　　Defendants. | **Case No. 2:21-cv-01386-ENV-ARL**<br><br>**CLASS ACTION**<br><br>Hon. Eric N. Vitaliano<br>Hon. Arlene R. Lindsay |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ iii

I.    PRELIMINARY STATEMENT ............................................................................1

II.    PROCEDURAL HISTORY OF THE LITIGATION.............................................3

III.    THE COURT SHOULD CERTIFY THE CLASS ...................................................4

IV.    THE SETTLEMENT SHOULD BE FINALLY APPROVED ..................................6

    A.  Public Policy Favors Settlement ................................................................6

    B.  The Settlement Was Achieved By Arm's-Length Negotiation And Is Presumed Fair .......6

    C.  The Grinnell Factors Confirm that the Settlement is Substantively Fair ............................8

        1.  The Complexity, Expense, Likely Duration of Litigation, the Risks of Establishing Liability and Damages and Maintaining the Class Action Through Trial, all Support Final Approval ............................................9

        2.  The Class's Reaction Was Overwhelmingly Positive ................................10

        3.  The Stage of Proceedings and Maturity of Underlying Substantive Issues Supports Final Approval ........................................................11

        4.  The Risks of Establishing Liability and Damages Support Final Approval ................12

        5.  The Risks of Maintaining Class Certification Support Final Approval........................14

        6.  Defendants' Ability to Withstand a Greater Judgment................................14

        7.  Range of Reasonableness of Settlement Fund.............................................15

        8.  The Settlement Meets All the Requirements of Rule 23(e).........................16

V.    THE PLAN OF ALLOCATION SHOULD BE APPROVED.................................17

VI.    NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS................18

i

VII.     STOCK ISSUED TO THE SETTLEMENT FUND MEETS SECTION 3(a)(10) .................19

VIII.    CONCLUSION.................................................................................................................21

        CERTIFICATE OF SERVICE ..................................................................................................22

Case 2:21-cv-01386-ENV-ARL   Document 62-1   Filed 05/23/23   Page 4 of 30 PageID #: 1502

**<u>TABLE OF AUTHORITIES (Final Approval of Settlement)</u>**

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................................5

*Athale v. Sinotech Energy Ltd.*,
  2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013).........................................................13

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000).......................................................................................5

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
  2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010)...........................................................14

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981)...................................................................................................6

*Castagna v. Madison Square Garden, L.P.*,
  2011 WL 2208614 (S.D.N.Y. June 7, 2011) ...........................................................13

*Chapel Invs., Inc. v. Cherubim Ints., Inc.*,
  177 F. Supp. 3d 981 (N.D. Tex. 2016) ....................................................................20

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).....................................................14, 17

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...........................................................10

*Claridge v. N. Am. Power & Gas, LLC*,
  2017 WL 3638455 (S.D.N.Y. Aug. 23, 2017)...........................................................5

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001).......................................................................................7

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)............................................................2, 6, 8, 12, 15

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005).................................................................................................13

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974).................................................................................................18

*Fleisher v. Phoenix Life Ins. Co.*,
   2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)................................................................7, 17

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ....................................................................................10

*Guevoura Fund Ltd. v. Sillerman*,
   2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ...........................................................9

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012)....................................................................................4, 5

*In re AOL Time Warner, Inc.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)...........................................................10, 11

*In re Beacon Assocs. Litig.*,
   282 F.R.D. 315 (S.D.N.Y. 2012) ................................................................................5

*In re Beacon Assocs. Litig.*,
   2013 WL 2450960 (S.D.N.Y. May 9, 2013) ...............................................................11

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)............................................................10, 14, 15

*In re China Sunergy Sec. Litig.*,
   2011 WL 1899715 (S.D.N.Y. May 13, 2011) .............................................................16

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)........................................................................8

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) .............................................................4

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   312 F.R.D. 332 (S.D.N.Y. 2015) ...............................................................................5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)........................................................................................5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................................................................14

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ...............................................................................15

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................11, 12, 13

iv

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................................13, 17

*In re Initial Pub. Offering Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) .........................................................................................6

*In re Initial Pub. Offering Sec. Litig.*,
    2011 WL 3792825 (S.D.N.Y. Aug. 25, 2011) ...................................................................11

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009)................................................................................11

*In re Initial Pub. Offering Sec. Litig.*,
    260 F.R.D. 81 (S.D.N.Y. 2009) .........................................................................................14

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) .........................................................................................8

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) .......................................................................................11

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
    2007 WL 313474 (S.D.N.Y. Feb. 1, 2007).......................................................................16

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...............................................................................11

*In re PaineWebber Ltd. Partnerships Litig.*,
    171 F.R.D. 104 (S.D.N.Y.) ............................................................................................6, 7

*In re PPDAI Grp. Inc. Sec. Litig.*,
    2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ......................................................................17

*In re Ramp Corp. Sec. Litig.*,
    2008 WL 58938 (S.D.N.Y. Jan. 3, 2008) .............................................................................6

*In re Vivendi Universal, S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011).................................................................................10

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) .......................................................................................9

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005).................................................................................11

*Lyons v. Marrud, Inc.*,
    1972 WL 327 (S.D.N.Y. June 6, 1972) .................................................................................7

*Mikhlin v. Oasmia Pharm. AB*,
  2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ...............................................................................9

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
  2019 WL 13150344 (S.D.N.Y. Mar. 8, 2019) ..........................................................................12

*Oceana Capitol Grp. Ltd. v. Red Giant Ent., Inc.*,
  150 F. Supp. 3d 1219 (D. Nev. 2015) .......................................................................................20

*Parker v. Time Warner Entm't Co.*,
  631 F. Supp. 2d 242 (E.D.N.Y. 2009) ......................................................................................11

*Rodriguez v. CPI Aerostructures, Inc.*,
  2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023).................................................................... *passim*

*Rodriquez v. It's Just Lunch Int'l*,
  2020 WL 1030983 (S.D.N.Y. Mar. 2, 2020) .............................................................................11

*Vaccaro v. New Source Energy Partners L.P.*,
  2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ......................................................................13, 14

*Volatility Warrant Master Fund Ltd. v. Kiromic Biopharma, Inc.*,
  2022 WL 16626898 (S.D.N.Y. Nov. 2, 2022) ..........................................................................20

*Thompson v. Metro. Life Ins. Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) ...........................................................................................7, 8, 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)..........................................................................................6, 10, 12, 15

*YA II PN, Ltd. v. Taronis Techs., Inc.*,
  435 F. Supp. 3d 622 (S.D.N.Y. 2020).......................................................................................20

*Yi Xiang v. Inovalon Holdings, Inc.*,
  327 F.R.D. 510 (S.D.N.Y. 2018) ............................................................................................4, 5

**Rules & Regulations**

Fed. R. Civ. P. 23...........................................................................................................................4

Fed. R. Civ. P. 23(a) .....................................................................................................................4

Fed. R. Civ. P. 23(b) .....................................................................................................................5

Fed. R. Civ. P. 23(b)(3).................................................................................................................5

Fed. R. Civ. P. 23(c)(1)(C) .........................................................................................................14

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................18, 19

Fed. R. Civ. P. 23(e) ..............................................................................................1, 16, 17

Fed. R. Civ. P. 23(e)(1)..................................................................................................18

Fed. R. Civ. P. 23(e)(2)....................................................................................................2

Fed. R. Civ. P. 23 (e)(3)(C)(iv) .....................................................................................17

**Statutes**

15 U.S.C. § 77c(a)(10).....................................................................................................20

15 U.S.C. § 77z-1(a)(7)....................................................................................................19

15 U.S.C. § 78u-4(a)(7) ...................................................................................................19

Private Securities Litigation Reform Act of 1995 ..........................................................18

Securities Act of 1933.....................................................................................................20

**Additional References**

*Manual for Complex Litigation (Third)* § 30.42 (1995) .....................................................7

William Rubenstein, Alba Conte, & Herbert B. Newberg, 4 Newberg on Class Actions (5th ed. 2014) ...........................................................................................................................6

Pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), Lead Plaintiff Kenneth Rickert ("Plaintiff"), on behalf of himself and the Class, respectfully submits this memorandum of law in support of the motion for final approval of the $4,250,000 Settlement (the "Settlement Amount") reached in this action (the "Action") and of the proposed Plan of Allocation, certification of the Class for settlement purposes, and a finding that the notice plan approved at preliminary approval met all applicable requirements.  The terms of the Settlement are set forth in the Stipulation of Settlement, dated December 6, 2022 (ECF 57-2) (the "Stipulation").[1]  The Court preliminarily approved the Settlement on March 16, 2023 (ECF 59) (the "Preliminary Approval Order").

## I.    PRELIMINARY STATEMENT

After more than two years of litigation, Plaintiff respectfully requests that this Court finally: (1) approve a $4.25 million cash-and-stock-based settlement that will dispose of all claims in this Action; (2) approve the Plan of Allocation for the disbursement of the proceeds among Class Members; (3) certify the Class for settlement purposes; and (4) find that the notice plan it approved at preliminary approval met all applicable requirements.[2]

The $4.25 million cash-and-stock-based Settlement is fair, reasonable, adequate, and an excellent result for the Class.  The $4.25 million recovery, obtained on behalf of all persons or entities that purchased or otherwise acquired Neptune securities on the NASDAQ or another U.S. trading venue between July 24, 2019, and July 15, 2021, inclusive, and who were damaged thereby (the "Class"), is the result of arm's-length settlement negotiations by experienced and knowledgeable counsel, overseen by a nationally recognized mediator.  The Settlement represents

---

[1] All capitalized terms not otherwise defined herein are defined in the Stipulation.

[2] A memorandum in support of Plaintiff's Unopposed Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Award for Plaintiff is filed concurrently herewith.

a very favorable result for the Class and easily satisfies each of the Rule 23(e)(2) factors, as well as the factors set forth in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

The Settlement is especially beneficial to the Class in light of the substantial litigation and collection risks Plaintiff faced. As detailed in the accompanying Declaration of Christopher P.T. Tourek ("Tourek Decl."), Plaintiff and Lead Counsel had a thorough understanding of the strengths and weaknesses of the case before reaching the Settlement, as they had conducted a thorough investigation into the claims, consulted with a damages expert, drafted a detailed mediation statement, and participated in a formal mediation session and numerous follow-up discussions with the mediator. *See generally* Tourek Decl. Based on the results of this work, Plaintiff knew that Defendants could have succeeded on their pending motion to dismiss, in opposing class certification or in obtaining summary judgment, resulting in a lower recovery or no recovery at all. Likewise, there was no assurance that a trial would provide a better outcome. Moreover, a skilled and highly reputable mediator, Jed Melnick, assisted the parties in reaching a resolution of the case for $4.25 million. Tourek Decl., ¶¶29, 38. Given the risks to proceeding and the very favorable recovery obtained relative to maximum estimated damages, Plaintiff respectfully submits that the $4.25 million Settlement and the Plan of Allocation are fair and reasonable in all respects.

The Settlement recovers approximately 6.07% of the maximum amount that would likely be awarded if Plaintiff prevailed, and the majority of the amount that Lead Counsel believes could actually be collected if this litigation proceeded to trial. As described herein, the Settlement provides an excellent result for the Class. The Court's Preliminary Approval Order established a detailed plan to provide notice to the Class, which Plaintiff and the Claims Administrator followed. While the time to object to the Settlement has not passed, no Class Members have requested exclusion from the Class and only one objection has been received by the Court. The Settlement

2

is fair, reasonable, and adequate.  The Plan of Allocation also treats all Class Members equally.

Thus, Plaintiff respectfully requests that the Court finally: (a) approve the Settlement; (b) approve the Plan of Allocation; (c) certify the Class for settlement purposes; and (d) approve the Notice Plan.

## II.    PROCEDURAL HISTORY OF THE LITIGATION

This Action was filed on March 16, 2021 (ECF 1).  Multiple parties moved to be appointed lead counsel and lead plaintiff (ECF 9-16, 18-23), including Plaintiff.  On January 4, 2022, the Court appointed Kenneth Rickert to be Lead Plaintiff, and appointed its counsel, Pomerantz LLP as Lead Counsel (ECF 38).

On February 16, 2022, after a thorough investigation that included multiple interviews with former Neptune and SugarLeaf employees and the engagement of a damages expert, Plaintiff filed an amended complaint (ECF 41) (the "Amended Complaint") against Neptune, Cammarata, Rinow, and Landry.  As a result of Plaintiff's extensive investigation, the Amended Complaint contained much stronger and more detailed allegations than the initial complaint, and supported an extended class period.  *Id.*  On March 16, 2022, after negotiations between Lead Counsel and Landry, Plaintiff filed a waiver of service for Landry (ECF 44).

On April 1, 2022, Defendants filed a letter requesting a pre-motion conference seeking leave to move to dismiss, pursuant to Section III(A) of the Court's Individual Motion Practice and Rules (ECF 45).  On April 8, 2022, Plaintiff filed his response in opposition (ECF 47). On April 12, 2022, the Court denied as moot Defendants' motion for a pre-motion conference and allowed the filing of their motion to dismiss.  The Parties then briefed Defendants' Motion to Dismiss (ECF 50), Plaintiff's Response in Opposition (ECF 51), Plaintiff's Notice of Supplemental Authority (ECF 52), and Defendants' Reply in Support of their Motion to Dismiss (ECF 53), all of which

3

were filed on August 5, 2022, pursuant to the Court's "bundling rule."

On October 11, 2022, while waiting on a ruling from the Court on Defendants' Motion to Dismiss, Plaintiff and Defendants participated in a full-day mediation before an experienced mediator, Jed Melnick.  While a settlement was not finalized at that mediation, the Parties built upon the discussions held on October 11, 2022, and ultimately agreed to settle this Action for cash payments totaling $4,000,000 or, at Neptune's election, a combination of $1,500,000 in cash payments and $2,750,000 worth of Neptune stock.  On February 3, 2023, Defendants elected to fund the settlement through a combination of cash and Neptune stock for a total of $4,250,000.

## III.   THE COURT SHOULD CERTIFY THE CLASS

The Court is hearing the proposed Settlement prior to any hearing or ruling on class certification, making it necessary for the Court to certify a class pursuant to Rule 23 prior to approving the proposed Settlement.  *See*, *e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012); *Rodriguez v. CPI Aerostructures, Inc.*, 2023 WL 2184496, at *4 (E.D.N.Y. Feb. 16, 2023).  Here, all requirements for class certification are met.

Each of the four Rule 23(a) prerequisites to class certification – numerosity, commonality, typicality, and adequacy – is satisfied.  First, numerosity is generally met in cases involving nationally traded securities like Neptune common stock, *see*, *e.g.*, *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *12 (S.D.N.Y. July 27, 2007), and is confirmed here by the fact that over 2,000 Class Members have filed claims. *See* Declaration of Eric Nordskog Regarding: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Nordskog Decl."), ¶15, submitted herewith. Second, commonality exists because all Class Members were subjected to the same alleged misrepresentations and omissions.  *See*, *e.g.*, *Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510,

4

522 (S.D.N.Y. 2018); *Rodriguez*, 2023 WL 2184496, at *4. Third, Plaintiff's claims are typical, because he suffered losses following the disclosures, as the other Class Members did. *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Fourth, Plaintiff is an adequate representative because he has no conflicts with the Class, and has been actively involved in the case from its inception, maintaining communication with Lead Counsel, who are qualified, experienced, and able to conduct the litigation. *See id.* at 35; *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Also, "[a]scertaining the members of the class will be easily administrable by references to investor records." *Rodriguez*, 2023 WL 2184496, at *4.

A proposed class action must also satisfy one of the tests of Rule 23(b). *See, e.g., Am. Int'l Grp.*, 689 F.3d at 238. Here, common questions of law or fact predominate over any individual question and a class action is superior to other available means of adjudication. *See* Rule 23(b)(3); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 607 (1997). Both Plaintiff and Class Members allege injuries from common, public misrepresentations and omissions, and the resolution of liability from this common course of conduct predominates over any theoretical individual issue that may arise. *See, e.g., In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341, 346-51 (S.D.N.Y. 2015). Additionally, class treatment is the best method of resolving all the individual claims aggregated in this matter because the controversy for each Class Member is identical and will result in the adjudication of all claims in one forum. *See, e.g., In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 334 (S.D.N.Y. 2012).

In addition, Rule 23(b)(3) provides a right to opt-out or object to a proposed settlement. *See, e.g., Claridge v. N. Am. Power & Gas, LLC*, 2017 WL 3638455, at *2 (S.D.N.Y. Aug. 23, 2017). Here, the Notice provided Class Members with, among other things, a right to object or exclude themselves from the Class. *See* Nordskog Decl., Exh. B (Notice at 2, 9-10). Accordingly,

5

the standards for certifying the Class have been met.

## IV.   THE SETTLEMENT SHOULD BE FINALLY APPROVED

### A.   Public Policy Favors Settlement

Courts in the Second Circuit have noted that in securities class action litigation, "[s]ettlements are to be encouraged[.]" *In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *4 (S.D.N.Y. Jan. 3, 2008); *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 190 (S.D.N.Y. 2005) ("it is axiomatic that the law encourages settlement of disputes"). A court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). "There is a strong judicial policy in favor of settlements, particularly in the class context and compromise is encouraged by the courts and favored by public policy." *Id*. at 116. Moreover, as noted by both the Supreme Court and the Second Circuit, in determining the fairness of a settlement, courts should "not decide the final merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *Grinnell*, 495 F.2d at 462 (similar). This is particularly important in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See* William Rubenstein, Alba Conte, & Herbert B. Newberg, 4 Newberg on Class Actions § 13.44 (5th ed. 2014). The Settlement here is fair, adequate, and should be approved.

### B.   The Settlement Was Achieved By Arm's-Length Negotiation And Is Presumed Fair

"So long as the integrity of the arm's-length negotiation process is preserved … a strong initial presumption of fairness attaches to the proposed settlement, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.);

6

*Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (same); *Manual for Complex Litigation (Third)* § 30.42 (1995) (same). Courts should give "proper deference to the private consensual decision of the parties" and bear in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *4 (S.D.N.Y. Sept. 9, 2015).

The Settlement was reached through arm's-length negotiation, involving a mediation and subsequent negotiations over the ensuing week with a highly regarded mediator, Jed Melnick, whose involvement demonstrates that the Settlement is fair and free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in … settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

In negotiating the Settlement, Plaintiff had the benefit of attorneys who are highly experienced in complex litigation and familiar with the legal and factual issues of the case. *See* Tourek Decl., ¶69, Exh. 3; *see also Lyons v. Marrud, Inc.*, 1972 WL 327, at *2 (S.D.N.Y. June 6, 1972). The efforts of Lead Counsel secured a Settlement that provides substantial benefits to the Class, especially considering the expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings.

The Parties and their counsel thoroughly understood the strengths and weaknesses of the Action prior to the Settlement. Plaintiff and Lead Counsel: (a) conducted a lengthy investigation by reviewing and analyzing publicly available information regarding Defendants, including SEC filings, online and newspaper articles, analyst reports, press releases, stock price movements, earnings conference call transcripts, and analysts presentations; (b) found and spoke with numerous confidential witnesses about Defendants' business; (c) drafted a detailed Amended Complaint; (d) consulted with a damages expert to evaluate recoverable losses; (e) consulted with

7

an investigator; (f) researched and drafted an opposition to Defendants' motion to dismiss; (g) reviewed correspondence between Neptune and its insurance carrier regarding the insurer's denial of coverage; (h) participated in a full-day mediation before an experienced mediator; (i) attended multiple follow-up rounds of discussions and negotiations over the ensuring week; and (j) monitored Neptune's SEC filings to evaluate its future financial prospects. Thus, they had ample information to evaluate the risks and merits of the Settlement relative to continued litigation.

That the Settlement is fair is also reflected by the fact that the proposed Plan of Allocation treats all Class Members equally, allocating funds on a *pro rata* basis. *Infra* at Section V; Tourek Decl., ¶¶48-57. Similar plans have repeatedly been approved by courts in this Circuit and District. *See*, *e.g.*, *Rodriguez*, 2023 WL 2184496, at \*12; *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386–87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145–46 (S.D.N.Y. 2010).

For these reasons, the Settlement enjoys a presumption of fairness. *See Thompson*, 216 F.R.D. at 61.

**C.     The *Grinnell* Factors Confirm that the Settlement is Substantively Fair**

To evaluate the substantive fairness of a settlement, courts in the Second Circuit consider the nine *Grinnell* factors: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risk of litigation. *Grinnell*, 495 F.2d at 463. "All nine factors need not be satisfied; the court must look at the totality of these factors in light of the specific circumstances involved." *In re Hi-Crush*

8

*Partners L.P. Sec. Litig.*, 2014 WL 7323417, at \*5 (S.D.N.Y. Dec. 19, 2014); *Thompson*, 216

F.R.D. at 61. Here, the *Grinnell* factors support final approval.

> **1.    The Complexity, Expense, Likely Duration of Litigation, the Risks of Establishing Liability and Damages and Maintaining the Class Action Through Trial, all Support Final Approval**

The "risk, expense, complexity, and likely duration of further litigation" would be

substantial. The Settlement provides the Class with substantial relief, without the delay and risk

of trial and post-trial proceedings. Here, Plaintiff would have to survive both the pending motion

to dismiss and an anticipated motion for summary judgment. This would be particularly difficult

in a complex securities case like this, which numerous courts have noted to be "notoriously

complex and difficult to prove." *Rodriguez*, 2023 WL 2184496, at \*14; *see also Mikhlin v. Oasmia*

*Pharm. AB*, 2021 WL 1259559, at \*5 (E.D.N.Y. Jan. 6, 2021).

Even were Plaintiff able to get to the trial stage, trial, appeal and post-trial coverage and

collection efforts would be risky, expensive, and even if successful, would substantially delay

recovery. Plaintiff would carry a heavy burden to convince a jury that Defendants made

misrepresentations or omissions, that they were material, that Defendants acted with scienter, that

there was artificial inflation of Neptune securities, and that declines in Neptune securities prices

were attributable to disclosures of information revealing the fraud.

Were Plaintiff to prevail at trial, Defendants would likely appeal, further delaying any

benefit to the Class. The delay and risk occasioned by trial, post-trial, and appellate processes

offsets the potential of a higher award. *See, e.g.*, *Guevoura Fund Ltd. v. Sillerman*, 2019 WL

6889901, at \*10 (S.D.N.Y. Dec. 18, 2019). Even very large judgments recovered after lengthy

litigation and trial can be completely lost on appeal or as a result of a post-trial motion practice.

*See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 748 (S.D.N.Y. 1985) (collecting cases).

9

This is especially true of securities class actions, where intervening shifts in legal standards have undermined trial victories. *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011) (a Supreme Court decision after entry of a verdict in Plaintiff's favor reduced the billion-dollar award to approximately $78 million); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414, 433 (7th Cir. 2015) (reversing and remanding securities class action jury verdict of $2.46 billion after 13 years of litigation in light of intervening Supreme Court case).

Additionally, in this case, the risk of securing and collecting a greater recovery than the Settlement was amplified by Neptune's financial instability, including the fact that the Company's April 24, 2023 10-Q acknowledged that its weighty financial troubles "cast substantial doubt about the Company's ability to continue as a going concern." *Infra* at 14.  As a result, the only other viable source of recovery would be the limited resources of Individual Defendants.  Thus, not only would *any* recovery be delayed by years, but the potential for a greater recovery via continued litigation would be minimal.  Therefore, these factors support final approval of the Settlement.

### 2.    The Class's Reaction Was Overwhelmingly Positive

The reaction of the Class to the Settlement is a significant factor for the court to weigh when considering its adequacy. *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014); *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012).  "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart*, 396 F.3d at 118; *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) (same).

The Class overwhelmingly favors the Settlement.  Pursuant to the Court's Preliminary Approval Order, A.B. Data, Ltd. ("A.B. Data"), the Claims Administrator, caused the Notice to be e-mailed and mailed to 34,471 potential Class Members and nominees thus far. Nordskog Decl.,

10

¶8.  Additionally, the Summary Notice was published in *PR Newswire* on April 11, 2023.  *Id*. at

¶9.  To date, one objection has been received, against 2,003 Proofs of Claim forms thus far

submitted by potential Class Members.  *Id*. at ¶¶12-15.[3]  The Class's favorable reaction, compared

to a single anonymous objection, supports approving the Settlement.  *See Rodriquez v. It's Just*

*Lunch Int'l*, 2020 WL 1030983, at \*4–5 (S.D.N.Y. Mar. 2, 2020); *In re MetLife Demutualization*

*Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (collecting cases); *In re Glob. Crossing Sec. &*

*ERISA Litig.*, 225 F.R.D. 436, 457 (S.D.N.Y. 2004).

### 3.    The Stage of Proceedings and Maturity of Underlying Substantive Issues Supports Final Approval

Settlement at this stage, after Plaintiff had an opportunity to appreciate the strength and

weaknesses of his claim, supports final approval.  "This factor relates to whether the plaintiffs had

sufficient information on the merits of the case to enter into a settlement."  *Parker v. Time Warner*

*Entm't Co.*, 631 F. Supp. 2d 242, 259 (E.D.N.Y. 2009).  It does not require Plaintiff to conduct

formal discovery, but instead can be satisfied when "the parties have already conducted extensive

review of documents, evaluated the merits of the case, and participated in … mediation sessions

with an experienced mediator."  *Rodriguez*, 2023 WL 2184496, at \*15 (finding that this factor

---

[3] The single anonymous objection received shows no infirmity, and violates the procedures ordered by the Court by refusing to provide the objector's name, contact information, or transactions.  *See* ECF at 57-2 at 57-59; ECF 61; *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 246 F.R.D. 156, 169 (S.D.N.Y. 2007) (non-compliant objection should not be considered).  The objector's opacity makes it impossible to discern whether the objector was actually a Class Member or had standing to object.  For this reason alone, it is properly disregarded.  *See In re Beacon Assocs. Litig.*, 2013 WL 2450960, at \*19–20 (S.D.N.Y. May 9, 2013); *In re Initial Pub. Offering Sec. Litig.*, 2011 WL 3792825, at \*1–2 (S.D.N.Y. Aug. 25, 2011); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 340 (S.D.N.Y. 2005).  It is also substantively without merit, as it simply makes conclusory arguments that the Settlement should have been larger even though it is consistent with recoveries deemed favorable by courts in this Circuit. Even if the objector had standing, this complaint is properly rejected.  *See* ECF 61; *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483–84, 487 (S.D.N.Y. 2009); *AOL*, 2006 WL 903236, at \*15.  Thus, the anonymous objection provides no reason to question approval of the Settlement.

favored final approval through plaintiff's initial investigation of the merits of the action).

By the time the Parties agreed to settle, Plaintiff had completed conducted a significant investigation that allowed him to evaluate the strengths and weaknesses of his claims. Specifically, Plaintiff (a) conducted a lengthy investigation by reviewing and analyzing publicly available information regarding Defendants, including SEC filings, online and newspaper articles, analyst reports, press releases, stock price movements, earnings conference call transcripts, and analysts presentations; (b) oversaw a private investigation including more than a dozen interviews of former Neptune employees; (c) drafted a detailed Amended Complaint; (d) consulted with a damages expert to evaluate recoverable losses; (e) consulted with an investigator; (f) researched and drafted an opposition to Defendants' motion to dismiss; (g) reviewed correspondence between Neptune and its insurance carrier regarding the insurer's denial of coverage; (h) participated in a full-day mediation before an experienced mediator; (i) engaged in multiple follow-up rounds of discussions and negotiations over the ensuing week; and (j) monitored Neptune's SEC filings to evaluate its future financial prospects.

As a result of these activities, counsel "had a strong grasp of the strengths and weaknesses of the case when negotiating and evaluating the proposed Settlement." *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 2019 WL 13150344, at *2 (S.D.N.Y. Mar. 8, 2019); *see also Rodriguez*, 2023 WL 2184496, at *15.

### 4.    The Risks of Establishing Liability and Damages Support Final Approval

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. In analyzing these risks "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Glob. Crossing*,

225 F.R.D. at 459. In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at \*6 (S.D.N.Y. June 7, 2011). Therefore, courts should "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Glob. Crossing*, 225 F.R.D. at 459.

There are substantial risks to prosecuting this Action through trial. While Plaintiff is confident that he would prevail at trial, he acknowledges that continued litigation would expose the Class to a risk of no recovery, or a much lower recovery. In *Rodriguez*, where the parties also settled the action while a motion to dismiss was still pending, the court found that this factor weighed in favor of final approval because of "the risk of dismissal or a grant of summary judgment on the claims, the possibility that the Class would not be certified, the expense involved in briefing a summary judgment motion and appeals, the expense and time involved in formal discovery, the fact that there was likely to be a dispute among experts on materiality, falsity and damages; the possibility of losing at trial, and the probability of appeals." 2023 WL 2184496, at \*11. Should this case get to trial, Plaintiff would have to establish scienter to a jury's satisfaction, which is notoriously difficult and risky. *See Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at \*5 (S.D.N.Y. Sept. 4, 2013); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012).

Plaintiff would also have to show that the alleged securities violations caused his losses. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005). Establishing loss-causation is a "complicated and uncertain process, typically involving conflicting expert opinion[s]." *Glob. Crossing*, 225 F.R.D. at 459. Plaintiff is confident he would successfully establish loss causation, but Defendants would argue the opposite at trial. *See Vaccaro v. New Source Energy Partners*

13

*L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) (noting that "Plaintiffs may have been unable to prove that Defendants' misleading statements were the cause of Plaintiffs' losses"); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 118 (S.D.N.Y. 2009) (same).

Moreover, both loss causation and damages disputes would involve at trial a "battle of the experts" and a "jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of [Plaintiff's] losses." *Bear Stearns*, 909 F. Supp. 2d at 268; *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *18 (S.D.N.Y. Nov. 8, 2010). "Thus, the benefit of a settlement that results in a substantial, immediate benefit to the Class, as opposed to the risk of continuing a years-long legal battle, weighs heavily in favor of accepting the Proposed Settlement." *Rodriguez*, 2023 WL 2184496, at *11.

### 5.    The Risks of Maintaining Class Certification Support Final Approval

The risks of maintaining the Action as a class action through trial also supports approval of the Settlement. While a class certification motion had yet to be filed, Defendants undoubtedly would challenge certification. Even if the Court certified a class over Defendants' opposition, Defendants may have moved to decertify the class before trial or on appeal, as class certification "may be altered or amended before the final judgment" under Rule 23(c)(1)(C). *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *13 (S.D.N.Y. Oct. 16, 2019); *see also Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010). Thus, the risks of maintaining the class action status supports approval of the Settlement.

### 6.    Defendants' Ability to Withstand a Greater Judgment

Neptune's most recent 10-Q, filed on April 24, 2023, acknowledged that its financial troubles "cast substantial doubt about the Company's ability to continue as a going concern," as well as noted that the nine-month period ending on December 31, 2022 saw Neptune incur a net

loss of $44.3 million and negative cash flows from operations of $20.7 million. This, combined with the fact that Neptune's insurer denied coverage, makes it unlikely that Neptune or other Defendants could withstand a greater judgment. While a defendant is not required to "empty its coffers before a settlement can be found adequate," *see In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011), Plaintiff does not believe that Defendants could withstand a much larger judgment if this case proceeded to trial and appeal. The Settlement represents a good compromise between the Parties that delivers immediately a fund for the benefit of Class Members that is near what Plaintiff perceives as Defendants' maximum ability to pay.

### 7.      Range of Reasonableness of Settlement Fund

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Id*. at 462. A court's "determination of whether a settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equitation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119. In fact, the Second Circuit has stated that "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.

The Settlement provides for a recovery of $4,250,000. After consulting with an econometric expert, Plaintiff and Lead Counsel believe that a successful verdict on all claims could

result in aggregated damages to the Class as high as $70 million.  The Settlement thus represents approximately 6.07% of the maximum recovery; however, Lead Counsel believe it represents ***the majority of the amount that could likely be collected*** after considering the limited market capitalization and resources of the Company, the lack of insurance coverage, and the limited prospects of a large recovery from the Individual Defendants.

The 6.07% recovery here falls well within the range of reasonableness and is at the higher end of historical averages.  *See*, *e.g.*, *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("the average settlement amounts in securities fraud class actions … have ranged from 3% to 7% of the class members' estimated losses"); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (a recovery of approximately 6.25% was "at the higher end of the range of reasonableness of recovery in class action[] securities litigations").

### 8.    The Settlement Meets All the Requirements of Rule 23(e)

Rule 23(e), as recently amended, lists four factors for a court to consider in determining fairness:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's-length; (C) the relief provided for the class was adequate, taking into account: (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23 (e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

Sections A, B, and C (i-ii) are addressed herein.  *Supra*.  The proposed fee award (Section C (iii)) is discussed in the accompanying Plaintiff's Unopposed Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Award for Plaintiff, which

16

demonstrates that Lead Counsel's request for 33 1/3% of the Settlement Fund is fair and reasonable. With respect to identifying agreements pursuant to Rule 23(e)(3)(C)(iv), the Stipulation previously filed with the Court, ECF 57-2, identifies that the parties have entered into a Supplemental Agreement, as is the standard practice in securities fraud class action settlements. *See* Stipulation at Section X(J). The Supplemental Agreement provides Defendants with the option to terminate the Settlement if Class Members who meet certain criteria exclude themselves from the Class. *Id*. To protect the Class, the Supplemental Agreement is confidential. *See In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *13 (E.D.N.Y. Jan. 21, 2022) (finding that the supplemental agreement does not pose an impediment to final approval); *Christine Asia*, 2019 WL 5257534, at *15 (same). Finally, the Plan of Allocation treats all Class Members equitably. *Infra* at Section V.

In sum, the Settlement is fair, reasonable, and adequate under Rule 23(e) and the *Grinnell* factors, supporting Plaintiff's request for final approval of the Settlement.

## V.    THE PLAN OF ALLOCATION SHOULD BE APPROVED

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate. When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis. Such a reasonable plan may consider the relative strength and values of different categories of claims." *IMAX*, 283 F.R.D. at 192 (citations, brackets, and internal quotation marks omitted). *Pro rata* distributions have "frequently been determined to be fair, adequate, and reasonable." *Fleisher*, 2015 WL 10847814, at *12 (collecting cases).

The proposed Plan of Allocation, which was developed by Lead Counsel in consultation with a damages expert, provides a fair and reasonable method to allocate the Net Settlement Fund

17

among Settlement Class Members who submit valid Claim Forms. Tourek Decl., ¶¶48-57. Recognized losses will be calculated for each purchase or acquisition of Neptune common stock during the Settlement Class Period listed on the Claim Form and for which adequate documentation is provided. This calculation is based on the difference between the amount of estimated alleged artificial inflation in Neptune common stock on the purchase date and the amount of estimated alleged artificial inflation on the sale date, adjusted for the 90-day lookback period as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *Id*. at ¶53. The sum of the recognized loss amounts for all of a Claimant's purchases of Neptune common stock during the Class Period is the Claimant's recognized claim ("Recognized Claim"), and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *Id*. at ¶54.

Lead Counsel submits that the Plan of Allocation fairly and rationally allocates the proceeds of the Net Settlement Fund among Class Members based on the losses they suffered attributable to the conduct alleged. Moreover, the Plan of Allocation is set forth in the Notice, and no Class Member has objected to the Plan. *Id*. at ¶57. Accordingly, the Plan of Allocation is fair and reasonable and should be granted final approval to administer the Settlement.

## VI.    NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS

The notice plan set forth in the Court's preliminary approval order "direct[ed] notice in a reasonable manner to all class members who would be bound by the proposal," satisfying Fed. R. Civ. P. 23(e)(1), the requirements of the PSLRA, and constitutional due process. It provided "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974).

The Court-approved notice includes all the information required by Rule 23(c)(2)(B) and

18

the PSLRA, 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7), including: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the parties' reasons for proposing the Settlement; (vi) the attorneys' fees and costs sought; (vii) how to opt-out of the Class; (viii) how to object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; and (ix) the binding effect of a judgment on Class Members. *See* Nordskog Decl., Exh. B. It also apprised Class Members about the final approval hearing, as did the Settlement website.

A.B. Data, a nationally recognized claims administrator, carried out the notice program under Lead Counsel's supervision. The Court approved the notice documents and notice plan in its Preliminary Approval Order. As the Court ordered, the Summary Notice was published on April 11, 2023, and the Postcard Notice was mailed or a link to Notice and Proof of Claim was emailed to 34,471 potential Class Members. *See* Nordskog Decl., ¶¶8-9. Summary Notice was also published, directing potential Class Members to a settlement website at www.neptunesecuritiessettlement.com, which contains the Notice, Proof of Claim, Stipulation of Settlement, and other documents. *Id*. at ¶11. Additionally, A.B. Data has maintained a toll-free number to answer any questions from Class Members. *Id*. at ¶10. To date, one objection has been received and no Class Members have requested exclusion from the Class. *Id*. at ¶¶12-14.

This combination of first-class mail and/or e-mail notice to all Class Members who could be identified with reasonable effort, supplemented by publication notice in a relevant widely circulated publication, via newswires, and posted on the internet, was "the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *Rodriguez*, 2023 WL 2184496, at *9.

## VII. STOCK ISSUED TO THE SETTLEMENT FUND MEETS SECTION 3(a)(10)

The Settlement provides for Neptune to issue $2,750,000 worth of Neptune stock to

19

Plaintiff and the Class.  ECF 57-2.  This stock qualifies as exempt from registration under Section 3(a)(10) of the Securities Act of 1933, which allows Plaintiff and the Class to immediately resell those securities into the market.  Section 3(a)(10) exempts from registration securities issued to settle a bona fide claim, "after a hearing upon the fairness of such terms and conditions at which all persons to whom it is proposed to issue securities in such exchange shall have the right to appear…"  15 U.S.C. § 77c(a)(10).  Here, these prerequisites are satisfied.

First, the Settlement provides for the issuance of securities as part of a settlement extinguishing bona fide claims.  *Oceana Capitol Grp. Ltd. v. Red Giant Ent., Inc.*, 150 F. Supp. 3d 1219, 1223 (D. Nev. 2015) (collecting cases).  Second, the June 20, 2023 final approval hearing will provide a hearing on the fairness of the terms and conditions at which Neptune and all Class Members will have a right to appear.  *Sabby Volatility Warrant Master Fund Ltd. v. Kiromic Biopharma, Inc.*, 2022 WL 16626898, at *2 (S.D.N.Y. Nov. 2, 2022).  Third, the terms and conditions of the exchange are fair, as the Settlement "represents a negotiated agreement between sophisticated commercial parties represented by competent counsel.  Both Plaintiff and [Neptune] have been advised of and fully understand the benefits and risks of the contemplated exchanged. These factors are sufficient for the Court to find that the [Settlement] is fair." *Chapel Invs., Inc. v. Cherubim Ints., Inc.*, 177 F. Supp. 3d 981, 986–91 (N.D. Tex. 2016); *see also YA II PN, Ltd. v. Taronis Techs., Inc.*, 435 F. Supp. 3d 622, 625–26 (S.D.N.Y. 2020).  Further, the risks associated with litigating this Action further, the overwhelmingly positive reaction from the Class, the opportunity for Class Members to be heard, and the consideration of the Settlement compared to the other possible results of litigation, *supra* at Section IV(C)(1)-(8), all support a finding of fairness. *See Taronis*, 435 F. Supp. 3d at 625–26.  Thus, the proposed final approval order contains language finding that the above-referenced requirements for Section 3(a)(10) are satisfied.

20

## VIII.   CONCLUSION

For all of the foregoing reasons, the Court should finally approve a $4.25 million cash-and-stock-based settlement that will dispose of all claims in this Action, approve the Plan of Allocation for the disbursement of the proceeds among Class Members, certify the Class for settlement purposes, and find that the notice plan it approved at preliminary approval met all applicable requirements.

Dated:  May 23, 2023

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Christopher P.T. Tourek*
Christopher P.T. Tourek (admitted *pro hac vice*)
Joshua B. Silverman (admitted *pro hac vice*)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: jbsilverman@pomlaw.com
          ctourek@pomlaw.com

          -and-
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
          ahood@pomlaw.com

*Attorneys for Lead Plaintiff Kenneth Rickert*

21

## <u>CERTIFICATE OF SERVICE</u>

On May 23, 2023, the foregoing document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Christopher P.T. Tourek*
Christopher P.T. Tourek

22