**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARVIN GONG, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NEPTUNE WELLNESS SOLUTIONS INC., MICHAEL CAMMARATA, TONI RINOW and MARTIN LANDRY<br><br>Defendants. | **Case No. 2:21-cv-01386-ENV-ARL**<br><br>**CLASS ACTION**<br><br>Hon. Eric N. Vitaliano<br>Hon. Arlene R. Lindsay |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND COMPENSATORY AWARD FOR PLAINTIFF**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

I.    INTRODUCTION .............................................................................................1

II.   ARGUMENT ....................................................................................................4

    A.  Lead Counsel are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund ........................................................................................4

    B.  The Court Should Award a Reasonable Percentage of the Common Fund ...................5

    C.  Relevant Factors Confirm that the Requested Fee Is Reasonable ...............................6

        1.  Time and Labor Expended by Lead Counsel ..............................................7

        2.  The Magnitude, Complexity, and Risk of Litigation .....................................9

        3.  The Settling Parties Were Represented by Experienced, High-Caliber Counsel ...............................................................................12

        4.  The Requested Fee in Relation to the Settlement is Fair and Reasonable ....14

        5.  Public Policy Considerations Favor the Fee Request .................................15

        6.  A Lodestar Cross-Check Confirms That the Requested Attorneys' Fees are Reasonable .......................................................................................16

    D.  Lead Counsel Should Be Reimbursed for its Litigation Expenses .............................18

    E.  The Proposed Compensatory Award to Plaintiff is Reasonable .................................19

III.  CONCLUSION ................................................................................................20

CERTIFICATE OF SERVICE ....................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
No. 14-CV-7126 (JMF), 2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018)................................14

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)..........................................................................................................15

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ...........................................................................................12

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)..........................................................................................................15

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)...................................................................................................4, 5, 15

*Becher v. Long Island Lighting Co.*,
64 F. Supp. 2d 174 (E.D.N.Y. 1999) .................................................................................15

*Blum v. Stenson*,
465 U.S. 886 (1984)......................................................................................................5, 16

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)............................................................................................................4

*Bryant v. Avado Brands, Inc.*,
100 F. Supp. 2d 1368 (M.D. Ga. 2000) .............................................................................10

*Bryant v. Dupree*,
252 F.3d 1161 (11th Cir. 2001) .........................................................................................10

*Burns v. FalconStor Software, Inc.*,
No. 10 CV 4572 (ERK), 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) .....................2, 9, 18

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)..............................................................................................13

*City of Providence v. Aeropostale, Inc.*,
No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014)..................4, 9, 13

*Collins v. Olin Corp.*,
No. 303-CV-945CFD, 2010 WL 1677764 (D. Conn. Apr. 21, 2010) ..................................15

*Dupler v. Costco Wholesale Corp.*,
   705 F. Supp. 2d 231 (E.D.N.Y. 2010) ....................................................................17

*Eltman v. Grandma Lee's, Inc.*,
   No. 82 CIV. 1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986) ................................13

*Fishoff v. Coty Inc.*,
   No. 09 CIV. 628 (SAS), 2010 WL 305358 (S.D.N.Y. Jan. 25, 2010)......................11

*Fishoff v. Coty Inc.*,
   634 F.3d 647 (2d Cir. 2011)...................................................................................11

*Fleisher v. Phoenix Life Ins. Co.*,
   No. 11-CV-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)...................17

*Gay v. Tri-Wire Eng'g Solutions. Inc.*,
   No. 12 CV 2231, 2014 WL 28640 (E.D.N.Y. Jan. 2, 2014)....................................14

*Gierlinger v. Gleason*,
   160 F.3d 858 (2d Cir. 1998)...................................................................................17

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)...................................................................4, 5, 6, 9, 12

*Guevoura Fund Ltd. v. Sillerman*,
   No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ..........1, 2, 5

*Hayes v. Harmony Gold Mining Co.*,
   509 F. App'x 21 (2d Cir. 2013) ...............................................................................5

*Hicks v.* Stanley,
   No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..........15, 16, 19

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) ...............................................................................11

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
   No. 03 CIV.5755, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ...........................13

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
   272 F. App'x 9 (2d Cir. 2008) ................................................................................13

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001).....................................................................6, 9

*In re AOL Time Warner, Inc.*,
   No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ..................10

iii

*In re AOL Time Warner, Inc. Sec.*,
   No. 02 CIV. 5575 (SWK), 2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006)................................16

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)....................................................................................11

*In re China Sunergy Sec. Litig.*,
   No. 07 CIV. 7895 DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) .................................12

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014).......................................................................................6

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG), 2010 WL 2653354 (E.D.N.Y. June 24, 2010)................................14

*In re Deutsche Telekom AG Sec. Litig.*,
   No. 00-CV-9475 NRB, 2005 WL 7984326 (S.D.N.Y. June 9, 2005) .....................................17

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................................18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..............................13

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ...........................................................................................19

*In re Interpublic Sec. Litig.*,
   No. 02 CIV.6527(DLC), 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004).............................5, 17

*In re Med. X-Ray Film Antitrust Litig.*,
   No. CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)...............................................15

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)...................................12

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...............................................................................13, 18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ...................................................................................14

*In re PPDAI Grp. Inc. Sec. Litig.*,
   No. 18-CV-6716 (TAM), 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022)....................1, 5, 8, 9, 18

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
   985 F. Supp. 410 (S.D.N.Y. 1997) .........................................................................................9

iv

*In re Sequans Commc'ns  S.A. Sec. Litig.*,
   Case No. 17-cv-04665-FB-SJB, ECF 73 (S.D.N.Y. Sept. 28, 2020) ........................................1

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................................................17

*In re Top Tankers, Inc. Sec. Litig.*,
   No. 06 CIV. 13761 (CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ................................5

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) ...................................................................................16

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   724 F. Supp. 160 (S.D.N.Y. 1989) ......................................................................................15

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) .................................6

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ...........................................................................12, 13, 15

*In re Worldcom, Inc. Sec. Litig.*,
   388 Supp. 2d 319 (S.D.N.Y. 2005).....................................................................................16

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005)..................................................................................10

*Kalnit v. Eichler*,
   99 F. Supp. 2d 327 (S.D.N.Y. 2000).....................................................................................11

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)..................................................................................................11

*Khait v. Whirlpool Corp.*,
   No. 06 CV 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)...........................................14

*Kindle v. Dejana*,
   308 F. Supp. 3d 698 (E.D.N.Y. 2018) ..................................................................................19

*Kurzweil v. Philip Morris Companies, Inc.*,
   No. 94 CIV. 2373 (MBM), 1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999)............................17

*Lea v. Tal Educ. Grp.*,
   No. 18-CV-5480 (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ...............................19

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998)..................................................................................................17

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................4, 15

*Martinek v. Amtrust Fin. Servs., Inc.*,
   No. 19 CIV. 8030 (KPF), 2022 WL 16960903 (S.D.N.Y. Nov. 16, 2022) ............................19

*Matter of Cont'l Illinois Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ................................................................................9

*Missouri v. Jenkins by Agyei*,
   491 U.S. 274 (1989)..................................................................................16, 17

*Mohney v. Shelly's Prime Steak. Stone Crab & Oysters Bar*,
   No. 06 CV 4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009)................................14, 15

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.*,
   818 F.2d 278 (2d Cir. 1987)..................................................................................18

*Robbins v. Koger Properties, Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ........................................................................11, 12

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997) ......................................................................17

*Rodriquez v. It's Just Lunch Int'l*,
   No. 07-CV-09227 (SN), 2020 WL 1030983 (S.D.N.Y. Mar. 2, 2020) ...................13, 14, 19

*Rosi v. Aclaris Therapeutics, Inc.*,
   No. 19-CV-7118 (LJL), 2021 WL 5847420 (S.D.N.Y. Dec. 9, 2021) ...................................17

*Savoie v. Merchants Bank*,
   166 F.3d 456 (2d Cir. 1999)..............................................................................5, 17

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 CIV. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...............................17

*Silverberg v. People's Bank*,
   23 F. App'x 46 (2d Cir. 2001) ..........................................................................15

*Springer v. Code Rebel Corp.*,
   No. 16-CV-3492 (AJN), 2018 WL 1773137 (S.D.N.Y. Apr. 10, 2018) ...............................17

*Stefaniak v. HSBC Bank USA, N.A.*,
   No. 1:05-CV-720 S, 2008 WL 7630102 (W.D.N.Y. June 28, 2008) ...................................15

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
   No. 01-CV-11814(MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004)..................................9

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ....................................................................................15

**Rules & Regulations**

Fed. R. Civ. P. 23(e) ........................................................................................1

**Statutes**

15 U.S.C. §78u-4(a)(4) ...................................................................................19

15 U.S.C. §78u-4(a)(6) .....................................................................................6

Civil Justice Reform Act of 1996 ...................................................................16

Private Securities Litigation Reform Act of 1995 ...........................................6

Securities Act of 1933.......................................................................................2

**Additional References**

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice
    and Procedure* (3d ed. 2005) .....................................................................4

Cornerstone Research, "Securities Class Action Filings, 2021 Year in Review," ........................10

Herbert M. Kritzer, *Seven Dogged Myths Concerning Contingency Fees*, 80
    Wash. U. L.Q. (2002)...............................................................................16

*Manual for Complex Litigation (Fourth)* §14.121 (2004)..............................4

NERA Economic Consulting, Janeen McIntosh and Svetlana Starykh, "*Recent
    Trends in Securities Class Action Litigation: 2021 Full-Year Review*," January
    25, 2022...................................................................................................10

Pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), Lead Plaintiff Kenneth Rickert ("Plaintiff"), on behalf of himself and the Class, and Lead Counsel Pomerantz LLP ("Lead Counsel")[1] respectfully submit this memorandum in support of their motion for (i) an award of attorneys' fees of one-third (33 1/3%) of the Settlement Fund plus accrued interest; (ii) reimbursement of necessary and reasonable litigation expenses of $55,012.88; and (iii) a compensatory award of $7,000 to Plaintiff.

## I.    INTRODUCTION

Lead Counsel and Plaintiff have secured a very favorable Settlement with an aggregate value of $4,250,000, consisting of $1,500,000 in cash and $2,750,000 of stock, for the benefit of the Class to resolve this securities class action against Defendants Neptune Wellness Solutions, Inc. ("Neptune"), Michael Cammarata ("Cammarata"), Toni Rinow ("Rinow"), and Martin Landry ("Landry") (collectively, "Defendants") after more than two years of litigation. Lead Counsel, who have received no payment to date, now seek attorneys' fees of one-third of the Settlement Fund. Lead Counsel and their professionals have spent, in the aggregate, 1073.66 hours in prosecution of this case against Defendants, with a lodestar of $797,525.00.  Fees in this percentage are regularly approved by courts in this Circuit.  *See, e.g.*, *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-CV-6716 (TAM), 2022 WL 198491, at *16–17 (E.D.N.Y. Jan. 21, 2022) (awarding attorneys' fees equal to one-third of $9 million settlement); *In re Sequans Commc'ns  S.A. Sec. Litig.*, Case No. 17-cv-04665-FB-SJB, ECF 73 (S.D.N.Y. Sept. 28, 2020) (awarding attorneys' fees equal to one-third of $2.75 million settlement); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *21 (S.D.N.Y. Dec. 18, 2019) (collecting cases) (awarding attorneys'

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings provided in the Stipulation and Agreement of Settlement, fully executed on December 6, 2022 (the "Stipulation"), filed concurrently herewith.

1

equal to one-third of $6.75 million settlement); *Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2014 WL 12917621, at *8-10 (E.D.N.Y. Apr. 11, 2014) (collecting cases) (awarding attorneys' fees equal to one-third of $5 million settlement).  Plaintiff has determined that request to be reasonable and consistent with his retainer agreement

The time and labor Lead Counsel expended in litigation this Action for over two years included: (a) conducting a lengthy investigation by analyzing publicly available information regarding Defendants, including SEC filings, newspaper articles, analyst reports, press releases, stock price movements, and earnings conference call transcripts, and interviewing former employees of Neptune; (b) drafting a detailed and viable Amended Complaint; (c) initiating efforts to find and serve additional defendants that were added to the Amended Complaint, enhancing the prospects for recovery; (d) consulting with a damages expert to evaluate recoverable losses; (e) researching and opposing Defendants' letter for a pre-motion conference; (f) researching and opposing Defendants' motion to dismiss; (g) drafting a mediation statement and participating in a full-day mediation; (h) further negotiating with Defendants until the $4,250,000 Settlement was achieved; (i) researching and applying the proper procedures to allow an issuance of stock pursuant to the exception set forth in Section 3(a)(10) of the Securities Act of 1933; (j) negotiating with Defendants to document the Settlement; (k) working with damages consultants to prepare the Plan of Allocation; and (1) overseeing Notice to Class Members.

A.B. Data, Ltd., the Claims Administrator provided individual notice of the Settlement via e-mail, or where e-mail could not be identified or was returned as undeliverable, first-class mail to each member of the Class whose address was reasonably ascertainable, and caused publication of the Summary Notice via *PR Newswire* on April 11, 2023.  *See* Declaration of Eric Nordskog Regarding: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C)

Report on Requests for Exclusion and Objections ("Nordskog Decl."), attached to Tourek Declaration[2] as Exh. 2, ¶9.  The Notice amply described the terms of the Settlement, including: (a) the nature, history, and progress of the litigation; (b) the proposed Settlement; (c) the final approval hearing; (d) the process to opt out of, or object to, the Settlement; (e) the plan for allocating the settlement among class members; (f) the maximum amount of fees and expenses to be sought by counsel, and the maximum amount of compensatory awards to be sought for Plaintiff; and (g) the necessary information for any Class Member to find more information or examine the Court records should he or she desire to do so. *Id*.  The deadline for objections and requests for exclusion is May 30, 2023.  Thus far, only one anonymous objection was received, from a person who may or may not have been a Class Member.  No Class Member has requested exclusion from the Class in connection with the Settlement.  Tourek Decl., ¶45.

In addition, Lead Counsel respectfully request reimbursement of $55,012.88 in expenses that it reasonably and necessarily incurred in prosecuting this litigation.  *See* Tourek Decl., ¶¶60-61, 77-83.  Finally, Plaintiff in this Action requests an award of $7,000 to compensate him for his time and service to the Class.  Among other things, he spent substantial time researching the facts of the case, reviewing filings, producing documents, and conferring with Lead Counsel about litigation strategy and settlement.

---

[2] The accompanying Declaration of Christopher P.T. Tourek in Support of Final Approval of Class Action Settlement, Plan of Allocation, Final Certification of Settlement Class, an Award of Attorneys' Fees and Expenses, and Plaintiff's Compensatory Award ("Tourek Decl."), and the declarations of Kenneth Rickert, Eric Nordskog, and the Pomerantz Firm Resume attached thereto, are an integral part of this submission.  The Court is respectfully referred to them for a detailed description of the factual and procedural history of the Action, the claims asserted, Plaintiff's and Lead Counsel's investigation and litigation efforts, the negotiations leading to the Settlement, and the fairness and reasonableness of the Settlement, the Plan of Allocation, and Lead Counsel's request for an award of attorneys' fees and expenses and a compensatory award for Plaintiff.

## II.    ARGUMENT

### A.    Lead Counsel are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The U.S. Supreme Court and Second Circuit both recognize that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This ensures that "competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Manual for Complex Litigation (Fourth)* §14.121 (2004). "The court's authority to reimburse the representative parties … stems from the fact that the class-action device is a creature of equity and the allowance of attorney related costs is considered part of the historic equity power of the federal courts." 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1803, at 325 (3d ed. 2005). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *10-11(S.D.N.Y. May 9, 2014). In addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *See, e.g., City of Providence*, 2014 WL 1883494, at *10-11; *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).

The Supreme Court has repeatedly underscored that private securities actions, such as this one, provide "a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S.

299, 310 (1985).  Thus, it "is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to a reasonable fee – set by the court – to be taken from the fund."  *See In re Top Tankers, Inc. Sec. Litig.*, No. 06 CIV. 13761 (CM), 2008 WL 2944620, at \*12 (S.D.N.Y. July 31, 2008).  Moreover, the "[d]etermination of 'reasonableness' is within the discretion of the district court."  *In re Interpublic Sec. Litig.*, No. 02 CIV.6527(DLC), 2004 WL 2397190, at \*10 (S.D.N.Y. Oct. 26, 2004).  Here, Lead Counsel's request for one-third (33 1/3%) of the cash and securities in the Settlement Fund is eminently reasonable in light of the work provided and the result achieved.

**B.      The Court Should Award a Reasonable Percentage of the Common Fund**

The Supreme Court has held that where counsel has created a common fund, an attorneys' fee is properly determined on a percentage-of-recovery basis.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine,' … a reasonable fee is based on a percentage of the fund bestowed on the class").  The Second Circuit has likewise encouraged district courts to employ the percentage-of-the-fund method, although the lodestar method may also be used.  *See Goldberger*, 209 F.3d at 47; *see also Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) (affirming district court's conclusion that the percentage method "aligns the interests of class counsel with those of the class").  In *Goldberger*, the Second Circuit recognized that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources."  209 F.3d at 48-49; *see also Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999).  Moreover, courts in this District have routinely used the percentage method to calculate attorneys' fees in common fund cases.  *See, e.g., In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at \*14 (recognizing that the percentage method "is the trend in this Circuit"); *Guevoura Fund Ltd.*, 2019 WL 6889901, at \*15 (same).

5

The Private Securities Litigation Reform Act of 1995 ("PSLRA") also supports using the percentage-of-recovery method: "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6).  Some courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage method in assessing fees for securities class actions.  *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *3 (S.D.N.Y. Nov. 7, 2007).

The percentage approach also has other advantages.  It best aligns the interests of counsel and the class, *see In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014), and  best serves "as a proxy for the market in setting counsel fees." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001).  And here, where the Settlement Fund will consist of both cash and stock, the percentage approach alleviates the need to precisely value the stock component.  If the Court awards a one-third fee, then Lead Counsel will simply receive one-third of the cash and one-third of the stock in the Settlement Fund.  As demonstrated below, this request is fair and reasonable.

## C.    Relevant Factors Confirm that the Requested Fee Is Reasonable

The *Goldberger* factors the Second Circuit identified as relevant in assessing requests for attorneys' fees supported the fee request here.  These include: (i) the time and labor expended by counsel; (ii) the risks of the litigation; (iii) the magnitude and complexity of the litigation; (iv) the requested fee in relation to the settlement; (v) the quality of representation; and (vi) public policy considerations. *Goldberger*, 209 F.3d at 50. These factors demonstrate that Counsel's requested one-third fee is fair and reasonable.

**1.  Time and Labor Expended by Lead Counsel**

Lead Counsel has expended a substantial amount of time and effort pursuing this litigation on behalf of the Class.  Since its inception over two years ago, Lead Counsel has devoted more than 1073 hours to this litigation.[3]  Tourek Decl. ¶¶64-66.  At the pleadings stage, it thoroughly investigated the legal and factual bases for claims against Defendants, including conducting a private investigation prior to drafting and filing the initial complaint (ECF 1).  Lead Counsel then effected service and negotiated a scheduling agreement (ECF 6).  It subsequently filed a motion for Plaintiff to be appointed lead plaintiff and for approval of his choice of lead counsel (ECF 15-16), which the Court ultimately granted over competing motions (ECF 38).  After appointment, Lead Counsel negotiated and filed a joint stipulation regarding the filing of Plaintiff's amended complaint and Defendants' anticipated motion to dismiss (ECF 40).

While waiting for the Court to rule on the appointment of lead plaintiff, Lead Counsel continued to investigate Plaintiff's claims, including reviewing (i) Neptune's public SEC filings; (ii) presentations, press releases, media, and analyst reports made by or about the Company; (iii) transcripts of Neptune's conference calls with analysts and investors; (iv) publicly available data relating to Neptune stock; and (v) other materials and data concerning the Company.  Lead Counsel and its investigator also conducted more than a dozen interviews with former Neptune and SugarLeaf employees and, in some cases, their attorneys.  Further, Lead Counsel consulted with a damages and loss causation expert and conducted two separate damages analyses to assess potential expansion of the class period and additional corrective disclosure dates. Moreover, Lead Counsel thoroughly researched the potential legal claims and defenses, as well as relevant precedent.  This thorough investigation led Lead Counsel to expand the class period and scope of

---

[3] This figure does not include any time devoted to preparing this fee request.

claims in the Amended Complaint, adding a number of additional alleged misrepresentations made by Defendants concerning SugarLeaf and Neptune's other areas of business and adding an additional Defendant (ECF 41).  Lead Counsel then served the newly added Defendant, Landry, (ECF 44).

Lead Counsel also opposed Defendants' letter request for a pre-motion conference (ECF 45, 47) and negotiated a briefing schedule for Defendants' motion to dismiss once allowed (ECF 48).  It then analyzed Defendants' 44-page motion to dismiss (ECF 50-1), thoroughly researched applicable case law, and drafted a compelling opposition explaining why dismissal would be inappropriate (ECF 51).  Lead Counsel also continued to monitor developments in applicable case law, and twice filed notices of supplemental authority (ECF 52, 54).

Simultaneously, Lead Counsel pursued settlement discussions.  After the Parties agreed on a mediator, Lead Counsel drafted a mediation statement, prepared for and attended a full-day mediation session, participated in further post-mediation negotiations, and monitored the financial viability of Neptune so as to determine the best overall result for the Class.  It additionally researched and analyzed the benefits of a cash-based settlement compared to a cash-and-stock-based settlement, and the legality and proper method for stock issuance as part of a settlement under the controlling securities laws.  After agreeing to the Settlement in principle, Lead Counsel consulted with a number of Class Members about the Settlement.

Throughout the litigation, Lead Counsel's efforts focused on advancing the Action to bring about the most successful outcome for the Class, whether through settlement or trial, by the most efficient means possible.  Lead Counsel's significant efforts and achievement of a highly favorable settlement favor the requested fee award.  *See In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *15 (holding that the time and labor needed to litigate motions to dismiss and engage in

8

extensive settlement negotiations with the assistance of a professional mediator supported awarding attorneys' fees equal to one-third of the settlement fund); *Burns*, 2014 WL 12917621, at *9 (same).

### 2. The Magnitude, Complexity, and Risk of Litigation

In the Second Circuit, "the risk of success" is "perhaps the foremost factor to be considered in determining" a reasonable award. *Goldberger*, 209 F.3d at 54. Indeed, courts within the Second Circuit have long recognized that the risk of non-payment associated with a contingency arrangement is an important factor in determining an appropriate fee award. *See City of Providence*, 2014 WL 1883494, at *14. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); *City of Providence*, 2014 WL 1883494, at *14 (same). Thus, it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d at 433; *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").

This risk encompasses not just the risk of no payment, but also the risk of underpayment. *See Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel). Here, Lead Counsel pursued claims on behalf of the Class for more than two years, with no guarantee of ever being compensated for the investment of time and money that the case would require. In undertaking this responsibility, it dedicated substantial attorney and professional resources to the prosecution of the litigation. Lead Counsel also advanced over $55,000 in out-of-

9

pocket expenses with no guarantee that those expenses would ever be reimbursed. Not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. The financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

While Lead Counsel firmly believed in the strength of its case, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).

"The difficulty of establishing liability is a common risk of securities litigation." *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006). As one court has noted, an "unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard." *Bryant v. Avado Brands, Inc*., 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd on other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001). Indeed, the high rate of dismissals in securities class actions demonstrates the risks involved as compared to the prospects for success. Cornerstone reports that of securities class actions filed from 2015 through 2019, an average of 52.2% of cases have been dismissed.[4] And according to NERA, the rate of dismissal in securities class actions has steadily increased over time: in 2012, a little over one third of cases filed were dismissed, whereas in 2021 at over half of the cases filed were dismissed.[5] Plaintiff faced that considerable risk here.

---

[4] Cornerstone Research, "Securities Class Action Filings, 2021 Year in Review," at p.18 figure 17 (of the cases filed in 2017 36% are settled, 8% are continuing and 2% were remanded).
[5] NERA Economic Consulting, Janeen McIntosh and Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review," January 25, 2022 at 11.

Further, Defendants would have continued to argue that even if Plaintiff could establish a material misstatement or omission, there was no evidence upon which the requisite mental state of scienter—*i.e.*, that Defendants misled investors intentionally or with extreme recklessness—could be proven. The scienter requirement is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g.*, *Fishoff v. Coty Inc.*, No. 09 CIV. 628 (SAS), 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim"); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) (same), *aff'd*, 264 F.3d 131 (2d Cir. 2001). Here, Defendants were adamant that they had no intent to deceive.

Another considerable risk is whether Plaintiff could ultimately prove that the Class was damaged by the alleged misrepresentations and the amount of those damages. At trial, this would come down to "battle of experts." The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for Defendants to minimize the Class's losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions. *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 67-68 (S.D.N.Y. 2012) (noting that in a battle of the experts "victory is by no means assured" and the "jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses"). Thus, even if Plaintiff prevailed as to liability at trial, the judgment obtained could have been only a fraction of the damages claimed.

Even plaintiffs who succeed at trial may find their judgment overturned on appeal or on a post-trial motion. *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 730 (11th Cir. 2012) (affirming judgment as a matter of law on the basis of loss causation following a jury verdict partially in plaintiffs' favor); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1448-49 (11th Cir.

11

1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

Finally, even if Plaintiff proceeded to trial and achieved an award higher than the Settlement, there was a substantial risk that victory would be illusory and the award uncollectible. In assessing the Settlement, Plaintiff and Lead Counsel considered Neptune's precarious financial status, substantial reduction in market capitalization, and statements in its SEC filings that its current financial conditions "cast substantial doubt about [its] ability to continue as a going concern." Accordingly, this factor demonstrates that the requested fee is reasonable and fair.

### 3. The Settling Parties Were Represented by Experienced, High-Caliber Counsel

The result achieved and the quality of the services provided are also important factors for courts to consider in determining reasonable attorneys' fees under a percentage-of-fund analysis. *See Goldberger*, 209 F.3d at 50; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745, 748 (S.D.N.Y. 1985). Despite the significant risk to recovery in this Action, Lead Counsel successfully obtained a substantial $4.25 million cash-and-stock-based settlement for the Class. This represents approximately 6.07% of estimated *maximum* class-wide damages, an excellent result and at the higher end of historical averages.[6]

---

[6] *See, e.g.*, *In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("the average settlement amounts in securities fraud class actions where investors sustained losses over the past decade … have ranged from 3% to 7% of the class members' estimated losses"); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (a recovery of approximately 6.25% was "at the higher end of the range of reasonableness of recovery in class action[] securities litigations").

The experience of counsel is also relevant in determining fair compensation. *See, e.g.*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974); *Eltman v. Grandma Lee's, Inc.*, No. 82 CIV. 1912, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986). As the firm resume demonstrates, Pomerantz LLP has extensive experience in the specialized field of securities litigation. *See* Tourek Decl., Exh. 3. Lead Counsel successfully leveraged this experience to successfully negotiate the Settlement.

The quality of opposing counsel also matters. *See, e.g.*, *Warner Commc'ns*, 618 F. Supp. at 749. This litigation was vigorously contested by Defendants who were ably represented by very experienced and qualified attorneys from Norton Rose Fulbright US LLP. Tourek Decl. ¶70; *see City of Providence*, 2014 WL 1883494, at *17 ("[N]otwithstanding this formidable opposition, Lead Counsel was able to develop Plaintiff's case so as to resolve the litigation on terms favorably to the Class."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *28 (S.D.N.Y. Nov. 8, 2010) (same); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 CIV.5755, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) (same), *aff'd,* 272 F. App'x 9 (2d Cir. 2008). The fact that Lead Counsel achieved the Settlement for the Class in the face of high-quality legal opposition further evidences the quality of its efforts. *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010).

The positive reaction by Class Members confirms the quality of Lead Counsel's representation. To date, only one objection was received by a person who declined to be named or establish (as the Court requires) that he or she was a Class Member. Regardless, the anonymous objection did not address the amount of the fee request, or set forth any reason why it was inconsistent with the standards in this Circuit. Tourek Decl. ¶45; *see also Rodriquez v. It's Just Lunch Int'l*, No. 07-CV-09227 (SN), 2020 WL 1030983, at *11 (S.D.N.Y. Mar. 2, 2020) (awarding

13

the requested 31.5% in attorneys' fees over two objections, noting that "the relatively low number of objections weighs in favor of approving the attorneys' requested fees as reasonable"). No Class Members have requested exclusion from the Class. That such a positive reaction followed the mailing of 34,471 Notices constitutes powerful support for the requested awards.

### 4. The Requested Fee in Relation to the Settlement is Fair and Reasonable

"When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *3 (E.D.N.Y. June 24, 2010); *see also Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2018 WL 6250657, at *2 (S.D.N.Y. Nov. 29, 2018). Here, Lead Counsel's fee request of one-third (33 1/3%) of the Settlement Fund is fair, reasonable and consistent with the range of percentages that courts in this Circuit have awarded in similar securities class action and other class action settlements of this size. *Supra* at 1-2; *see also Khait v. Whirlpool Corp.*, No. 06 CV 6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding attorneys' fees equal to 33% of $3 million settlement); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) (awarding 33.3% fee for the first $10 million of settlement, and noting it is "very common" to see 33% contingency fees in settlements less than $10 million); *Gay v. Tri-Wire Eng'g Solutions. Inc.*, No. 12 CV 2231, 2014 WL 28640, at *12 (E.D.N.Y. Jan. 2, 2014) (awarding 35.3% of $183,123.60 settlement fund where the total fees equaled a reasonable lodestar amount); *Mohney v. Shelly's Prime Steak. Stone Crab & Oysters Bar*, No. 06 CV 4270, 2009 WL 5851465, at *1, 5 (S.D.N.Y. Mar. 31, 2009) (awarding

14

33% of $3,625,000 settlement).[7]  Here, Lead Counsel's request is in line with awards in similar securities class action settlements, and should be granted.

### 5.  Public Policy Considerations Favor the Fee Request

"Congress, the Executive Branch, and [the Supreme] Court … have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007)); *see also Bateman*, 472 U.S. at 310 (emphasizing that private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action").  To effectuate the investor protection purpose of the federal securities laws, courts must encourage private lawsuits.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988).[8]

Courts in this Circuit recognize the strong public policy in favor of attorneys' fee awards in order to encourage securities-fraud class actions.  *See Hicks v.* Stanley, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("Private actions to redress real injuries

---

[7] *See also Silverberg v. People's Bank*, 23 F. App'x 46, 48 (2d Cir. 2001) (affirming award of attorneys' fees and expenses of nearly one-third of settlement fund); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (awarding one-third fee of $7.8 million, which was "well within the range accepted by courts in this circuit"); *Stefaniak v. HSBC Bank USA, N.A.*, No. 1:05-CV-720 S, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of fund, finding it "typical in class action settlements in the Second Circuit"); *Collins v. Olin Corp.*, No. 303-CV-945CFD, 2010 WL 1677764, at *6–7 (D. Conn. Apr. 21, 2010) (awarding one-third of settlement fund); *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7, 1998) (awarding 33 1/3% of a settlement fund as "well within the range accepted by courts in this circuit").

[8] *See also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 169 (S.D.N.Y. 1989); *Maley*, 186 F. Supp. 2d at 373; *Warner Commc'ns,* 618 F. Supp. at 750-51.

15

further the objectives of the federal securities laws by protecting investors and consumers against fraud and other deceptive practices"); *In re Worldcom, Inc. Sec. Litig.*, 388 Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."). Therefore, this factor also favors the requested fee.

**6.  A Lodestar Cross-Check Confirms That the Requested Attorneys' Fees are Reasonable**

The requested fees are also consistent with fees charged in the marketplace for equivalent services, a consideration that the Supreme Court has identified as significant. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). Contingent fees in nonrepresentative actions typically range from thirty percent to forty percent of the gross recovery. *Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring). A RAND study of federal lawsuits found that, of the cases in which contingent fees were paid, the percentage was 33% over half the time, less than 33% about a quarter of the time, and more than 33% in the remainder.[9]

This Court may also consider as a cross-check whether the requested fee would result in a disproportionate multiplier to Lead Counsel's lodestar, or the aggregate value of the time expended if billed on an hourly basis. *In re AOL Time Warner, Inc. Sec.*, No. 02 CIV. 5575 (SWK), 2006 WL 3057232, at *40 (S.D.N.Y. Oct. 25, 2006) (describing this second analysis); *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 85 (E.D.N.Y. 2002). Here, a lodestar cross-check confirms

---

[9] *See* Herbert M. Kritzer, *Seven Dogged Myths Concerning Contingency Fees*, 80 Wash. U. L.Q. 739, 760 (2002) (summarizing data reported in James S. Kakalik et al., An Evaluation of Judicial Case Management Under the Civil Justice Reform Act (1996)).

16

the reasonableness of the requested fee.  As set forth in Tourek Declaration, ¶¶64-66, Lead Counsel expended 1073.66 hours for a total lodestar of $797,525.00 in litigating this Action.[10]  Thus, the requested fee of 33 1/3% of the $4,250,000 Settlement yields a lodestar multiplier of 1.77, which is well within the appropriate range identified by courts in this Circuit.  *See*, *e.g.*, *Rosi v. Aclaris Therapeutics, Inc.*, No. 19-CV-7118 (LJL), 2021 WL 5847420, at *8–9 (S.D.N.Y. Dec. 9, 2021) (finding that "a lodestar multiplier of approximately 3.3 … is reasonable" for a $2.65 million settlement); *Springer v. Code Rebel Corp.*, No. 16-CV-3492 (AJN), 2018 WL 1773137, at *5 (S.D.N.Y. Apr. 10, 2018) (approving a multiplier of 2.02); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245 (E.D.N.Y. 2010) (approving a multiplier of 3.3); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts[.]").[11]

Moreover, as noted above, Lead Counsel's legal work will not end with the Court's approval of the Settlement, but instead will include additional hours and resources assisting Class Members in obtaining their relief.  Thus, the effort devoted to this case by Counsel to obtain the

---

[10] These lodestar figures are based on hourly records created and maintained in the records of Pomerantz LLP in the ordinary course of business, and do not include any time related to the preparation of this fee request.  To arrive at the lodestar, the hours expended were multiplied by each attorney's respective hourly rate.  *See Savoie*, 166 F.3d at 460.  It is well-settled that the use of an attorney's current rate in place at the time of the fee application is proper, since such rates compensate for inflation, the loss of use of funds, and the delay in receiving payment.  *See, e.g.*, *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015); *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998); *Missouri v. Jenkins*, 491 U.S. at 283-84.

[11] *See also Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014) (multiplier of 3.05); *In re Deutsche Telekom AG Sec. Litig.*, No. 00-CV-9475 NRB, 2005 WL 7984326, at *4 (S.D.N.Y. June 9, 2005) (multiplier of 3.96); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (multiplier of 3.96); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (multiplier of 5.5); *Kurzweil v. Philip Morris Companies, Inc.*, No. 94 CIV. 2373 (MBM), 1999 WL 1076105, at *3 (S.D.N.Y. Nov. 30, 1999) (noting that multipliers between 3 and 4.5 are common in federal securities cases).

17

$4,250,000 recovery confirm that the requested fee is manifestly reasonable.

**D.    Lead Counsel Should Be Reimbursed for its Litigation Expenses**

Lead Counsel further request that the Court grant reimbursement of $55,012.88 in litigation expenses incurred in the prosecution of this Action.  Tourek Decl. ¶¶60-61, 77-83.  "The Court may award counsel reasonable out-of-pocket expenses that were necessary to successfully litigate and resolve the action."  *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *17 (quoting *Burns*, 2014 WL 12917621, at *11).  Indeed, courts routinely hold that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses that would have been reimbursed by an hourly-billed client.  *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *MetLife*, 689 F. Supp. 2d at 363; *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *18 (S.D.N.Y. July 27, 2007).

The litigation expenses here were all necessary for the prosecution of this Action and all are of the type traditionally billed to clients paying hourly.  A large majority of the expenses were for experts, private investigators, and mediation – expenses that were essential to the successful result of the Action and that other courts have found to be "reasonably expended and should be reimbursed."  *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *17 (approving reimbursement of the plaintiff counsel's expenses, a majority of which were "for outside investigators, financial consultants, and the mediator").  Other out-of-pocket expenses were also reasonable, of the type traditionally billed, and should be reimbursed.  *See Burns*, 2014 WL 12917621, at *11 (approving the reimbursement of expenses for "online legal research, copying costs, postage, court filing fees, … private investigator, and mediation fees.").  Moreover, the Notice indicated that Lead Counsel would seek reimbursement of up to $60,000 in litigation expenses and only one objection has been received.  *See* ECF 57-2.  The lack of objections

18

underscores that the lesser amount requested here is reasonable and should be reimbursed. Nordskog Decl. at ¶¶12-14; *Rodriquez*, 2020 WL 1030983, at \*11. Thus, the reimbursement of Lead Counsel's expenses is warranted.

### E.    The Proposed Compensatory Award to Plaintiff is Reasonable

The PSLRA expressly permits Plaintiff to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class[]." 15 U.S.C. §78u-4(a)(4). "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011). In accordance with the PSLRA and the inherent powers of the Court, courts routinely grant reimbursement of substantial sums to lead plaintiffs and class representatives. *See Martinek v. Amtrust Fin. Servs., Inc.*, No. 19 CIV. 8030 (KPF), 2022 WL 16960903, at \*3 (S.D.N.Y. Nov. 16, 2022) (awarding $15,000); *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at \*13 (S.D.N.Y. Nov. 30, 2021) (awarding $7,500); *Kindle v. Dejana*, 308 F. Supp. 3d 698, 718 (E.D.N.Y. 2018) (collecting cases) (awarding $10,000); *Hicks*, 2005 WL 2757792, at \*10 (collecting cases) (awarding $7,500).

Here, Plaintiff at all times zealously represented the Class. He (a) analyzed whether to participate in the litigation; (b) reviewed complaints, motions, orders, and other case-related materials, and communicated his thoughts to Lead Counsel; (c) conferred more than a dozen times with Lead Counsel about case developments; (d) consulted with Lead Counsel about the Settlement; and (e) reviewed and authorized Settlement proposals. *See* Tourek Decl. at ¶¶84-87; Declaration of Kenneth Rickert ("Rickert Decl."), attached as Exhibit A to the Tourek Decl., ¶¶3-

19

4.  Further, the award of $7,000 for 30 hours of work is not only in line with, but less than, the compensation he receives in his profession as a financial planner.  *See* Rickert Decl., ¶2; Tourek Decl. ¶86.

Plaintiff and Lead Counsel submit that the relatively modest request of an award of $7,000 to compensate the Plaintiff in this Action for his time and service to the Class is reasonable and should be granted.

## III.   CONCLUSION

Lead Counsel's efforts have resulted in a very favorable result for the Class under the circumstances.  Therefore, it respectfully requests that the Court (a) award attorneys' fees in the amount of 33 1/3% of the gross Settlement fund; (b) reimbursement of expenses to Lead Counsel in the amount of $55,012.88; and (c) grant an award to Plaintiff in the amount of $7,000.

Dated:  May 23, 2023

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Christopher P.T. Tourek*
Christopher P.T. Tourek (admitted *pro hac vice*)

Joshua B. Silverman (admitted *pro hac vice*)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: jbsilverman@pomlaw.com
        ctourek@pomlaw.com

        -and-

Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com

ahood@pomlaw.com

*Attorneys for Lead Plaintiff Kenneth Rickert*

## CERTIFICATE OF SERVICE

On May 23, 2023, the foregoing document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Christopher P.T. Tourek
Christopher P.T. Tourek

22