**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARVIN GONG, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NEPTUNE WELLNESS SOLUTIONS INC., MICHAEL CAMMARATA, TONI RINOW and MARTIN LANDRY<br><br>Defendants. | **Case No. 2:21-cv-01386-ENV-ARL**<br><br>**CLASS ACTION**<br><br>Hon. Eric N. Vitaliano<br>Hon. Arlene R. Lindsay |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR**
**AN ORDER APPROVING DISTRIBUTION OF CLASS SETTLEMENT FUND**

## I.    INTRODUCTION

On March 16, 2023, the Magistrate Court entered an Order preliminarily approving the settlement and directing dissemination of notice to the Settlement Class Members[1] (the "Preliminary Approval Order") (ECF No. 59) with respect to the Settlement reached between Lead Plaintiff Kenneth Rickert ("Plaintiff"), on behalf of the Settlement Class, and Defendants Neptune Wellness Solutions, Inc., Michael Cammarata, Toni Rinow, and Martin Landry (collectively, "Defendants"). On March 20, 2023, the District Court adopted the Magistrate Court's Order and preliminarily approved the settlement.

On July 18, 2023, the Magistrate Court issued its Report and Recommendations granting final approval of the class action settlement (ECF No. 72). On September 7, 2023, the District Court adopted the Magistrate Court's Report and Recommendations and issued its Final Approval Order (ECF No. 80).

Plaintiff's Counsel has been advised by A.B. Data, Ltd. ("A.B. Data"), the court-appointed Settlement Administrator, that it has completed all analyses and accounting procedures in connection with the proofs of claim submitted by those persons who responded to the Notice, and has determined which of those persons are Authorized Claimants. *See* Declaration of Eric A. Nordskog in Support of Plaintiff's Motion to Distribute Net Settlement Fund, ¶¶1-44 ("Nordskog Declaration"), attached as Exhibit A hereto.

All that remains to complete the Settlement process is to distribute the Net Settlement Fund to the Authorized Claimants. *Id*. at ¶¶3, 43-44. Thus, Plaintiff's Counsel requests that the Court

---

[1] All capitalized terms herein, unless otherwise indicated, have the same meaning and definition as given to them in the Stipulation of Settlement, dated December 6, 2022.

authorize the distribution of the Net Settlement Fund to the Authorized Claimants, as well as the fill payment of the Settlement Administrator's outstanding invoice.

## II.    DETERMINATION FO AUTHORIZED CLAIMS

### A.    Deficient and Ineligible Claims

Pursuant to the March 16, 2023 Preliminary Approval Order, all claims were to be submitted to the Settlement Administrator on or before May 21, 2023. The Settlement Administrator has finalized its determination of which claims are authorized and which are ineligible. *See* Nordskog Declaration ¶¶3-44.

A.B. Data has identified 1,418 claims that it recommends be rejected. *Id.* ¶¶39-41 and internal Exhibit F thereto. Of the claims recommended for rejection: 505 claims had no purchase of Neptune securities during the Class Period; 805 claims did not result in a Recognized Claim under the Court-approved Plan of Allocation; 90 claims were duplicates or replaced; and 18 claims traded Neptune securities on a non-U.S. trading venue. *Id.* ¶39. When claims were inadequately documented, A.B. Data sent claimants deficiency notices (and, in the case of electronic claims, deficiency emails) advising them of the deficiency, and they were given the opportunity to cure the deficiency. *Id.* at ¶¶20-29. In addition to notifying the claimant of the rejection of their Proof of Claim, the deficiency notice also advised the claimant of his, her, or its right to contest A.B. Data's determination to reject their Proof of Claim. *Id.* at ¶30. However, only one (1) claimant has requested such review, but subsequently withdrew that request after corresponding with A.B. Data. Plaintiff respectfully requests that the Court approve the Settlement Administrator's recommendation to disallow the ineligible and deficient claims.

2

### B.    Properly Documented Claims

A.B. Data has identified 1,290 properly-documented, valid claims. Nordskog Declaration ¶¶39-40, & internal Exhibit D thereto. These valid claims represent total Recognized Losses of $27,160,901.40. *Id.* A.B. Data further identified 666 otherwise-valid claims which were received or postmarked after the Court-approved Claim submission date of May 21, 2023 but received on or before July 22, 2024. *Id.* ¶41 & internal Exhibit E thereto. The Court should accept all late-but-otherwise-valid claims submitted after May 21, 2023 but received by A.B. Data on or before July 22, 2024. *Id.* ¶¶39-41. The untimely-filed claims have not prejudiced any Authorized Claimant nor caused significant delay to the distribution of the Net Settlement Fund to the Class, as A.B. Data's work on other claims was ongoing. The total Recognized Loss for these 666 late-but-otherwise-valid claims—$1,552,549.05—is approximately 5% of the total Recognized Loss of all claims recommended for payment. *See id*. ¶41; *see also In re "Agent Orange" Product Liability Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims."); *Grottano v. City of New York*, No. 15-CV-9242 (RMB), 2021 WL 6427554, at *1–2 (S.D.N.Y. Dec. 17, 2021) (allowing the inclusion of ten (10) late claimants into the settlement class).

Plaintiff respectfully requests that the Court approve the 1,956 properly documented claims as listed in Exhibits D & E of the Nordskog Declaration.

### III.    DISTRIBUTION OF THE NET SETTLEMENT AMOUNT

Pursuant to the Stipulation and Plan of Allocation authorized by the Court's Final Judgment, "[t]he Settlement Administrator shall administer and calculate the claims submitted by

Class Members, determine the extent to which claims shall be allowed, and oversee the distribution of the Net Settlement Fund subject to appeal, and jurisdiction of, the Court." *See* Stipulation at 19, VIII(E); ECF No. 57-2.

### A.      Proposed Authorized Claims

Should the Court concur with A.B. Data's administrative determinations concerning the claims recommended for acceptance and rejection, A.B. Data recommends the following distribution plan:

a.   A.B. Data will conduct an initial distribution (the "Initial Distribution") of the available balance of the Net Settlement Fund, after deducting all payments previously approved by the Court and requested herein, and after deducting payment of any estimated taxes, the costs of preparing tax returns, and any escrow fees, as follows:

   i.   Pursuant to the Court-approved Plan of Allocation, A.B. Data will calculate each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants.

   ii.   A.B. Data will, pursuant to the Court-approved Plan of Allocation, eliminate from the distribution any Authorized Claimant whose *pro rata* share of the Net Settlement Fund as calculated under subparagraph (a)(i) above is less than $20.00. Such Claimants will not receive any payment from the Net Settlement Fund.

   iii.   After eliminating Claimants who would have received less than $20.00, A.B. Data will recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $20.00 or more pursuant to the calculation

described in subparagraph (a)(i) above. This *pro rata* share is the Authorized Claimant's "Distribution Amount."

iv.  To encourage Authorized Claimants to cash their distribution checks promptly, and to avoid or reduce future expenses relating to unpaid distribution checks, all Initial Distribution checks will bear the notation: "DEPOSIT PROMPTLY, VOID AND SUBJECT TO REDISTRIBUTION IF NOT NEGOTIATED WITHIN 120 DAYS OF DISTRIBUTION."[2]

v.  Authorized Claimants who do not cash their Initial Distribution checks within the time allotted, or pursuant to further action as set forth in footnote 3, will irrevocably forfeit all recovery from the Settlement.

b.  Consistent with the Court-approved Plan of Allocation, if any funds remain in the Net Settlement Fund after the distribution because of uncashed checks or otherwise, then, after A.B. Data has made reasonable and diligent efforts to have Authorized Claimants cash their distribution checks, any balance remaining in the Net Settlement Fund six

---

[2] In an effort to have as many Authorized Claimants as possible cash their checks, A.B. Data will perform follow up with those Authorized Claimants whose checks are initially uncashed, either because they are returned to A.B. Data as undeliverable or because the Authorized Claimant simply did not cash the check after a period of time elapses (the "Outreach Program"). For Authorized Claimants whose checks are returned as undeliverable, A.B. Data will endeavor to locate new addresses by running the undeliverable addresses through the U.S.P.S. National Change of Address database and, where appropriate, via Internet search techniques and by calling the Authorized Claimants. Where a new address is located, A.B. Data will update the database accordingly and re-issue a distribution check to the Authorized Claimant at the new address. For any Authorized Claimants whose checks are not returned but who simply do not cash their checks, A.B. Data will use a mix of automated calls, personalized telephone calls, and emails to urge such Authorized Claimants to cash their distribution checks. In the event an Authorized Claimant loses or damages his, her, or its check, or otherwise requires a new check, A.B. Data will issue replacement checks. Distribution reissues will be undertaken only upon written instructions from the Authorized Claimant, provided that the Authorized Claimant returns the previous check where appropriate. For all checks, A.B. Data will void the initial payment prior to reissuing a payment.

(6) months after the distribution, or as reasonably soon thereafter, shall, if Plaintiff's Counsel, in consultation with A.B. Data, determine it to be cost effective to do so, be redistributed, after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such redistribution and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns and any escrow fees, to Authorized Claimants who have cashed their distribution checks and who would receive at least $20.00 from such redistribution, with additional distributions thereafter in six-month intervals, subject to the conditions previously noted, until Plaintiff's Counsel, in consultation with A.B. Data, determine that further redistribution is not cost effective.

c.    At such time as Plaintiff's Counsel, in consultation with A.B. Data, determines that the redistribution of funds remaining in the Net Settlement Fund is not cost effective, if sufficient funds remain to warrant the processing of Claims received after July 22, 2024, such Claims will be processed, and any such Claims that are otherwise valid, as well as any earlier received Claims for which an adjustment was received after July 22, 2024, which resulted in an increased Recognized Claim, will be paid in accordance with paragraph (d) below. If any funds shall remain in the Net Settlement Fund after payment of such late or late adjusted Claims, the remaining balance shall be contributed to a certified tax-exempt organization under IRS Code Section 501(c)(3) subject to Court approval.

d.    No new Claims may be accepted after July 22, 2024, and no further adjustments to Claims received on or before July 22, 2024, that would result in an increased Recognized Claim may be made for any reason after July 22, 2024, subject to the

6

following exception: If Claims are received or modified after July 22, 2024, that would be eligible for payment or additional payment under the Plan of Allocation if timely received then, at the time that Plaintiff's Counsel, in consultation with A.B. Data, determine that a redistribution is not cost effective as provided in paragraph (c) above, then, after payment of any unpaid fees or expenses incurred in connection with administering the Settlement and after the payment of any estimated taxes, the costs of preparing tax returns, and any escrow fees, such Claimants, at the discretion of Plaintiff's Counsel, may be paid their distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all of their prior distribution checks to the extent possible.

e.   Unless otherwise ordered by the Court, A.B. Data will dispose of the paper copies of Claims and all supporting documentation one (1) year from the final distribution date of the Net Settlement Fund and will dispose of electronic copies of the same three (3) years after the final distribution date of the Net Settlement Fund.

Nordskog Declaration ¶43.

## IV.   SETTLEMENT ADMINISTRATIVE COSTS

The Preliminary Approval Order authorized the Escrow Agent to distribute funds pursuant to the Stipulation, including, *inter alia*, the Settlement Administrator's reasonable and customary fees and costs for notice and administration of the Settlement up to $250,000 after the Court entered the Preliminary Approval Order. *See* ECF No. 57-2, at 15; Stipulation IV(A). Plaintiff's Counsel hereby informs the Court that A.B. Data was able to keep the cost of these activities (including the costs of the initial distribution described herein) to $215,287.64. *See* Nordskog

7

Declaration ¶42 & internal Exhibit G thereto. To date, A.B. Data has received payment of fees in the amount of $111,841.79, and has an outstanding balance of $134,734.42 *Id*. It is the opinion of the undersigned counsel that the invoiced amount is reasonable and is consistent with the usual and customary fees and costs associated with claims administration in a securities class action settlement of this size.

Plaintiff also seeks entry of an order providing that all persons who were involved in the review, verification, calculation, tabulation, or any other aspect of the administration of claims filed in this Action, and all persons who were involved in the administration or taxation of the Net Settlement Fund, are released from any liability from any and all claims arising out of such activities.

## V.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court decide this unopposed motion on the papers, and approve and enter the [Proposed] Order concerning distribution of the Net Settlement Fund.

Dated:  August 7, 2024                            Respectfully submitted,

**POMERANTZ LLP**

*/s/ Christopher P.T. Tourek*

Christopher P.T. Tourek (admitted *pro hac vice*)
Joshua B. Silverman (admitted *pro hac vice*)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: jbsilverman@pomlaw.com
          ctourek@pomlaw.com

-and-

8

Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
  ahood@pomlaw.com

*Attorneys for Lead Plaintiff Kenneth Rickert*

9

**CERTIFICATE OF SERVICE**

On August 7, 2024, the foregoing document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


*/s/ Christopher P.T. Tourek*
Christopher P.T. Tourek